SUSANNE BONIADI (SBN 341512)
susanne.boniadi@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

ADAM D. BOWSER (*pro hac vice forthcoming*)
adam.bowser@afslaw.com
**ARENTFOX SCHIFF LLP**
717 K Street NW
Washington, DC 20006
Telephone: 202.857.6000
Facsimile: 202.857.6395

Attorneys for Defendant
VERGIL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.O., and G.V., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERGIL SERVICES, INC. D/B/A REDGIFS;<br><br>Defendant. | Case No. 2:25-cv-05102-PD<br><br>**DEFENDANT VERGIL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 20, 2026<br>Time: 1:30 p.m.<br>Courtroom: Courtroom 580, 5th Floor<br>Judge: Hon. Patricia Donahue<br><br>Complaint Served: Aug. 13, 2025<br>FAC: Dec. 19, 2025 |

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on March 20, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Patricia Donahue, located at the Edward R. Roybal Federal Building and United States Courthouse, 350 W. 1st Street, Los Angeles Courtroom 580, 5th Floor, 255 East Temple Street Los Angeles, CA 90012-3332, Defendant Vergil Services, Inc. d/b/a RedGIFs ("RedGIFs") will and hereby does move the Court entry of an order dismissing Defendant with prejudice from this action (the "Motion").

This Motion is made pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, on the following grounds: (1) Plaintiffs did not, and cannot, allege any injury required for standing by merely visiting a public website, and having routine metadata collected by a technology vendor (Google) – one that Plaintiffs are independently utilizing to access the website, and (2) Plaintiffs wholly conclusory allegations fail to otherwise support their numerous claims, where Plaintiffs do not expressly plead themselves out of court by alleging that RedGIFs utilizes Google Analytics in the ordinary course of business.

Defendant's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the oral arguments of counsel, and any such other matters as the Court may consider.

Pursuant to Civil Local Rule 7-3, counsel for the Defendant met and conferred with Plaintiffs' counsel via videoconference and telephone, multiple times, including, but not limited to, September 24, 2025, November 25, 2025, and January 13, 2026, in order to potentially resolve this dispute without Court intervention. The parties were unable to reach a resolution.

Dated: January 16, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: */s/Susanne Boniadi*
SUSANNE BONIADI
Attorneys for Defendant
VERGIL SERVICES, INC.

## TABLE OF CONTENTS


I. INTRODUCTION .......... 10

II. PLAINTIFFS' BOILERPLATE "AMENDED" ALLEGATIONS .......... 11

III. PLAINTIFFS HAVE NOT ALLEGED ANY INJURY-IN-FACT AND LACK STANDING .......... 12

A. Legal Standard .......... 12

B. Plaintiffs Have Not Suffered an Injury-In-Fact Close to a Common Law Analogue .......... 13

IV. PLAINTIFFS FAIL TO STATE A CLAIM .......... 22

A. Standard of Review .......... 23

B. Plaintiffs' ECPA Claim Fails as a Matter of Law Because They Expressly Allege RedGIFs Utilizes Google Analytics in the Ordinary Course of its Business .......... 23

C. The VPPA Claim Fails Because No Ordinary Person Can Decipher the Metadata at Issue .......... 25

D. Plaintiffs' Remaining Claims All Lack Merit .......... 28

1. Intrusion Upon Seclusion .......... 28

2. Negligence .......... 29

3. Breach of Implied Contract .......... 29

4. Unjust Enrichment .......... 29

5. N.Y. Gen. Bus. Law § 349 .......... 29

V. CONCLUSION .......... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Anderson v. Friendly Auto Ventures, Inc.*, No. 5:22-CV-545 (MAD/ML), 2023 WL 2048256 (N.D.N.Y. Feb. 15, 2023) .......... 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 19

*Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 169 (2024) .......... 12, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 19

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 20

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) .......... 25

*Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997) .......... 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 7805628 (N.D. Cal. Aug. 4, 2016), *rev'd and remanded on other grounds*, 720 F. App'x 835 (9th Cir. 2017) .......... 11

*Christopherson v. Cinema Entertainment Corp.*, 161 F.4th 525 (8th Cir. 2025) .......... 23

*Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987 (2020) .......... 25

*Cook v. GameStop Inc.*, 148 F.4th 153 (3rd Cir. 2025) .......... 24

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) .......... 8

*CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) .......... 18

*Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 17

*Dawidzik v. Tesla Inc.*, Civ. No. 25-1982-KK-SPx, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 12, 24

*Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) .......... 24

*Eichenberger v. ESPN, Inc.*, 876 F. 979 (9th Cir. 2017) .......... 15, 22

*Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045 (C.D. Cal. 2025) .......... 18

*Goldstein v. Union Nat. Bank*, 213 S.W. 584 (Tex. 1919) .......... 11

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) (Koh, J.) .......... 21

*Holmes v. Elephant Ins. Co.*, 156 F.4th 413 (4th Cir. 2025) .......... 14

*Hooker v. Wanigas Credit Union*, 835 F. App’x 110 (6th Cir. 2021) .......... 11

*Hughes v. NFL*, No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025) .......... 22

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236 (11th Cir. 2022) (*en banc*) .......... 13, 14

