SUSANNE BONIADI (SBN 341512)
susanne.boniadi@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

ADAM D. BOWSER (*pro hac vice*)
adam.bowser@afslaw.com
**ARENTFOX SCHIFF LLP**
717 K Street NW
Washington, DC 20006
Telephone: 202.857.6000
Facsimile: 202.857.6395

Attorneys for Defendant
VERGIL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

L.O., and G.V., individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERGIL SERVICES, INC. D/B/A REDGIFS;

Defendant.

Case No. 2:25-cv-05102-PD

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Date: March 30, 2026
Time: 1:30 p.m.
Courtroom: Courtroom 580, 5th Floor
Judge: Hon. Patricia Donahue

Complaint Served: Aug. 13, 2025
FAC: Dec. 19, 2025

## TABLE OF CONTENTS


I. FACTUAL AND PROCEDURAL BACKGROUND .................................... 6

A. General Background on RedGIFs and the use of Google Analytics .................................... 6

B. Plaintiffs' Proposed Second Amended Complaint .................................... 13

II. LEGAL STANDARD .................................... 17

III. ARGUMENT .................................... 19

A. THE PROPOSED AMENDMENTS ARE BROUGHT IN BAD FAITH TO VEXATIOUSLY MULTIPLY THE PROCEEDINGS .................................... 19

1. The Timing and Circumstances of the Proposed Amendment Demonstrate Bad Faith .................................... 19

2. The Proposed Amendments Do Not Cure the Deficiencies Identified in Defendant's Pending Motions, and Are Thus Futile .................................... 22

a. The SAC Does Not Cure the Lack of Article III Standing .................................... 22

b. The SAC Does Not Cure the ECPA Claim's Fatal Flaws .................................... 23

c. The SAC Does Not Cure the VPPA Claim's Fatal Flaws .................................... 24

d. The SAC Does not Plead Any Facts Suggesting Plaintiff G.V. Is not Subject to Arbitration; It Simply Adds More Plaintiffs Subject to the Arbitration Provision .................................... 24

3. Plaintiffs Have a History of Dilatory Tactics in This and Related Litigation .................................... 25

IV. CONCLUSION .................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. CoStar Realty Information Inc.*,
2025 WL 2959228 (E.D. Mo. Oct. 20, 2025) .......... 24

*California v. Neville Chemical Co.*,
358 F.3d 661 (9th Cir. 2004) .......... 17, 18

*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 24

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 19

*Forsyth v. Humana, Inc.*,
114 F.3d 1467 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999) .......... 18

*Griggs v. Pace Am. Grp., Inc.*,
170 F.3d 877 (9th Cir. 1999) .......... 19

*H. v. Cybernet Entem't LLC*,
3:25-cv-04682-VC (N.D. Cal.) .......... 8

*H. v. Cybernet Entem't LLC*,
No. 3:25-cv-04682-VC (N.D. Cal.) .......... 25

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) .......... 17, 18

*Janicki Logging Co. v. Mateer*,
42 F.3d 561 (9th Cir. 1994) .......... 17, 18

*Jordan v. Los Angeles Cty.*,
669 F.2d 1311 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) .......... 18

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994) .......... 18

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) .......... 12

*Mannhalt v. Reed*,
847 F.2d 576 (9th Cir.1988) .......... 13

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) .......... 18

*Moore v. Kayport Package Exp., Inc.*,
885 F.2d 531 (9th Cir. 1989) .......... 18

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) .......... 17

*Naas v. Stolman*,
130 F.3d 892 (9th Cir. 1997) .......... 18

*Naranjo v. Bank of Am. Nat'l Ass'n*,
No. 14-CV-02748-LHK, 2015 WL 913031 (N.D. Cal. Feb. 27, 2015) .......... 19, 25

*Nunes v. Ashcroft*,
375 F.3d 805 (9th Cir. 2003) .......... 19

*People v. Nakai*
(2010) 183 Cal.App.4th 499 .......... 23

*People v. Stipo*,
195 Cal. App. 4th 664 (2011) .......... 23

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) .......... 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 22