*Jones v. Bloomingdales.com, LLC*, 124 F.4th 535 (8th Cir. 2024) .......... 17

*Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 17

*King v. Hard Rock Café Int'l (USA), Inc.*,
No. 2:24-cv-01119, 2025 WL 1635419 (June 9, 2025) ....................................21

*Lawrence v. Texas*,
539 U.S. 558 (2003) ....................................................................................16

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023)..............................................................7

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ....................................................................................23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................9

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015)........................................................................22

*Moore v. UPS, Inc.*,
No. 18-cv-07600-VC, 2019 WL 2172706 (N.D. Cal. May 13, 2019)...............18

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023)..........................................................................13

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021)...........................................................25

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ..........................................................................22

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
45 F.4th 816 (5th Cir. 2022)..........................................................................11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)..............................................................12, 14, 15

*Randall v. Univ. of the Pac.*,
No. 5:20-cv-03196, 2022 WL 1720085 (N.D. Cal. May 28, 2022)...................25

*Rodriguez v. Brushfire Recs.*,
No. 2:25-CV-09797, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025).................18

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 20

S. Rep. No. 100-599, at 14 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-12 .......... 11, 23

*Saeedy v. Microsoft Corp.*,
No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 18

*Sanzone v. Mercy Health*,
954 F.3d 1031 (8th Cir. 2020) .......... 24

*Shields v. Pro. Bureau of Collections of Md., Inc.*,
55 F.4th 823 (10th Cir. 2022) .......... 13, 14

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 15

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) .......... 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 8

*Szot v. Allstate Ins. Co.*,
161 F. Supp. 2d 596 (D. Md. 2001) .......... 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 9, 12, 15

*United States v. Bynum*,
604 F.3d 161 (4th Cir. 2010) .......... 16

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 16

*United States v. Perrine*,
518 F.3d 1196, 1204 (10th Cir. 2008) .......... 16

*United States v. VanDyck*,
776 F. App’x 495 (9th Cir. 2019) .......... 16

*United States v. Weast*,
811 F.3d 743 (5th Cir. 2016) .......... 16

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024) .......... 25

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 21

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 21

**Statutes**

18 U.S.C. § 2510 .......... 10, 19, 20, 21

18 U.S.C. § 2511 .......... 10

18 U.S.C. § 2710 .......... 10, 22, 23

47 U.S.C. § 551 .......... 23

Fed. R. of Civ. Proc. 12(b)(6) .......... 19

N.Y. Gen. Bus. Law § 349 .......... 25

**Other Authorities**

Electronic Communications Privacy Act .......... *passim*

Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977) .......... 12

Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006 .......... 12

U.S. Const. amend. IV .......... 17

U.S. Constitution Article III .......... 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs devote more than forty pages to the fact pattern depicted in Paragraph 69 of the Amended Complaint: while they logged into their Google accounts, they used Google Chrome to visit RedGIFs' website, which utilized Google Analytics to collect various metadata about how visitors are using RedGIFs' website. One does not need to be a computer science expert to understand that Plaintiffs are effectively complaining about a three-person game of whisper-down-the-alley. That is, Person A (Plaintiff) tells Person B (Google) to tell Person C (RedGIFs) to send information back in the opposite direction. But would anyone playing this game in the starting position claim that their "privacy" was violated when Person C sends the same information back to Person B? Of course not. Person B already knows – because *Person A* told them!

All of Plaintiffs' claims here are predicated on this fundamental absurdity. If Plaintiffs even came onto the RedGIFs website, Google would already know exactly what they did – because they were admittedly logged into their Google accounts "[o]n every occasion." Am. Compl. ¶¶ 20, 25. Thus, even ignoring that Plaintiffs necessarily agreed to Google's Terms and Privacy Policy governing its use of their data before they put a virtual foot on RedGIFs' website, *Id.* ¶ 41, Plaintiffs could not have a reasonable expectation of privacy as a matter of law – which defeats all of their claims, among many other incurable deficiencies detailed below.

Before getting to the merits, however, the Court must confront that it lacks subject matter jurisdiction over Plaintiffs' claim. The Ninth Circuit has clearly ruled that there is no reasonable expectation of privacy, or possible injury, when an individual visits a website and routine metadata is collected and shared – even with *undisclosed* third parties (unlike here).

## II. PLAINTIFFS' BOILERPLATE "AMENDED" ALLEGATIONS

To quote Judge Bernal from a comparable digital slip-and-fall case, "whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. This case reached that point, and then blew past it." *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 964 (C.D. Cal. 2023). That perfectly sums up this case. Indeed, as detailed in RedGIFs' Motion to Compel Arbitration as to Plaintiff G.V., to say that this case was initiated without an objectively reasonable investigation is an understatement. But even the Amended Complaint now before the Court is either so generic and conclusory that it amounts to generalized grievances about the Internet, or Plaintiffs simply copy and paste from the *wrong boilerplate complaint*. *See, e.g.*, Am. Compl. ¶ 83.