*Rogers v. Ulrich*
(1975) 52 Cal.App.3d 894 .......... 23

*Roth v. Garcia Marquez*,
942 F.2d 617 (9th Cir. 1991) .......... 18

*United States v. Fulton*,
5 F.3d 605 (2d Cir. 1993) .......... 13

*Wimm v. Jack Eckerd Corp.*,
3 F.3d 137 (5th Cir. 1993) ........ 18

**Statutes**

18 U.S.C. § 2510(5)(a) ........ 23

Fed. R. Civ. P. 11 ........ 8, 15

Fed. R. Civ. P. 15 ........ 17, 18, 19

Fed. R. Evid. 408 ........ 20

**Other Authorities**

California Invasion of Privacy Act ("CIPA") ........ 12, 21

California Privacy Protection Agency ........ 9

Electronic Communications Privacy Act ........ 11, 21, 23

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. General Background on RedGIFs and the use of Google Analytics

As Vergil Services, Inc. d/b/a RedGIFs ("RedGIFs") has already established in its pending Motions,[1] this is an objectively meritless case on both the facts and the law. This case started on June 5, 2025, with the original plaintiffs D.M., L.O. and G.V, claiming they had **each registered for an account** on the RedGIFs website "and utilized" their accounts "on multiple occasions in 2024 and 2025, to view pornographic media." Compl.[2] ¶¶ 17, 22, 27. Like most online accounts, if D.M., L.O. and G.V. had registered for RedGIFs accounts as they represented to the Court, they would have received email confirmation messages, as well as the continued ability to log into their accounts. In other words, these basic allegations, central to their entire case, should have been easily and independently verifiable to Plaintiffs and their counsel before filing the original Complaint.

As it turns out, however, **D.M. never even <u>visited</u> the RedGIFs website**, and exited the case. *See*, *generally*, Am. Compl.[3] L.O. now claims that while she has visited the website, she "never registered for an account on the Website." *Id.* ¶ 17. She alleges this while simultaneously asserting that "any person who wishes to browse even its free content must register for an account on the Website to gain access." And for her part, G.V. now claims that while she did not register for an account in 2024 as originally alleged, she did so "in our [*sic*] around April of 2025." *Id.* ¶ 22. Notably, G.V.'s actual registration occurred around the same time as her counsel's.

Thus, of the three original Plaintiffs who represented to the Court that they had registered for RedGIFs accounts two years ago and frequently used their accounts since that time, only one ***ever*** did. And even then, G.V. registered shortly before the

---

[1] Motion to Compel Arbitration, ECF No. 27 ("MTC") and Motion to Dismiss, ECF No. 28 ("MTD").

[2] *See* Class Action Complaint (ECF No. 1) ("Complaint").

[3] Amended Class Action Complaint (ECF No. 26).

original Complaint was filed, along with her attorney – clearly suggesting that this entire case was manufactured from the start. Further, the only activity RedGIFs could actually discern for any of the Plaintiffs on its website was that G.V. registered for an account on April 17, 2025, and did nothing more that day. While she returned the following day, she never left the homepage and never clicked on *any* video. *Id.* That was her last time on the website as far as RedGIFs can tell, as she has never logged in again.

Plaintiffs' Counsel *should have* recognized the lack of veracity in these allegations before filing the original complaint. **Any reasonable** pre-suit investigation would have easily confirmed their inaccuracy. Again, whether any individual actually registered for a RedGIFs account or viewed the website would be information available to that individual and easily shareable with Plaintiffs' Counsel – whether by providing screenshots, their login details, or browsing history. Indeed, each Plaintiff alleges that they were logged into Google when they claim to have visited the website – meaning Google would necessarily have a record of that information *independent* of RedGIFs usage of Google Analytics, one of the central absurdities of this "privacy" case. Just ask Google:



This litigation is not an isolated occurrence. The same litigation group has been pursuing identical scattershot complaints against other pornography websites, including in the recently dismissed case *H. v. Cybernet Entem't LLC*, 3:25-cv-04682-VC (N.D. Cal.). In that matter, Judge Chhabria issued an Order to Show Cause "why the case should not be dismissed" because of similar conduct. ECF No. 24. In response, Plaintiffs' counsel informed the court that instead of (timely) opposing a motion to dismiss, they similarly "amended their to complaint to specify that, while Plaintiff C.C. did view pornographic videos on the Website, she did not register for an account to do so." ECF No. 25 at 5. Ultimately, after Judge Chhabria ordered that he "will impose sanctions if plaintiffs continue to litigate the case recklessly," ECF No. 38, the plaintiffs dismissed the case. ECF No. 39.