As to Defendant RedGIFs, Plaintiffs allege that it operates a website that allows "users of its website-www.redgifs.com (the "Website") to upload and view short pornographic video clips." *Id.* ¶ 4. Plaintiffs also assert that while the "content hosted on RedGIFs can be viewed without paying for a subscription, any person who wishes to browse even its free content must register for an account." *Id.* Except apparently for Plaintiff L.O., who "never registered for an account on the Website," but claims to have visited it to "view pornographic media" while logged into her Google account at unspecified times. *Id.* ¶¶ 17, 20. Plaintiff G.V. similarly alleges that she viewed pornographic media on the website, with the only difference being she registered for an account, *id.* ¶ 22, thereby agreeing to RedGIFs' Terms and Privacy Policy. For all intents and purposes, that is all we know about Plaintiffs.

That is, Plaintiffs never allege any information suggesting that *they* supplied *any personally identifiable* information to RedGIFs, let alone to Google. They do not allege that they paid any money to RedGIFs, so it is entirely unclear how they

could have "overpaid for Defendant's services." *Id.* ¶ 149.[1] There is not a single well-pled allegation that RedGIFs actually used Plaintiffs' information "in exchange for advertising and marketing services," nor is there any remotely well-pled allegation that *any entity* – even Google – has used, let alone misused, Plaintiffs' data. In short, there is not a single well-pled allegation that Plaintiffs have suffered *any consequences*.

Indeed, the closest we get to that is when Plaintiffs nonsensically allege throughout their already Amended Complaint that "they each had a reasonable expectation" that "Defendant would not share the Sensitive Information … unrelated to processing their loan applications." *Id.* ¶ 83; *see also id.* ¶ 102 ("patients' Sensitive Information"); *id.* ¶ 164 ("patient communications."); *id.* ¶ 167 (Plaintiffs' "applications for a debt consolidation loan, and the determination of whether or not to grant those loans."). Again, Plaintiffs can't even copy from the right boilerplate complaint.

## III. PLAINTIFFS HAVE NOT ALLEGED ANY INJURY-IN-FACT AND LACK STANDING

### A. Legal Standard

To have standing under Article III of the U.S. Constitution, Plaintiffs must allege they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet the first requirement,[2] they must allege they have suffered a "concrete—that is, real, and not abstract" injury that has a "close historical or common-law analogue" "traditionally recognized as providing a basis for a lawsuit in American courts."

---

[1] This is particularly true given that *everything* on RedGIFs' website is free.

[2] This case would also fail to satisfy the traceability requirement because Google would independently know what Plaintiffs are doing on the RedGIFs website because of their use of Google services to access and view the website. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019).

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021) (internal quotation marks omitted). Because standing is a constitutional requirement, a court faced with a challenge to standing must resolve that issue before proceeding further with the case. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992).

"For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed by* a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 426-27.

### B. <u>Plaintiffs Have Not Suffered an Injury-In-Fact Close to a Common Law Analogue</u>

Here, a business-to-business disclosure of metadata–at best, a *private* disclosure of metadata collected over the public Internet–is simply different in kind than any claim actionable at common law. Indeed, business-to-business disclosures have never been actionable by common law for multiple reasons. Separately, Plaintiffs do not, because they cannot, allege that they had a reasonable expectation of privacy in metadata associated with their visit to a commercial website on the public Internet being disclosed to a service provider, the *same service provider* (Google), Plaintiffs used to access the website.

Nor do Plaintiffs plead any non-conclusory allegations of particularized injury. Rather, Plaintiffs conclusorily assert generic violations of 1980s privacy statutes applicable to telephone wiretapping and prerecorded video cassette tapes – as they are visiting a commercial website on the public Internet while logged into their

Google accounts. This case does not remotely involve a concrete injury that should be clogging the Court's docket, and should be dismissed solely for lack of standing.

**1. The Harms Congress Sought to Address Through the ECPA and VPPA Are Not Remotely Implicated Here**

The Electronic Communications Privacy Act ("ECPA") was passed in 1986 to balance individual privacy rights against the *needs of law enforcement*.[3] In other words, it was meant to constrain *the government* from snooping on citizens. Further, not only is the ECPA a *one-party consent* statute, 18 U.S.C. § 2511(2)(d), it also expressly carves out from the devices capable of implicating the law anything "used by the subscriber or user in the ordinary course of its business." *Id.* § 2510(5)(a).

The VPPA, in turn, was enacted in response to a local newspaper publishing Judge Robert Bork's video rental history in an effort to publicly embarrass him during his confirmation hearings.[4] In short, it was these efforts to embarrass consumers by *publicizing* their private video-tape viewing history that spurred Congress to pass the VPPA to prevent weaponized disclosures *to the public*. In contrast to such public disclosures of private facts, Congress expressly exempted any disclosure of personally identifiable information "to any person if the disclosure is incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). Congress defined "ordinary course of business" to mean "debt collection activities, **order fulfillment, request processing**, and the transfer of ownership." *Id.* at § 2710(a)(2) (emphasis added). And importantly here, Congress expressly intended that this "ordinary course of business" exception "allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for **marketing to their customers**. ***These practices*** are called '**order fulfillment**' and '**request**

---

[3] *See generally* https://epic.org/ecpa/#:~:text=The%20Electronic%20Communications%20Privacy%20Act,personal%20information%20would%20remain%20safe.

[4] *See generally*, https://en.wikipedia.org/wiki/Bork_tapes.