Unfortunately for RedGIFs, what's past is prologue, as previewed above. With respect to Plaintiffs' counsel, there is no legitimate reason they could not have confirmed whether their clients registered for an account before filing suit, as they could have, and should have, simply asked their clients for their login credentials, the email confirmation message they would have received, or their browsing history to confirm they've even been on the website; basic due diligence to ensure that the core factual representations made to the Court have evidentiary support. *See* Fed. R. Civ. P. 11(b)(3).

And that's before we even get to the "merits" of Plaintiffs' only real complaint here: that RedGIFs is one of the tens of millions of websites that uses Google Analytics, the most widely deployed website-analytics tool in the world.[4] Indeed, just how common is it for website operators to use Google Analytics? The Court's own PACER website utilizes it, including in such a way that website visitors' search terms are sent to Google:

---

[4] By some estimates, over half of *all websites* use Google Analytics. *See* https://www.narrative.bi/analytics/google-analytics-statistics-ga4-included#:~:text=Google%20Analytics%20remains%20a%20dominant,are%20using%20Google%20Analytics%204




The California ***Privacy Protection*** Agency also uses it in the same way:



As does the United States Attorney's Office for the Central District of California:




So too does Plaintiffs' counsel on their website:



As the screenshot above demonstrates, if a client or prospective client searches their website for legal advice, such as "Do you handle drug charges?", that query would be collected and sent to Google too. And Plaintiffs are expressly taking the position here that simply *visiting* the RedGIFs website is somehow a "communication" protected under *criminal laws* like the Electronic Communications Privacy Act. *See, e.g.*, Am. Compl. ¶ 111. It is therefore difficult to imagine a less principled pursuit of other businesses for setup claims under criminal law for doing *exactly* what they are doing themselves.[5]

In fact, Plaintiffs' Counsel is the *only* party utilizing Google's distinct marketing services on their website, as evidenced by the "Google Ads Conversion" tag activity below:




[5] Not to belabor the point, but Plaintiffs' counsel would be the *only* one here that would arguably have a potential duty, to both their clients and prospective clients, if website visits and searches were actual "communications." And even more ironically, as between RedGIFs, the Court's PACER website, the California Privacy Protection Agency, and Plaintiffs' counsel, the latter is the *only* one that does *not* have a privacy policy on their website. *See* https://slfla.com/.

It bears emphasizing that this is certainly not the first time that RedGIFs has identified that Plaintiffs' Counsel is using the **exact same technology** on their own website that they claim is a violation of criminal law[6] – now including the California Invasion of Privacy Act, the state where Plaintiffs' Counsel is located. Yet they are still sending their clients or prospective clients' "communications" with their website to Google **to this very day**:




With respect to Plaintiffs' Counsel, it is difficult to imagine how this could *not* be disqualifying. They are in the position of advocating that **what they are indisputably doing to their own clients** is a violation of criminal law when RedGIFs allegedly uses the same technology. This is not something that should be shrugged

---

[6] Principles of statutory interpretation require that acts of a legislative body receive **uniform interpretation**, regardless of whether the law is invoked in an administrative, civil, or criminal case. *See Clark v. Martinez*, 543 U.S. 371, 380 (2005); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.").

off with, "it's different when we do it." That is, attorneys cannot zealously represent their clients' interests if in so doing they would be advocating ***for their own criminal or civil liability*** – perhaps to the *same* clients. As the Ninth Circuit has held, when "an attorney is accused of crimes similar or related to those [at issue], an actual conflict exists because the potential for diminished effectiveness in representation is so great." *Mannhalt v. Reed,* 847 F.2d 576, 581 (9th Cir.1988); *see also United States v. Fulton*, 5 F.3d 605, 609 (2d Cir. 1993) ("an actual conflict of interest exists when an attorney engages in wrongful conduct related to the [same] charge," and further ruling that such a conflict is unwaivable).

**B. Plaintiffs' Proposed Second Amended Complaint**

Plaintiffs' Motion is based on a bait-and-switch. That is, they (falsely) assert that "the only delay in bringing *this Motion* is due to Defendant's counsel's lack of response … ." Mot. at 5 (emphasis added). As detailed below, the *only* amendment Plaintiff's counsel proposed was to fix their sloppy or contradictory boilerplate allegations. But the real question is not whether their *Motion* is timely, but whether the proposed *amended claims* and additional plaintiffs are timely and otherwise meet the standards for permissive amendment. And this is where they are deliberately vague on the facts – because it does not paint a picture of diligence or good faith in pursuing these claims.