**processing**.'" S. Rep. No. 100-599, at 14 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-12 (emphasis added).

Congress thus directly addressed, and exempted from any liability, the activity Plaintiffs are complaining about here: RedGIF's alleged use of Google Analytics expressly for the purpose of "understanding how people use the Website." Am. Compl. 177. In short, while these allegations simply fail to state a claim under the "ordinary course of business" exceptions to both ECPA and VPPA claims, just as critically here, they also fail to establish any concrete harm necessary for Article III standing, precisely because "Congress *didn't* elevate the" disclosure of PII to another business for analytics purposes as "a legally cognizable injury." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022).

Indeed, there is a fundamental reason why Plaintiffs' statutory claims, in addition to their common law claims, would **never** be actionable. And that's because it is hornbook law that companies can disclose information, even tortious information, to an employee, agent, or independent contractor if done as part of the company's normal business operations. *See Szot v. Allstate Ins. Co.*, 161 F. Supp. 2d 596, 606 (D. Md. 2001) (dismissing defamation claim because there is qualified privilege for business to communicate defamatory content without liability); *Burch v. Coca-Cola Co*., 119 F.3d 305, 323 (5th Cir. 1997) (recognizing that company has qualified privilege to communicate even misinformation to contractor).

And this qualified privilege between a company and independent contractors simply extends even older common law agency principles. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 7805628, at *14 (N.D. Cal. Aug. 4, 2016) (the agent "stands in the shoes of the principal on matters within the scope of the agency"), *rev'd and remanded on other grounds*, 720 F. App'x 835 (9th Cir. 2017); *Goldstein v. Union Nat. Bank*, 213 S.W. 584, 589 (Tex. 1919) ("There is a full and complete merger of identity … of principal and agent."); *Hooker v. Wanigas*

*Credit Union*, 835 F. App'x 110, 112 (6th Cir. 2021) ("Agents stand in the place of their principals.") (citing Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006)). In short, providing information to vendors like Google to assist RedGIFs' business, which is what Plaintiffs are alleging, would not be an actionable "harm" at all under the common law for this reason alone.

**2. Business-to-Business Disclosures Do Not Cause Any Concrete Harm Required for Standing**

On standing, the Supreme Court's precedent makes clear that intangible harms don't count as concrete if they lack an element "essential to liability" at common law. *TransUnion*, 594 U.S. at 434. At common law, non-public disclosures weren't actionable. Indeed, the only *distant* common law tort Plaintiffs *should*[5] be able to point to here is *public* disclosure of private facts. But critically, American tort law didn't allow plaintiffs to sue for disclosures of their personal information unless the disclosures were *both* outrageous *and* made to the public at large, rather than to a few individuals. *See* Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977).

Because Article III standing requires the plaintiff to allege an injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," *TransUnion*, 594 U.S. at 424, and in the lead-up to the Ninth Circuit's holding in *Popa v. Microsoft Corp*., 153 F.4th 784, 791 (9th Cir. 2025), the Third, Seventh, Tenth, and Eleventh Circuits have all held that consumers cannot bring claims in federal court challenging private, business-to-business disclosures. *See Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir.

[5] Plaintiffs claim for intrusion upon seclusion is objectively meritless because Plaintiff's were allegedly watching pornography on the *public* Internet *on RedGIFs' website.* RedGIFs cannot have "intentionally interfered" with the operation of its own website, nor can Plaintiffs have an objectively reasonable expectation of privacy. *See Dawidzik v. Tesla Inc.*, Civ. No. 25-1982-KK-SPx, 2025 WL 3786963, *4 (C.D. Cal. Dec. 29, 2025) (analyzing elements of intrusion upon seclusion claim and holding plaintiff lacked standing for comparable website privacy claim because he had no reasonable expectation of privacy that personally identifiable metadata associated with his website visit *wouldn't* be collected and shared).

2024), *cert. denied*, 145 S. Ct. 169 (2024); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 733 (7th Cir. 2023); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (*en banc*). Although these courts used different methodologies, they all reached the same conclusion: that business-to-business disclosures are fundamentally unlike the public disclosures actionable at common law, and thus do not cause the harm that Article III requires.

The Eleventh and Seventh Circuit courts held that consumers don't suffer concrete harm from disclosures of their information between businesses because such claims cannot satisfy the public disclosure tort's publicity element. In *Hunstein*, a consumer sued a debt collection agency alleging that the agency violated the Fair Debt Collection Practices Act (FDCPA) by disclosing the consumer's debts to its mail processing vendor. *Hunstein*, 48 F.4th at 1240. The plaintiff argued that the debt collector's disclosure "caused him a concrete injury because it was analogous to the common-law tort of public disclosure." *Id.* The *en banc* Eleventh Circuit disagreed. The court held that consumers lack standing to bring statutory claims "when an element 'essential to liability' at common law is missing from [their] alleged harm." *Id.* at 1244.

With that holding, the court made the standing analysis an "exercise in simplicity." *Id.* at 1245. The public disclosure tort does not reach "communications that are private rather than public." *Id.* at 1245-46. "Instead, it requires that a matter be 'made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* at 1246 (quoting Restatement (Second) of Torts § 652D cmt. a). The Seventh Circuit followed the Eleventh Circuit's approach in *Nabozny*, a "materially identical" case. 84 F.4th at 735. There too, since the consumer's theory of injury thus "lack[ed] a necessary element of the [public disclosure] tort—the

requirement that the disclosure be public," it was not concrete enough to confer Article III standing. *Hunstein*, 48 F.4th at 1240.