More specifically, Plaintiffs assert that "**[s]ince filing this case**, Plaintiffs' counsel has been contacted by other potential claimants with analogous claims against Defendant." Mot. at 2 (emphasis added). Of course, this case was filed on June 6, 2025 (ECF No. 1). Plaintiffs' Counsel thus could have been (and very likely were) sitting on these additional proposed additional plaintiffs for over six months – for no other reason than to sandbag RedGIFs later in the case to impose additional costs by vexatiously multiplying the number of plaintiffs and makeweight claims.

In fact, there's a simple way for Plaintiffs' Counsel to resolve this issue: produce the records showing when they were contacted by the six new proposed

plaintiffs (with redactions for any privileged information or for *in camera* review). This is particularly relevant here because how these "website privacy" cases start is by Plaintiffs' Counsel soliciting people to **self-identify** as having visited certain websites:[7]




As we can reasonably infer from the results of the original three Plaintiffs and their blatantly false allegations in the Complaint, Plaintiffs' Counsel cannot be performing any independent verification of the information submitted on these forms. One cannot simply go from "all three plaintiffs registered for accounts in 2024 and frequently accessed the site using their accounts" to (1) D.M. never even visited the website, (2) L.O. never registered for an account (and there's no evidence she ever visited either), and (3) G.V. registered around the same month as Mr. Singh did shortly before the Complaint was filed.[8] That "evolution" cannot be chalked up to a

[7] *See* https://joinclassactions.com/class_actions/have-you-used-any-of-these-websites-in-the-past-2-years/ (last visited March 9, 2026). As indicated on this website, it is operated by Siri & Glimstad LLP, Plaintiffs' Counsel.

[8] Another relevant question would be when did G.V. fill out her "claim form" relative to her RedGIFs account registration. These forms are a not-so-subtle way

simple oversight. Rule 11 is a dead number if Plaintiffs' Complaint was the product of an objectively reasonable investigation – or *any* investigation at all. Indeed, it bears repeating that *RedGIFs* spent the months between the original complaint and First Amended Complaint filed on December 19, 2025 doing what should have been Plaintiffs' Counsel's **pre-suit** investigation for them as to the original three plaintiffs.

And in all that time, at no point did Plaintiffs' Counsel **ever** mention that they had any additional plaintiffs waiting in the wings, let alone six. That includes not only before the First Amended Complaint was filed on December 19, 2025, but both before *and* after RedGIFs' Motions were filed on January 16, 2026. Specifically, Plaintiffs' Counsel wrote to Counsel for RedGIFs *after* its Motions were filed: "[k]indly advise if you'll consent to Plaintiffs filing an amended Complaint, as was discussed on our call earlier this week with regards to **the issues raised below**." And the **only** issue discussed "below" was RedGIFs' counsel seeking clarity – before it filed its Motions – on the inanity of the remaining Plaintiffs alleging that everyone who visits the RedGIFs website "must register for an account on the Website to gain access," while Plaintiff L.O. specifically alleged she "never registered for an account." Am. Compl. ¶¶ 4, 17. And counsel for RedGIFs responded on January 26, 2026:

> We did not talk about a further amendment to fix the contradictory allegations, i.e., generically (and falsely) alleging that everyone who visits RedGIFs needs to register for an account, while L.O. never registered for an account.
>
> You can address that issue in [a] single sentence/footnote in your opposition without having to file another amended complaint (e.g., "Paragraph 4 was filed in error"). And I respectfully don't see how even fixing that would impact our arguments for dismissal at all. If you contend otherwise, explain how.

---

of *creating* the very "privacy violations" Plaintiffs' Counsel are soliciting – as it simply encourages people to visit the website for the promise of "COMPENSATION" – in ALL CAPS.

> As it stands now, filing an amended complaint to fix those contradictory allegations would simply impose unnecessary costs on Vergil to revise and refile all of its moving papers again – but for what purpose?

Plaintiffs' Counsel never once mentioned further amending the complaint to add additional claims or additional parties. Nor have they ever explained how these amendments would cure any of the (incurable) deficiencies identified in RedGIFs' pending Motions. And that is *still* true to this day, even after the Court ordered the parties to meet and confer on "the motion to file the proposed SAC" *and* for Plaintiffs to "specify whether and how the proposed SAC affects each argument raised in the motion to dismiss the FAC." ECF No. 36.