The Tenth and Third Circuits likewise held that consumers suffer no concrete injury from **private** disclosure of their personal information from one business to another, because private disclosures do not cause the same *kind* of harm as the public disclosures actionable at common law. That is, under the Tenth Circuit's analysis, the plaintiff's "alleged harm"—"that one private entity (and, presumably, some of its employees)" learned her private information—was not sufficiently similar to any harm recognized at common law. *Shields*, 55 F.4th at 829.

Applying the Tenth Circuit's harm comparison approach, the Third Circuit likewise held that a consumer failed to allege a concrete injury and thus lacked standing in another case claiming that a business-to-business disclosure violated a statutory "privacy" right. The court reasoned that "the harm" recognized by the public disclosure "tort is 'the humiliation that accompanies the disclosure of sensitive or scandalizing private information to **public scrutiny**.'" *Barclift*, 93 F.4th at 145-46 (emphasis added). Business-to-business "disclosures that remain functionally internal are not closely related to those stemming from public ones," the court explained, because communications between businesses are "unlikely to result in the type of humiliation associated with the traditional injury." *Id.* at 146 & n.4.

Against this backdrop, the Court of Appeals weighed in last August[6] in *Popa*, a comparable "website (non-)invasion of privacy" case. The court began by analyzing its sister courts' holdings above, and while it did not specifically adopt one approach or the other, it found that Popa could not satisfy either test. *Id.* at 791 ("these approaches all share an important feature: they look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort.")

---

[6] The Fourth Circuit also issued a case directly on point in October. *See Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 425 (4th Cir. 2025) ("public disclosure and private disclosure strike us as differing in kind").

(emphasis in original). The court rejected that website tracking would be similar to "an intentional interference with his interest in solitude or seclusion," as "the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers." *Id.* And of course, a business monitoring *its own store* would not be remotely actionable at common law. The court then went on to also reject that website tracking could be similar to "a claim for public disclosure of private facts" because that tort "requires that a defendant '**gives publicity**' to a matter." *Id.* In other words, a *private* disclosure would not be actionable at common law.

In fact, notably here, the court specifically called into question the validity of its pre-*TransUnion* VPPA decision, *Eichenberger v. ESPN, Inc.*, 876 F. 979 (9th Cir. 2017). *See Popa,* 153 F.4th at 794 ("But even though our analysis in *Eichenberger* … might have arguably offered at the time some support for the position that Popa now advances, that analysis finds no support in *TransUnion*" and "we might analyze [the VPPA] differently today, especially after the Supreme Court's decision in *TransUnion*."). Ultimately, the court held that a plaintiff claiming her privacy was violated by a website operator did not experience a harm "remotely similar to those protected by" any common law analogue. *Id.* at 792. That is even more true here in this game of three-person whisper-down-the-alley.

**3. Plaintiffs Do Not Have a Reasonable Expectation of Privacy in Their Activity on a Commercial Website**

Grounded in the Third-Party Doctrine,[7] there is a distinct strain of standing authority holding that there can be no reasonable expectation that metadata collected when visiting a commercial website is *not* being shared with third parties. That's because when one accesses a website, personally identifiable metadata like IP addresses, browser activity and webpages viewed are inherently transmitted not only

[7] *See, e.g.*, *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (holding no legitimate expectation of privacy in data turned over to third party telephone company).

to the website operator, but numerous third parties along the way – such as Google if one is using the Google Chrome browser (like this case), your ISP, and the numerous other service providers like Amazon Web Services that make up the public Internet.

Based on this, courts routinely and consistently hold that information concerning a person's website activity is simply not subject to a legitimate privacy expectation – including specifically in the context of the *pornographic* videos one watches over the Internet. *See United States v. VanDyck*, 776 F. App'x 495, 496 (9th Cir. 2019) (refusing to suppress evidence of child pornography viewed over the Internet because "users have **no expectation of privacy in the IP addresses of the websites they visit**") (emphasis added); *see also United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) (holding that even if someone had a *subjective* expectation of privacy in the data associated with their website activity, "it would not be one that society is prepared to recognize as reasonable").[8]

Similarly, in *United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010), the Fourth Circuit held that data showing that the defendant's IP address used to access a specific website where "uploaded images and video" were hosted would not be subject to an "objectively reasonable" expectation of privacy. *Id.* at 164. "Indeed, '**[e]very federal court to address this issue** has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.'" *Id.* (emphasis added) (citing *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008) (collecting cases)); *see also United States v. Weast*, 811 F.3d 743, 747 (5th Cir. 2016) (same).

Here, it bears emphasizing that the information at issue in these cases allowed

[8] Plaintiffs' Amended Complaint begins with the entirely inapt analogy to *Lawrence v. Texas*, 539 U.S. 558 (2003) – which involved police officers kicking in the door of a private residence of two consenting adults engaged in sexual conduct. It is absurd to imply that a website on the public Internet, even a pornographic one, is "the most private of places." Am. Compl. ¶ 1.

the government – without a warrant, and as a complete stranger – to identify a specific person *and* the specific (illegal) *pornographic video* content they were viewing on a website. And it should be an obvious point that our Constitutional framework is built around protecting citizens ***first and foremost from government*** invasions of privacy. *See* U.S. Const. amend. IV. If it's uniformly held that there is no reasonable expectation of privacy that could prevent the federal government from finding out exactly what videos someone is watching on the Internet (and then locking them up for life), then it is that much more unreasonable to claim that there's a legitimate invasion of privacy here.