More specifically, on March 5, 2026, counsel for RedGIFs contacted Plaintiff's Counsel to meet and confer pursuant to the Court's February 27, 2026 Order. The parties met and "conferred" the following day, March 6, 2026. As a threshold matter, counsel for Vergil raised procedural deficiencies with the Motion for Leave. Specifically, Defendants were never served with notice of the Motion for Leave, nor did Plaintiff respond to the February 17, 2026 email from Ms. Verduzco, Courtroom Deputy for the Court, requesting confirmation that Plaintiffs' Motion had been properly filed and served. When confronted with these deficiencies, Plaintiffs' counsel stated that they had coordinated directly with the Court and maintained that no further action on their part was required.[9]

Undersigned counsel further explained that the proposed amendments fail to cure the deficiencies identified in RedGIFs' pending Motion to Dismiss. To that end, counsel requested additional information regarding the proposed new Plaintiffs so that RedGIFs could meaningfully evaluate the sufficiency of the amended claims. Plaintiff's counsel refused to provide any additional information and declined to engage in any substantive discussion concerning the merits of the Motion to Dismiss

---

[9] If that is true, that is respectfully an improper *ex parte* communication to the Court. Counsel for RedGIFs should have been included on any correspondence with the Court.

or the proposed amendments. Finally, counsel for Vergil proposed that Plaintiff voluntarily withdraw its Motion for Leave pending resolution of Vergil's Motion to Dismiss — a reasonable request given the unresolved threshold issues. Plaintiff declined this proposal as well.

As it stands, Plaintiffs have not complied with the Court's directives of justifying their proposed amendments. That's because they cannot. All six of the proposed new Plaintiffs allege that they registered for an account – a very dubious proposition given Plaintiffs' Counsel's investigatory track record detailed above. But that would simply lead to RedGIFs' Terms of Service and arbitration requirement, as detailed in its pending MTC. And if for whatever reason that MTC was not granted, despite all the Ninth Circuit precedent directly in RedGIFs' favor, then all the Plaintiffs would be subject to the same arguments requiring dismissal of their claims on the "merits."

In the final analysis, the proposed amendments to the already amended Complaint simply add more meritless digital slip-and-fall claims, and plaintiffs as cannon fodder, to impose even more unnecessary costs on RedGIFs.

## II. LEGAL STANDARD

While Rule 15 provides that "[t]he court should freely give leave when justice so requires," leave to amend is not to be granted automatically. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Courts consider a number of factors in determining whether to grant leave to amend, including undue delay, prejudice to the opposing party, bad faith and futility of the amendment, and have adopted a flexible balancing test to evaluate motions for leave to amend.[10] Courts often deny leave to amend when the desired amendment is both untimely and prejudicial. *See, e.g., Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Jackson*, 902 F.2d at 1387-88; *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566-67

[10] In the Rule 15 context, courts can consider evidence outside the pleadings. *See, e.g., California v. Neville Chemical Co.*, 358 F.3d 661, 674 (9th Cir. 2004).

(9th Cir. 1994). In addition, where the responding party demonstrates the proposed amendment would be futile, courts have found this factor alone sufficient to deny leave to amend. *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 537-42 (9th Cir. 1989).

**Untimeliness**. A party who delays in alleging facts or claims it knew or should have known before filing the operative complaint is not entitled to the benefits of Rule 15(a)'s liberal amendment policy. *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1324 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) (motion to amend may be denied for lack of diligence, particularly if the party "knew or should know of the facts upon which the proposed amendment is based but fails to include them"); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994). While there is no hard-and-fast rule regarding delay, the Ninth Circuit has found that delays as short as six months warrant denying leave to amend. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988); *Jackson*, 902 F.2d at 1388 (seven-month delay).

**Futility**. Courts will deny leave to amend where the claim as amended would be futile. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008). Futility "includes the inevitability of a claim's defeat on summary judgment." *California v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004); *see also Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991). Futility is also found when the amendments do not adequately plead a cause of action and could not survive dismissal, *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 537 (9th Cir. 1989), and when the claim would be preempted by federal law. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999).

**Bad Faith**. Courts will not permit amendment if made in bad faith. Courts reject proposed amendments where the real (but unstated) purpose behind the amendment is to avoid a dispositive ruling. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139-40 (5th Cir. 1993) (finding bad faith and denying leave where plaintiffs sought to amend to avoid summary judgment); *Janicki*, 42 F.3d at 566-67 (9th Cir.