Indeed, Plaintiffs here were allegedly logged into their Google accounts after they necessarily accepted Google Terms and Privacy Policy,[9] which Plaintiffs expressly incorporate into their Complaint. Am. Compl. ¶ 41. Plaintiffs further were using Google Chrome to visit the RedGIFs' website on the public Internet with its own privacy policy, and they still claim to be shocked when Google obtains metadata about their activity. Again, ***while they are using Google services to visit RedGIFs***. If "every federal court" has held it is objectively unreasonable to have an expectation of privacy that the government cannot find out what videos someone is watching on the Internet, using your personally identifiable metadata to do so, then it should be objectively absurd for Plaintiffs in this case.

For the avoidance of doubt, courts also "consistently extend[] this [Fourth Amendment] reasoning to alleged injuries to privacy in the civil context in analyzing whether there is an injury under Article III." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179-80 (N.D. Cal. 2025) (collecting cases);[10] *see also Mitchener v.*

---

[9] *See*, e.g., https://policies.google.com/privacy?hl=en-US (Google expressly informs its users that they collect "Chrome browsing history you've synced with your Google Account" and they further inform users how to "[m]anage information that websites and apps using Google services, **like Google Analytics**, may share with Google when you visit or interact with their services.") (emphasis added).

[10] *See also Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, *1-2 (9th Cir. Dec. 17, 2024); *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024) ("We do so not because we think she experienced only a slight

*CuriosityStream, Inc*., No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (dismissing California Invasion of Privacy Act claim and holding "Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location)."); *see also Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (dismissing privacy complaint for lack of any injury because "acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website" could not be associated with reasonable expectation of privacy).

This case is no different. Merely visiting a public website can hardly cause any concrete injury from its collection of *anonymous* metadata. Plaintiffs cannot have a reasonable expectation of privacy as a matter of law and all of their claims must fail for lack of standing as a result. The Amended Complaint should be dismissed with prejudice.

## IV. <u>PLAINTIFFS FAIL TO STATE A CLAIM</u>

The lack of any well-pled allegation of injury not only requires dismissal of this case on standing grounds, but it is also fatal to Plaintiffs' claims on the "merits" – particularly their common law claims. Indeed, it is hornbook tort and contract law that without damages or injury, there can be no claim on this basis alone.[11]

For the avoidance of doubt, however, RedGIFs first establishes below that Plaintiffs plead themselves out of Court with respect to their two federal law claims under the ECPA and the VPPA. Without these two claims providing the Court federal question jurisdiction, and with no well-pled allegations that Plaintiffs could

---

invasion of her privacy, . . . but because her allegations do not plausibly suggest that she suffered **any such invasion <u>at all</u>**.") (emphasis added); *see also Saeedy v. Microsoft Corp.*, No. 23-CV-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023); *Moore v. UPS, Inc.*, No. 18-cv-07600-VC, 2019 WL 2172706, at *1 (N.D. Cal. May 13, 2019) ("[A] reference to invaded 'privacy and statutory rights' . . . [is] insufficient to describe a concrete" injury.).

[11] *See, e.g., Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1082 (C.D. Cal. 2025) ("The elements of a negligence tort cause of action are duty, breach, causation and damages.");

possibly be entitled to damages to satisfy the amount-in-controversy requirements, the Court can and should dismiss Plaintiffs' otherwise meritless state law claims for lack of jurisdiction.

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Plaintiffs' ECPA Claim Fails as a Matter of Law Because They Expressly Allege RedGIFs Utilizes Google Analytics in the Ordinary Course of its Business

As detailed above, the ECPA imposes liability only where a defendant "intercepts" an electronic communication through the use of a device **outside the ordinary course of its business**. 18 U.S.C. § 2510(5)(a). A business's use of the most widely used analytics tool – indeed, the very one used on the Court's and Plaintiffs' counsel's websites – for routine operational purposes is categorically excluded from the definition of an "intercepting" device. Here, far from plausibly alleging that RedGIFs used Google's tools for an improper purpose, Plaintiffs explicitly and repeatedly **plead the opposite**: that RedGIFs employed Google Analytics and related Google business products precisely in the ordinary course of its business.

More specifically, the Amended Complaint describes Google Analytics, Google Tag Manager, and Google AdSense collectively as Google's "Business

Tools," and alleges that website operators like RedGifs routinely use these tools to "understand their site and app users," "check the performance of their marketing," and "get insights only Google can give." Am. Compl. ¶ 40. Plaintiffs further allege that these tools are widely used across the web, that Google provides them to "many website operators for free," and that operators use them for "deploying targeted advertising," "customer analytics," and to "improve their content and keep it free." *Id.* ¶¶ 8–11, 41, 48–49. Indeed, Plaintiffs freely admit that Google *publicly discloses* all of this in "its *Privacy & Terms* page" – to which all of its users agree.