1994) (finding bad faith where plaintiff sought to seek an amendment to the complaint that would have deprived the court of jurisdiction).

## III. ARGUMENT

### A. THE PROPOSED AMENDMENTS ARE BROUGHT IN BAD FAITH TO VEXATIOUSLY MULTIPLY THE PROCEEDINGS

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave" to amend "when justice so requires." However, the Ninth Circuit has long recognized that leave to amend may be denied where there is "bad faith," "undue delay," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003). Here, Plaintiffs' proposed SAC should be denied on all these grounds, but most egregiously because the amendment is brought in bad faith to vexatiously multiply these proceedings.

#### 1. The Timing and Circumstances of the Proposed Amendment Demonstrate Bad Faith

"Bad faith exists where, inter alia, the proposed amendment 'will not save the complaint or the plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories.'" *Naranjo v. Bank of Am. Nat'l Ass'n*, No. 14-CV-02748-LHK, 2015 WL 913031, at *5(N.D. Cal. Feb. 27, 2015) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999)). Indeed, the entire case smacks of bad faith when *Plaintiffs' Counsel* are unquestionably using Google Analytics on their own website. The only difference is that they're the *only* ones using Google's marketing services, rather than the "free" version for basic – and *aggregate* – website analytics data and threat detection, as detailed in Mr. Nichols' declaration. More than that, the circumstances surrounding this Motion for Leave to Amend could not more clearly establish bad faith.

First, the timing is damning. Plaintiffs filed their motion on February 5, 2026—immediately after Defendants declined to consider a six-figure *individual* settlement

offer for just the two existing Plaintiffs[11] and just weeks after Defendant filed its MTC and MTC on January 16, 2026. Rather than engage in good faith briefing on Defendant's meritorious challenges to their already-amended complaint, Plaintiffs now seek to add six new plaintiffs and three new state-law claims – which they claim are to be interpreted the same as their existing claims. In other words, Plaintiffs are tacitly conceding they should have waited until the Court rules on the RedGIFs' current Motions.

More than that, the notion that six new plaintiffs – (appropriately) B.S., K.K., T.H., K.A., D.H., and W.G. – "coincidentally" appeared within days of Defendant's settlement rejection strains all credulity. This is not the organic development of a class action; it is the calculated manufacturing of additional claims designed to increase litigation costs. Simply put, Plaintiffs should not be given any benefit of the doubt given their track record to date. RedGIFs has wasted significant time and money investigating the original three Plaintiffs simply to find out that their basic factual allegations were blatantly false – and without any possible justification. Indeed, the Plaintiffs, the proposed new Plaintiffs, and their counsel are the only ones capable of verifying whether they have registered for an account as alleged given the information asymmetry that exists, especially in light of Plaintiffs' Counsel refusal to provide the six new individuals' purported account information – likely because

[11] For the avoidance of doubt, Federal Rule of Evidence 408 specifically restricts information related to settlement offers when offered "to prove or disprove the validity or amount of a disputed claim," which is not RedGIFs' purpose at all. And even then, such information may be admitted "for another purpose," including impeachment. But perhaps more troubling in practice, plaintiffs' counsel in these digital slip-and-fall matters invariably include representations and warranties that there are no other current plaintiffs that the plaintiffs' counsel is aware of at the time of settlement. That's because no defendant would ever realistically want to settle such easily created claims if they would pay off one plaintiff, just to be immediately sued by the same attorney again with another professional plaintiff in the digital waiting room. But if Plaintiffs' Counsel was willing to settle for six figures for just G.V. and L.O. immediately before RedGIFs filed its Motions on January 16, and **without ever disclosing the other six proposed plaintiffs**, that presents another question here: what would Plaintiffs' Counsel have told these six individuals, if anything, *if* RedGIFs was willing to pay off the only Plaintiffs it was aware of at the time?

they do not have it either (again).

If the Court were to even consider this amendment, which it should not, RedGIFs respectfully submits that each proposed Plaintiff should be required to submit a declaration (under seal if necessary) attesting under penalty of perjury to (1) when they contacted Plaintiffs' Counsel, (2) their purported RedGIFs login information, and (3) any documentary evidence supporting their individual allegations. Again, this information is uniquely within their possession, as only they know their username and password (if any), and they should have received a confirmation message to the email address they used to register. This should not be onerous, and it is clearly warranted under the history of this case to date.