Clearly, these allegations can only support the conclusion that RedGIFs utilized Google Analytics strictly for its ordinary business purposes, necessarily meaning that Google Analytics cannot be used to "intercept" anything as a matter of law. *See* 18 U.S.C. § 2510(4)(5).[12] To be sure, Plaintiffs include a makeweight allegation that RedGIFs "intentionally intercepted" the "contents" of Plaintiffs' "communications for the purpose of committing a tortious act in violation of the Constitution or law of the United States." Am. Compl. ¶ 170. But this is a purely conclusory allegation devoid of any *facts* (well-pled or otherwise) and must be disregarded by the Court as a result. Indeed, in order to possibly attempt to plead the crime-tort exception, Plaintiffs must allege sufficient actual facts that plausibly establish that either the "**primary motivation** or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (quotation omitted).

In fact, several decisions from the federal courts in California have reasoned "that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *Id.*; *see also Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (finding the exception inapplicable

[12] Plaintiffs' misleading elisions of the relevant statutory definitions should not be well taken by the Court. Am. Compl. ¶¶ 163-64.

where Google's alleged interceptions occurred with the consent of application developers and were financially motivated); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 (N.D. Cal. Mar. 18, 2014) (Koh, J.) (same). On this basis alone, Plaintiffs have pled themselves out of court.

Independently, the ECPA only protects the "contents" of a communication, defined as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). In other words, only "a person's intended message to another" is protected, and mere "record" information falls outside the law. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Record information includes URLs, search queries, mouse clicks, IP addresses, unique online identifiers, webpages visited, geolocation, and device settings. *See, e.g., King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-cv-01119, 2025 WL 1635419, at *4 (June 9, 2025); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, **pages viewed**, and … **Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system** on her device" were not protected content."). Of course, that is also the type of record information that Plaintiffs complain about here. Am. Compl. ¶ 64. Nor do they ever allege that they ever sent any communication to RedGIFs at all, let alone one that was "intercepted."

Accordingly, Plaintiffs' ECPA claim is meritless for multiple reasons. The only allegations they do include, conclusory as they are, can only support the inference that RedGIFs utilizes Google Analytics for its ordinary business operations, and no content of communications is recorded in any event. This claim should be dismissed with prejudice.

### C. <u>The VPPA Claim Fails Because No Ordinary Person Can Decipher the Metadata at Issue</u>

If Plaintiffs' ECPA claim is meritless, their VPPA borders on the objectively

frivolous under controlling Ninth Circuit precedent. To state such a claim, Plaintiffs must adequately allege that RedGIFs (1) is a video tape service provider; (2) that knowingly disclosed to any person; (3) personally identifiable information ("PII"); (4) concerning any consumer. *See* 18 U.S.C. § 2710(b)(1); *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

Plaintiffs' claim here fails for multiple reasons. The most straightforward is that the Court of Appeals ruled in *Eichenberger* that to qualify as PII protected under the statute, it must be "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d at 985. Put differently, information is not PII merely because a sophisticated third party like Google can combine the data, such as unique identifiers, to possibly identify a consumer. *Id.* at 985-86 (courts "look[] to what information a video service provider discloses, **not to what the recipient** of that information decides to do with it."); *see also Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 53 (2d Cir. 2025) (noting that Congress refused to update the "definition of personally identifiable information, even in the face of testimony asking for an expansion of the definition to include IP addresses"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 288 (3d Cir. 2016); *Hughes v. NFL*, No. 24-2656, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025) (ordinary person standard "shut[s] the door for Pixel-based VPPA claims.").

Here, the Court can easily apply this controlling standard against Plaintiffs' screenshot manufactured for the purposes of this litigation. Am. Compl. ¶ 69. That is, no "ordinary person" can review this metadata and ascertain what specific person is watching what specific video. Indeed, if one thinks they can even narrow it down to one of the thousands of "Sam Smiths," they'd be wrong – because this activity belongs to Mr. Singh. And what specific video he was watching is anyone's guess. Of course, Plaintiffs never allege that *they* provided any PII *to even Google* – let alone to RedGIFs. This alone is dispositive.

Further, by her own admission, L.O. never registered for an account. She visited a free website and did nothing more. Thus, not only would she not have a username like "samsmith1367" or "luckystar###," but she independently would not qualify as a "consumer" under the statute, because she is not a "renter, purchaser, or subscriber." 18 U.S.C. § 2710(a)(1).

Finally, RedGIFs is not a "video tape service provider" because it does not "rent, sell or deliver" anything on its website, let alone "prerecorded video cassette tapes or **similar** audio visual **materials**." *Id.* at §2710(a)(4) (emphasis added). Indeed, as the Eighth Circuit just squarely addressed, the VPPA can only be fairly interpreted to embrace *physical* media under its plain and ordinary meaning. *See Christopherson v. Cinema Entertainment Corp.*, 161 F.4th 525, 528 (8th Cir. 2025). That is, the court "must interpret '[similar] audio visual materials' by reference to the item that precedes it, 'prerecorded video cassette tapes.'" The court then reasoned that "[i]mmediately after 'audio visual' is the word 'materials.' 'Materials' like prerecorded video cassette tapes **have a physical existence**." *Id.* (emphasis added).