As further evidence of bad faith, and perhaps the most troubling is the hypocrisy and resulting unwaivable conflict at the core of this litigation. Plaintiffs assert that Defendant's use of Google Analytics constitutes violations of *criminal* statutes like ECPA, and now CIPA. Yet Defendant has amply demonstrated that *Plaintiffs' own counsel* deploys the exact same Google Analytics technology on their law firm's website. When prospective clients search counsel's website for legal advice, those queries are collected and sent to Google in precisely the same manner Plaintiffs claim constitutes criminal wiretapping.

This is not merely ironic—it is a clear ethical conflict to be implicitly advocating for your own imprisonment. Plaintiffs' counsel cannot in good faith advocate that Defendant's conduct violates criminal law when counsel engages in that identical conduct themselves. If using Google Analytics truly constituted criminal wiretapping, Plaintiffs' Counsel would be among the first defendants. Their continued pursuit of this litigation while using the same technology reveals that even they do not genuinely believe their own legal theories. But at a certain point, hypocrisy needs to be actionable – and this case has certainly reached that point, and then blown by it.

### 2. The Proposed Amendments Do Not Cure the Deficiencies Identified in Defendant's Pending Motions, and Are Thus Futile

Even a cursory review of the SAC reveals that the proposed amendments do not address the fundamental legal deficiencies Defendant has identified in its pending motions. Plaintiffs themselves acknowledge that the SAC primarily adds "additional details about the configuration of the Tracking Tools on the Website" and corrects "four scrivener's errors" identified by Defendant. But these cosmetic changes fail entirely to address the dispositive legal issues before the Court.

#### a. The SAC Does Not Cure the Lack of Article III Standing

Defendant's Motion to Dismiss establishes that Plaintiffs lack Article III standing because business-to-business disclosures of metadata do not constitute a concrete injury with a close historical or common law analogue. The Third, Fourth, Seventh, Tenth, and Eleventh Circuits have all held that consumers cannot bring claims in federal court challenging private, business-to-business disclosures. Most importantly, the Ninth Circuit in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), squarely held that website tracking does not constitute an injury analogous to intrusion upon seclusion or public disclosure of private facts.[12] The SAC **does nothing** to address this controlling precedent.

If anything, Plaintiffs attempt another bait-and-switch by adding in immaterial allegations about liking unspecified video clips at unspecified times. But what they do *not* allege is that those "likes" were ever transmitted to Google, as that information does not appear anywhere in their metadata screenshots.[13] Further, they do not

[12] For the avoidance of doubt, Plaintiffs' additional common law and breach of contract are objectively meritless for these and additional reasons. Plaintiffs cannot be monetarily damaged from accessing a free website.

[13] To be sure, even if Google did obtain this information, it would still be subject to the same arguments. No sentient being should be liking GIFs on a public website while logged into their Google account, using Google Chrome, and expect this information to remain Top Secret.

remotely allege any well-pled facts suggesting that have suffered *anything* of consequence from these alleged data flows. In short, Plaintiffs, both existing and proposed, all allege entirely speculative and conclusory "invasions of privacy" from visiting a commercial website on the public Internet, and the proposed SAC is just more of the same.

**b. The SAC Does Not Cure the ECPA Claim's Fatal Flaws**

Defendant's Motion to Dismiss demonstrates that Plaintiffs have pled themselves out of court on their ECPA claim by expressly alleging that RedGIFs "utilizes Google Analytics in the ordinary course of its business" for understanding how visitors use the website. The ECPA expressly exempts devices "used by the subscriber or user in the ordinary course of its business." 18 U.S.C. § 2510(5)(a). The SAC continues to allege that Defendant uses Google Analytics "to improve their content and keep it free" and for "customer analytics" —the very ordinary business purposes that exempt Defendant from ECPA liability. No amount of "technical details" about pixel configurations can change this fundamental deficiency.

And by Plaintiffs' own admission, their new state law claims should be interpreted the same as the ECPA. RedGIFs agrees. *See People v. Stipo*, 195 Cal. App. 4th 664, 668–69 (2011) (noting that "[e]very federal court to address this issue has held that subscriber information" is not protected, and holding "users have no expectation of privacy" in information associated with telephone and Internet activity); *see also People v. Nakai,* (2010) 183 Cal.App.4th 499, 519, (analyzing whether to exclude recorded **sexual** chat transcripts under CIPA, and holding as a matter of law that "it was not reasonable … to expect the communications to be confidential because … the communications could have easily been shared or viewed" by chat service provider "or any computer user"); *Rogers v. Ulrich*, (1975) 52 Cal.App.3d 894, 898 ("a recording made by a participant **does <u>not</u> intercept** the message **while it is in transit**; the recording rather transcribes the message as it is

being **received**.”).