While pages could be spent on the "origin story" of how the VPPA has been misapplied to *immaterial* streaming content, the crux of the matter is that Supreme Court consistently reminds us that "the whole point of having written statutes" is that "every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). And when Congress enacted the VPPA, it clearly explained what *physical material* it viewed as "similar audio visual materials, **such as laser discs, open-reel movies, or CDI technology**." *See* S. Rep. No. 100-599, at 12 (emphasis added). And just as importantly, Congress *already* enacted privacy laws for *immaterial video content* under the Cable Act. *See* 47 U.S.C. § 551 (1984 statute added to address "Protection of subscriber privacy" applicable to cable TV services – the "streamed" content of its day). And not once did Congress, four years later, even hint that the VPPA would also apply to cable TV. To be sure, no

VPPA decision hints at that possibility either. Again, the Court's "job is to interpret the words consistent with their 'ordinary meaning ... **at the time Congress enacted the statute**.'" *Sanzone v. Mercy Health*, 954 F.3d 1031, 1040 (8th Cir. 2020) (emphasis added). Applying the VPPA to online content cannot be squared with the plain language of the statute, its legislative history, *or* its historical context.

For all these reasons, Plaintiffs' VPPA claims should be dismissed with prejudice.

### D. Plaintiffs' Remaining Claims All Lack Merit

While Plaintiffs never subscribed to anything offered by RedGIFs, they certainly subscribe to the theory of throwing as many claims as possible against the wall to unnecessarily multiply these proceedings. As detailed above, however, not only is the Amended Complaint devoid of any well-pled allegations of *intangible* injury, they do not remotely plead any *actual damages* necessary to possibly sustain any of their remaining claims.[13] While that is sufficient to set these claims aside, RedGIFs briefly chases Plaintiffs' remaining rabbits down their holes.

#### 1. Intrusion Upon Seclusion

As already established above, Judge Kato recently dismissed a website privacy claim against Tesla, flatly rejecting that it was *even analogous* to an intrusion upon seclusion claim. *Tesla,* 2025 WL 3786963, at *4. That's because the "first element requires an 'objectively reasonable' expectation of privacy, while the second focuses on 'the degree and setting of the intrusion, and the intruder's motives and objectives.'" *Id.* As thoroughly detailed above, Plaintiffs' cannot have an objectively reasonable expectation of privacy as a matter of law, nor can RedGIFs "intrude" on its own website. *See also Cook v. GameStop Inc.*, 148 F.4th 153 (3rd Cir. 2025) (rejecting intrusion upon seclusion theory because "what we do on the Internet is not

---

[13] For the avoidance of doubt, courts in this circuit routinely dismiss cases where any potential injury is based on "the loss of the inherent value of their personal data." *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1089 (N.D. Cal. Sept. 7, 2023).

completely private.")

### 2. Negligence

Plaintiffs do not allege any facts that could possibly support the conclusion that RedGIFs assumed any independent *duty* to Plaintiffs. There is no special relationship between the Parties or any statutory duty applicable here that would apply to RedGIFs as a website operator. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021) (holding that if no "special relationship" existed, negligence theory cannot survive).

### 3. Breach of Implied Contract

Not only do Plaintiffs lack any damages, but the parties cannot have an implied contract because "there cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Randall v. Univ. of the Pac.*, No. 5:20-cv-03196, 2022 WL 1720085, at *4 (N.D. Cal. May 28, 2022); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056-57 (N.D. Cal. 2021) (same for unjust enrichment). The only "offer on the table" for any visitor's use of RedGIFs' website is its generally applicable Terms.

### 4. Unjust Enrichment

There is not a stand-alone cause of action for unjust enrichment, even if Plaintiffs had remotely pled any actual benefit that they conferred on RedGIFs by visiting its free website on the public Internet – which they clearly do not.[14]

### 5. N.Y. Gen. Bus. Law § 349

Among other elements, a claim under Section 349 requires a defendant to engage in "*affirmative conduct* that would tend to deceive consumers." *Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 991 (2020); *Anderson v. Friendly Auto Ventures, Inc.*, No. 5:22-CV-545 (MAD/ML), 2023 WL 2048256, at *3 (N.D.N.Y. Feb. 15, 2023) (same). Here, Plaintiffs do not allege *any* representation or other

[14] *Vizcarra v. Michaels Stores, Inc.,* 710 F. Supp. 3d 718, 731 (N.D. Cal. 2024).

affirmative conduct by RedGIFs that misled them. Rather, their *entire* case is based solely on *their* objectively unreasonable *subjective* expectations of privacy—that Google somehow wouldn't obtain data on their website activity *while using Google*. That does not implicate any affirmative conduct on RedGIFs part, let alone any actionable misrepresentation.

## V. CONCLUSION

For the foregoing reasons, RedGIFs respectfully requests that this Court dismiss Plaintiffs' Amended Complaint in full, with prejudice.

Dated: January 16, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: /s/ Susanne Boniadi
SUSANNE BONIADI
ADAM D. BOWSER (*pro hac vice forthcoming*)
Attorneys for Defendant
VERGIL SERVICES, INC.

**LOCAL RULE L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Vergil Services, Inc. certifies that this brief contains 6,715 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 16, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: *<u>/s/ Susanne Boniadi</u>*
SUSANNE BONIADI
Attorneys for Defendant
VERGIL SERVICES, INC.