#### c. The SAC Does Not Cure the VPPA Claim’s Fatal Flaws

The Motion to Dismiss also establishes that Plaintiffs' VPPA claim fails because the metadata at issue does not constitute “personally identifiable information” under controlling Ninth Circuit precedent. Under *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017), information is only PII if it “would readily permit an ordinary person to identify a specific individual's video-watching behavior.” No “ordinary person” reviewing the metadata screenshot Plaintiffs manufactured for this litigation could identify a specific individual watching a specific video—and the SAC does nothing to address this deficiency. Similarly, all the *immaterial* content on RedGIFs is free to the viewer, and thus RedGIFs cannot be a “video tape service provider” for multiple reasons. *See Banks v. CoStar Realty Information Inc.*, 2025 WL 2959228, at *(E.D. Mo. Oct. 20, 2025) (the VPPA and its “statutory context demonstrate that ‘audio visual materials’ must be stored in a physical format to be ‘similar’ to ‘prerecorded video cassette tapes.’”).

#### d. The SAC Does not Plead Any Facts Suggesting Plaintiff G.V. Is not Subject to Arbitration; It Simply Adds More Plaintiffs Subject to the Arbitration Provision

Defendant’s MTC establishes that Plaintiff G.V. agreed to arbitrate her claims when she voluntarily signed up for a RedGIFs account on April 17, 2025. The sign-up interface contained conspicuous notice that “By continuing, you agree to our policies Terms of use * Privacy Policy,” with hyperlinks to the Terms in highly contrasting colors. Those Terms contained an unambiguous arbitration provision covering “ALL DISPUTES” regarding "YOUR USE OF THE SERVICES, AND/OR RIGHTS OF PRIVACY." The SAC does not—and cannot—cure this defect. G.V. remains bound by her agreement to arbitrate, as would the proposed new Plaintiffs alleging that they registered on the same website (which remains to be seen).

### 3. Plaintiffs Have a History of Dilatory Tactics in This and Related Litigation

"A court may also find bad faith when the moving party has a 'history of dilatory tactics.'" *Naranjo*, 2015 WL 913031, at *5. This case epitomizes such tactics. Plaintiffs already amended their complaint once – from the original Complaint filed on June 6, 2025, to the FAC filed on December 19, 2025 – but only after significant effort on RedGIFs' part to conduct an investigation that should have been done before that Complaint was filed. That first amendment was necessary because Plaintiffs' original allegations were patently false: one original plaintiff (D.M.) never even visited the RedGIFs website, another (L.O.) never registered for an account despite claiming otherwise, and a third (G.V.) had to change her story about when she registered – almost certainly after she filled out her "claim form" looking for free money. These are not minor factual discrepancies—they go to the core factual predicates of the entire case.

Plaintiffs' counsel has engaged in the same pattern in related cases, as detailed above. In *H. v. Cybernet Entem't LLC*, No. 3:25-cv-04682-VC (N.D. Cal.), Judge Chhabria issued an Order to Show Cause "why the case should not be dismissed" because of similar conduct, specifically ordered that he "will impose sanctions if plaintiffs continue to litigate the case recklessly," and plaintiffs ultimately dismissed the case entirely. This Court should not permit Plaintiffs to continue the same dilatory pattern here.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Leave to file the SAC. The proposed amendment is a transparent attempt to vexatiously multiply the proceedings, increase litigation costs, and evade the merits of Defendant's pending Motions. The amendments do not cure any of the legal deficiencies Defendant has identified, and the circumstances of their filing could not more clearly establish bad faith. If allowed, the amendment would reward

Plaintiffs' dilatory tactics.

Dated: March 9, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: *_/s/ Adam D. Bowswer_*
SUSANNE BONIADI
ADAM D. BOWSER
Attorneys for Defendant
VERGIL SERVICES, INC.

**LOCAL RULE L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Vergil Services, Inc. certifies that this brief contains 5,515 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 9, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: *<u>/s/ Susanne Boniadi</u>*
SUSANNE BONIADI
Attorneys for Defendant
VERGIL SERVICES, INC.