Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (772) 783-8436
E: ssingh@sirillp.com

Daniel Srourian (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverley Hills, CA 90210
Tel: (213) 474-3800
E: daniel@sfla.com

*Attorneys for Plaintiffs and the Class*

FILED
CLERK, U.S. DISTRICT COURT
March 11, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: iv DEPUTY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| L.O. and G.V., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VERGIL SERVICES, INC. D/B/A REDGIFS,<br><br>Defendant. | Case No. 2:25-CV-05102-PD<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: March 30, 2026<br>Time: 1:30 pm<br>Courtroom: Courtroom 580, 5th Floor<br>Judge: Hon. Patricia Donahue<br><br>Complaint Served: Aug. 13, 2025<br>FAC: Dec. 19, 2025 |

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........ 1

II. LEGAL STANDARD ........ 4

III. ARGUMENT ........ 4

A. THE NICHOLS DECLARATION DOES NOT ADEQUATELY ESTRABLISH THE EXISTENCE OF THE ARBITRATION CLAUSE. ........ 4

B. REDGIFS DID NOT PROVIDE ADEQUATE NOTICE OF THE ARBITRATION CLAUSE ........ 6

i. A Website Agreement is Not Binding Unless the User is Given Conspicuous Notice of its Terms. ........ 6

ii. The Sign-In Page Does Not Provide Conspicuous Notice of the Arbitration Clause. ........ 7

C. REDGIFS' ARBITRATION CLAUSE IS UNCONSCIONABLE ........ 11

i. The Arbitration Clause is procedurally unconscionable. ........ 12

ii. The Arbitration Clause is substantively unconscionable because it produces overly harsh and one-sided results. ........ 15

iii. Severing the unconscionable provisions cannot cure the defects. ........ 18

IV. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Cases**


*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982) .............................. 11
*Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) .......... 11, 19
*Carmona v. Lincoln Millennium Car Wash, Inc.* 226 Cal. App. 4th 74 (2014) ........... 13
*Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025) ........................................ 6
*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal. App. 5th 583 .................. 5
*D.B., et al. v. Bellessa Enterprises US, Inc.*, Case No. 2:25-cv-05099-JAK-MARx (C.D. Cal. Dec. 8, 2025) ........................................................................................ 2
*Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146 (4th Cir. 2025) ................................ 10
*Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023) ............................................ 10
*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) ........................................................ 18
*Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376 (2001) ...................... 13
*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) ........................ 10
*Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025) ........................................... 6
*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal.App.4th 1332 (2015) ............................................................................................................ 13
*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................... 3
*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) ........................................................ 14
*In re BAM Trading Servs. Inc. Sec. Lit.*, 733 F. Supp. 3d 854 (N.D. Cal. 2024) .......... 12
*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023) .................................................. 4
*Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) .................................. 11
*Krayzman v. Istockphoto LP*, No. 24-cv-03086-VC, 2024 U.S. Dist. LEXIS 181294 (N.D. Cal. Oct. 3, 2024) ............................................................................................. 9
*Lee v. DoNotPay, Inc.*, 638 F. Supp. 3d 1062 (C.D. Cal. 2023) .................................... 10
*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) ..................................... 15, 19
*Magno v. The College. Network, Inc.*, 1 Cal. App. 5th 277 (Ct. App. 2016) ............... 16
*Marshall v. Ameriprise Fin. Servs.*, 735 F. Supp. 3d 1229 (E.D. Cal. 2024) ............... 17
*Mason v. CreditAnswers, LLC*, 2008 U.S. Dist. LEXIS 68575 (S.D. Cal. Sep. 4, 2008) ........................................................................................................................ 10
*McKee v. Audible, Inc.*, 2017 U.S. Dist. LEXIS 174278 (C.D. Cal. July 17, 2017) ....... 9
*Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994 (N.D. Cal. 2011) ........................... 18
*Meyers v. Alphabet, Inc.*, 2022 U.S. Dist. LEXIS 98298 (C.D. Cal. Feb. 14, 2022) ...... 9
*Missaghi v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 202919 (C.D. Cal. Jan. 2, 2013); ........................................................................................................................ 17
*Morrison v. Yippee Ent., Inc.*, No. 24-7235, 2025 U.S. Dist. LEXIS 217501 (9th Cir. Aug. 18, 2025) ............................................................................................................ 10

*Munoz v. Earthgrains Distribution, Ltd. Liab. Co.*, 2024 U.S. App. LEXIS 23099 (9th Cir. Sep. 11, 2024) ........ 18
*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ........ 6
*OTO, LLC v. Kho,* 8 Cal.5th 111 (2019) ........ 12, 13, 14
*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ........ 3
*Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024) ........ 16, 18
*Ramirez v. Trusper, Inc.*, 2024 U.S. Dist. LEXIS 186303 (N.D. Cal. Oct. 11, 2024) 7, 9
*Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080 (9th Cir. 2024) ........ 12
*Samaniego v. Empire Today, LLC*, 205 Cal.App.4th 1138 (2012) ........ 13
*Sanchez v. Valencia Holding Co*., LLC, 61 Cal.4th 899 (2015). ........ 15
*Sarhadi v. Pear Health Labs, Inc.*, 2025 U.S. Dist. LEXIS 93495 (N.D. Cal. Apr. 18, 2025) ........ 10
*Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165 (2015) ........ 12
*Snow v. Eventbrite, Inc.*, 2020 U.S. Dist. LEXIS 193249 (N.D. Cal. Oct. 19, 2020) ........ 5
*Specht v. Netscape Communs. Corp.*, 306 F.3d 17 (2d Cir. 2002) ........ 6
*Trivedi v. Curexo Technology Corp.* 189 Cal.App.4th 387 (2010) ........ 13
*Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445 (D.C.Cir. 1965) ........ 11
*Young v. Solana Labs, Inc.*, No. 22-cv-03912-RFL, 2024 U.S. Dist. LEXIS 160371 (N.D. Cal. Sept. 3, 2024) ........ 5
*Zullo v. Superior Court*, 197 Cal. App. 4th 477 (2011) ........ 13

## I. PRELIMINARY STATEMENT

Defendant Vergil Services, Inc. D/B/A RedGifs ("RedGIFS" or "Defendant") is a producer and distributor of pornography. Through its Website, Defendant provides pornographic video clips, in addition to offering the ability for individuals to subscribe to specific creators of pornographic content. *See* Plaintiffs' First Amended Complaint ("FAC") ¶¶ 4, 22.[1] Plaintiffs each allege that they viewed pornographic content on Defendant's website, and that, unbeknownst to them, surreptitious Tracking Tools installed by RedGifs on the Website disclosed their Sensitive Information, including specific, personally identifiable information about the pornographic content that they accessed, with third parties including Google. *Id*. ¶¶ 16-25. While these factual allegations are of great import to Plaintiffs' contemporaneously filed Response in Opposition to Defendant's 12(b)(6) motion, the sole issue to be adjudicated here is whether Plaintiff G.V. must be compelled to arbitrate her claims against RedGIFs due to an arbitration provision (the "Arbitration Clause") in the Website's Terms of Use (the "Terms"). *See* ECF No. 27-1 (the "Nichols Declaration" or "Nichols Decl."), Ex. 1.

Generally, a Motion to Compel Arbitration begins by discussing the relevant contractual and equitable principles supporting arbitrability. Not so here. Instead, RedGIFs spends the first half of its Motion to Compel Arbitration disparaging Plaintiffs and their counsel.[2] As none of these aspersions are relevant to the relief requested by RedGIFs, Plaintiffs respond to these points only briefly:

***First***, shortly after this action was filed, RedGIFs contacted Plaintiffs' counsel to request information regarding Plaintiffs' use of the Website. Despite no pre-discovery obligation to do so, Plaintiffs readily provided the requested information to RedGIFs, and investigated the subsequent factual disputes raised by RedGIFs regarding their

---

[1] Capitalized terms herein have the same meaning as given in the FAC, unless otherwise stated.

[2] *See* ECF No. 27 (the "Motion" or "Mot.").

Website use in good faith. Through this process, Plaintiffs realized that, in some instances, they had been mistaken regarding their account registration while using the Website. The parties subsequently worked together to resolve these factual disputes, ultimately filing a Joint Stipulation wherein they represented to the Court that "the Parties [had] determined that, to streamline the disputes requiring resolution through future briefing, Plaintiffs should be permitted to amend their Complaint." ECF No. 24, ¶ 3.

RedGIFs presents this history differently, implying that Plaintiffs did not simply misremember the specific details of their interactions with the Website but instead acted maliciously. This is a peculiar conclusion: if Plaintiffs had intended to mislead RedGIFs and the Court, it would be nonsensical for them to provide the pre-discovery information required to allow RedGIFs to challenge their allegations. Defendant even suggests that Plaintiffs have violated Rule 11 even though in reality, Plaintiffs have acted precisely as Rule 11 demands: faced with a factual dispute, Plaintiffs withdrew the contested position as required. *See* Notes to Fed. R. Civ. P. 11 (discussing safe harbor provision).

***Second,*** RedGIFs notes that Plaintiffs' counsel represents clients in other privacy actions against other online pornography providers. This is true. RedGIFs is not the only pornography provider engaged in the illegal surveillance of Internet users, and Plaintiffs' counsel proudly represents clients in a handful of similar matters. One such case was voluntarily dismissed without prejudice. Others are proceeding on their merits.[3] Of course, even were they not, the Court's inquiry is limited to this case, and this case alone.

---

[3] *See, e.g.*, ECF No. 45, *D.B., et al. v. Bellessa Enterprises US, Inc.*, Case No. 2:25-cv-05099-JAK-MARx (C.D. Cal. Dec. 8, 2025) ("The Court states its tentative view that it is inclined to grant in part and deny in part [the defendant's 12(b)(6) motion]" and also that "leave to amend should be granted").

***Third,*** RedGIFs asks if "Plaintiff's counsel and ***every level*** of government in California are also violating the ECPA and the slew of other claims Plaintiffs are alleging?" Mot. at 11:9-11 (emphasis in original). Plaintiffs answer: no, they are not. As Plaintiffs note in their Complaint, the majority of website operators use Tracking Tools in some form. FAC ¶ 45. But the use of Tracking Tools alone does not inherently constitute a violation of law because "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collecting cases); *see also Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). Rather, the unlawfulness of the use of Tracking Tools revolves around whether the information that they have been configured to collect and transmit invades a sensitive sphere, such as medical or financial information. *Popa*, 153 F.4th at 791. Unlike in these cases, RedGIFs fails to: (1) state any duty that violated by Plaintiffs' counsel or the CPPA's use of the Tracking Tools; (2) state any exception that might apply to the ECPA's one-party consent exception; or even (3) state that the information collected by the Tracking Tools is even ***personally identifiable*** through, e.g., a cookie identifier. Of course, even if RedGIFs had accurately stated the law, the potential violations of non-parties to this action have no bearing RedGIFs' own liability herein.

In short, the first half of RedGIFs' Motion to Compel Arbitration has absolutely nothing to do with arbitration. Thus, the Court may safely disregard these arguments, even as it recognizes that a party with meritorious arguments need not resort to *ad hominem*.

In the second half of its Motion, RedGIFs finally comes around to the relevant question: whether Plaintiff G.V.'s claims must be subject to arbitration. *See* Mot. at 11:20-21:22. While these arguments at least have some bearing on the instant matter, they are no more availing, and RedGIFs' motion ultimately fails at every step. First, due to the poorly supported assertions in the Nichols Declaration, RedGIFs fails to even

establish the manner by which Plaintiff G.V. purportedly agreed to its Arbitration Clause. Second, even had it provided this foundational information, RedGIFs would still be unable to show that Plaintiff G.V. had adequate notice of the Arbitration Clause. Finally, even setting all formation issues aside, RedGIFs' Motion still cannot succeed because the purported Arbitration Clause would limit Plaintiff G.V. to a maximum reward of $100—a fraction of the actual value of her claims—while permitting RedGIFs to pursue nearly any claim against Plaintiff G.V. in a court of law with no limitation on permissible damages. Such an agreement is plainly unconscionable and thus, as explained further below, RedGIFs' Motion must be denied.

## II. LEGAL STANDARD

The Federal Arbitration Act requires courts to compel the arbitration claims covered by an ***enforceable*** arbitration agreement. *See* 9 U.S.C. § 3 (emphasis added). Defendant, seeking to compel arbitration, "bears the burden of proving the existence of an agreement to arbitrate by the preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938 (1995)). "The principle of knowing consent applies with particular force to provisions for arbitration, including arbitration provisions contained in contracts purportedly formed over the internet." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 445 (2021).

## III. ARGUMENT

### A. THE NICHOLS DECLARATION DOES NOT ADEQUATELY ESTRABLISH THE EXISTENCE OF THE ARBITRATION CLAUSE.

"[D]istrict courts 'ruling on a motion to compel arbitration must apply a 'standard similar to the summary judgment standard of Rule 56.'" *Ellis v. Wallet Buddha LLC*, No. , 2025 U.S. Dist. LEXIS 266800, at *9 (C.D. Cal. Dec. 29, 2025) (citing *S.S. by and*

*through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1044 (S.D. Cal. Oct. 7, 2021)). As the moving party, RedGIFs has "the burden of establishing through ***admissible evidence*** that [Plaintiff G.V.] had agreed to arbitrate the dispute." *Chambers v. Crown Asset Management, LLC* (2021) 71 Cal. App. 5th 583, 590 (emphasis added). RedGIFs fails to do so through the Nichols Declaration. Rather, the Nichols Declaration's conclusory statements as to the Sign-Up Page fail to establish that the screenshot provided is the sole method that RedGIFs users are able to sign up for a RedGIFs account. It is unclear whether the Sign-Up Page appears the same to users who utilize their desktop computers or laptops, or users who use their mobile devices to access the Website. *See Young v. Solana Labs, Inc.*, No. 22-cv-03912-RFL, 2024 U.S. Dist. LEXIS 160371, at *11 (N.D. Cal. Sept. 3, 2024) (finding defendant did not carry its burden to show contract formation where there was no evidence of whether plaintiff accessed the platform at issue through a mobile download or desktop download). Moreover, RedGIFs fails to even attach the ***entirety*** of the Sign-Up Page, instead opting to provide a narrowly cropped image showing only the form fields where a Website user would input their information, but not that peripheral space that surrounds them. This is a relevant omission. The presence of distracting visual elements on the same page as a sign-in wrap agreement may defeat a finding of notice. *Berman*, 30 F.4th at 856. Neither Plaintiffs nor the Court can evaluate the existence of any such elements because Defendant failed to provide a full screenshot of the relevant page.

Additionally, rather than attaching its own records of the Terms available when Plaintiff G.V. signed up for an account, the Nichols Declaration attaches the webpage recovered from the Wayback Machine – the dates of which are obscured by the Wayback Machine's headers – without explaining when it was downloaded and by whom. *See also Snow v. Eventbrite, Inc.*, 2020 U.S. Dist. LEXIS 193249, at *14 (N.D. Cal. Oct. 19, 2020) ([I]f [defendant] cannot produce those pages . . ., it presumably would have said so.").

### B. REDGIFS DID NOT PROVIDE ADEQUATE NOTICE OF THE ARBITRATION CLAUSE

#### i. A Website Agreement is Not Binding Unless the User is Given Conspicuous Notice of its Terms.

As the Internet and consumers' use of it has evolved, "it has not fundamentally changed the principles of contract." *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014)). Accordingly, "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Berman*, 30 F.4th at 856 (quoting *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002)).[4] The inquiry into whether a website provides reasonably conspicuous notice of terms to which a consumer will be bound considers two aspects: "the visual design of the webpages and the context of the transaction." *Godun*, 135 F.4th at 709 (quoting *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025)). "To be conspicuous, [the] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)). This inquiry is "fact-intensive" and is informed by the "totality of the circumstances." *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 514 (9th Cir. 2023). "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print." *Berman,* 30 F.4th at 857.

Ultimately, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Id*. "Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out

[4] "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Berman*, 30 F.4th at 855 (quoting *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 73 (2d Cir. 2017)).

hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Sellers*, 73 Cal. App. 5th at 470. "Even strongly implicit advisement isn't enough – a webpage must *explain* that certain actions will be understood by the offeror to signal assent to contractual terms[.]" *Godun*, 135 F.4th at 711 (emphasis in original). Under this analysis, "[c]ourts commonly reject[] agreements…where a multi-step process is required for a website visitor to view the agreement at issue." *Ramirez v. Trusper, Inc.*, No. 5:24-cv-02012-EJD, 2024 U.S. Dist. LEXIS 186303, at *15-16 (N.D. Cal. Oct. 11, 2024).

**ii. The Sign-In Page Does Not Provide Conspicuous Notice of the Arbitration Clause.**

Courts have classified internet contract formation "by the way in which the user purportedly gives [their] consent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Sellers*, 73 Cal. App. 5th at 463. "Sign-in wrap" agreements, like the one at issue here, are "those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." *Id.* at 463-64. "While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up." *Id.* While California courts have generally found that browsewrap agreements are "unenforceable per se" and clickwrap and scrollwrap agreements are "presumptively enforceable," sign-in wrap agreements live in a "gray zone," enforceable only with "conspicuous textual notice that completing a transaction or registration signifies consent to the site's terms and conditions." *Berman*, 30 F.4th at 868 (J. Baker, concurring). Courts are "generally reluctant" to enforce sign-in wrap agreements because "they often leave users 'unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms." *Oberstein*, 60 F.4th at 513 (citing *Berman*, 30 F.4th at 856).

In determining whether a website provides reasonably conspicuous notice of a sign-in wrap agreement, courts first consider "the 'context of the transaction,' including the 'nature of the service or goods offered.'" *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 765 (N.D. Cal. 2025) (quoting *Chabolla*, 129 F.4th at 1155). In evaluating the context of a transaction, California courts consider (1) whether the transaction contemplates a continuing relationship by creating an account; (2) whether the user is signing up for a free trial; (3) whether the user enters credit card information; and (4) whether the user has downloaded an app on their phone, thus suggesting consistent accessibility. *Godun*, 135 F.4th at 710. Here, as Defendant concedes (Nichols Decl. ¶ 5), RedGIFs is a ***free*** platform. Where access to a website is free, "'the transactional circumstances cannot be fully analogized to those in the paper world of arm's length bargaining.'" *Sellers*, 73 Cal. App. 5th at 476 (quoting *Specht*, 763 F.3d at 32). Like the plaintiffs in *Lee* and *Chabolla*, Plaintiff G.V.'s relationship with RedGIFs imposed no commitments on Plaintiff – she was free to use or stop using the Website at any time. *See Lee*, 773 F. Supp. 3d at 765 (finding the context of plaintiff's free subscription to defendant's streaming service "did not put him on notice to look for additional terms"); *Chabolla*, 129 F.4th at 1155 (same in the context of a paid membership to gain access to gyms).

Next, courts consider the visual aspects of the sign-up page. Plaintiff G.V. did not have conspicuous notice of the Arbitration Clause because the notice on the Sign-Up Page was placed at the very bottom of the visible page, not directly above or beneath the "Sign Up" page. Indeed, users who begin typing in the "Username" and "Email" fields on mobile devices no longer see the notice as it becomes obscured by their keyboards. Evaluating these facts from the standpoint of a reasonable Internet user as this analysis requires, "[a] reasonably prudent user would likely click [Sign Up] and read no further[.]" *Chabolla*, 129 F.4th at 1157. Nor would a reasonably prudent user be on notice that the Terms contain an Arbitration Clause. *Cf. B.D. v. Blizzard*

*Entertainment, Inc.*, 76 Cal. App. 5th 931 (2022) (finding a notice was sufficiently conspicuous where it advised, in bold and all caps, that the agreement "contains a binding arbitration agreement and class action waiver that affects users' legal rights"). When a party is "unaware of the contractual provisions, there is no meeting of the minds, no mutuality, and no fundamental fairness." *Metters v. Ralphs Grocery Co.*, 161 Cal. App. 4th 696, 74 Cal. Rptr. 3d 210 (Cal. App. 2008).

Even if a user visited the hyperlinked Terms and scrolled through the entirety of its Terms, Plaintiff G.V. would still have had to embark on a multistep process to actually find the Arbitration Clause. This attenuated process cannot constitute adequate notice under applicable law. *See Ramirez v. Trusper, Inc.*, No. 5:24-cv-02012-EJD, 2024 U.S. Dist. LEXIS 186303, at *15-16 (N.D. Cal. Oct. 11, 2024) (collecting cases to show that "[c]ourts commonly reject[] agreements…where a multi-step process is required for a website visitor to view the agreement at issue"); *Krayzman v. Istockphoto LP*, No. 24-cv-03086-VC, 2024 U.S. Dist. LEXIS 181294, at *1-2 (N.D. Cal. Oct. 3, 2024) (finding where the plaintiff "clicked a button that said 'I agree' with the statement…'you accept our Privacy Policy and Terms of Use,'" terms in a License Agreement linked to by both the Privacy Policy and Terms of Use were not enforceable); *Sellers*, 73 Cal. App. 5th at 483-84 (finding that where plaintiff agreed to Terms of Service agreement, arbitration clause linked to by Terms of Service agreement was not enforceable); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex), 2017 U.S. Dist. LEXIS 174278, at *31-32 (C.D. Cal. July 17, 2017) ("Alexa's disclosure that 'tapping' the Begin Setup button binds the user to *Alexa's* Terms . . . is not the same thing as a disclosure that initiating setup binds the user to the terms contained *in all seven of the agreements* listed as part of Alexa's Terms"); *Meyers v. Alphabet, Inc.*, No. CV 21-1767 FMO (MAAx), 2022 U.S. Dist. LEXIS 98298, at *11 (C.D. Cal. Feb. 14, 2022) ("[statement that user agrees to Terms and Conditions] would not put a reasonable consumer on notice that by clicking Redeem, he or she would be

agreeing to a forum selection clause found numerous hyperlinks away"); *Mason v. CreditAnswers, LLC*, No. 07cv1919-L(POR), 2008 U.S. Dist. LEXIS 68575, at *7 (S.D. Cal. Sep. 4, 2008) (forum selection clause not enforceable because "the Service Agreement does not emphasize or draw attention to the forum selection clause in any way").

The cases cited by RedGIFs do not compel a different result as. In those cases (many of which are out-of-Circuit cases), the plaintiffs signed up for services that clearly contemplated the type of continuing, forward-looking relationship not present here. In *Kravets v. Anthropologie, Inc.*, for instance, plaintiff signed up to receive ***ongoing communications*** from defendant through its "text program." No. 22-cv-60443-BLOOM/Valle, 2022 U.S. Dist. LEXIS 100202, at *2 (S.D. Fla. June 6, 2022). Similarly, plaintiffs in *Ghazizadeh v. Coursera, Inc.* and *Edmundson v. Klarna, Inc.* signed up for services that, by their nature, necessitated ***ongoing use***. *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 917-18, 926 (N.D. Cal. 2024) (online educational platform through which plaintiff signed up to complete various certificate programs); *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 698-99 (2d Cir. 2023) ("pay in 4" service through which plaintiff committed to make installment payments to defendant on a set schedule)[5]; *Sarhadi v. Pear Health Labs, Inc.*, 2025 U.S. Dist. LEXIS 93495, at *3-4 (N.D. Cal. Apr. 18, 2025) (fitness app that required, in addition to personal

---

[5] The *Edmundson* plaintiff, like plaintiffs in most of the cases Defendant cites, was required to provide defendant with his debit or credit card information to complete the registration process. *Id.* at 699; *see also Lee v. DoNotPay, Inc.*, 638 F. Supp. 3d 1062, 1066 (C.D. Cal. 2023) (plaintiff's subscription to defendant's services required payment of a monthly fee); *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 149-50 (4th Cir. 2025) (plaintiffs required to submit credit card information to register for their paid subscriptions to defendant's services); *Morrison v. Yippee Ent., Inc.*, No. 24-7235, 2025 U.S. Dist. LEXIS 217501 (9th Cir. Aug. 18, 2025) (plaintiff signed up for paid subscription to defendant's video streaming platform); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 70 (2d Cir. 2017) (registration for ride-hailing app required credit card information).

information, users' "fitness and weight loss goals" during registration). Indeed, *Sarhadi*'s discussion of *Keebaugh v. Warner Bros., Ent. Inc.* – a case in which Defendant heavily relies – underscores why Plaintiff G.V.'s use of the Website does not contemplate a continuing relationship that put her on notice to look for additional terms that would govern her relationship with Defendant. *See Sarhadi*, 2025 U.S. Dist. LEXIS 93495, at *17 (discussing *Keebaugh*, noting that "the prudent internet user necessarily anticipates ***ongoing access*** to that app at the user's discretion . . . . (citation omitted) (emphasis added)).

Accordingly, Plaintiff G.V. was not on notice of RedGIFs' Arbitration Clause, and, therefore, it is unenforceable.

### C. REDGIFS' ARBITRATION CLAUSE IS UNCONSCIONABLE

Even if the Court finds that Plaintiff G.V. assented to the Arbitration Clause (and she did not), this Court should decline to enforce it because it is unconscionable. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) ("California courts may refuse to enforce an unconscionable arbitration agreement.").

Unconscionability "'has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982) (quoting *Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445, 449 (D.C.Cir. 1965)). "Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Armendariz v. Found Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 89 (2000)). Procedural unconscionability "focus[es] on oppression or surprise due to unequal bargaining power" while substantive unconscionability focuses "on overly harsh or

one-sided results." *In re BAM Trading Servs. Inc. Sec. Lit.*, 733 F. Supp. 3d 854, 865 (N.D. Cal. 2024).

Importantly, "California courts employ a sliding scale to determine unconscionability, the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to conclude the terms are unenforceable, and vice versa." *Id.* Thus, it is not necessary for procedural and substantive unconscionability to be present in equal degrees.

**i. The Arbitration Clause is procedurally unconscionable.**

In determining whether an arbitration agreement is procedurally unconscionable, courts first consider "whether the contract is one of adhesion." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (quoting *OTO, LLC v. Kho,* 8 Cal.5th 111, 126 (2019)). A contract of adhesion is "'a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms.'" *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)).

A determination of "[p]rocedural unconscionability focuses on the elements of oppression and surprise." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 177 (2015). The oppression element "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice[,]" while the surprise element "involves the extent to which the terms of the bargain are hidden in a prolix printed form drafted by a party in a superior bargaining position." *Id.*

In this case, the Terms are undoubtedly contracts of adhesion. Plaintiff had no option to negotiate the Terms prior to creating her account—i.e., they were take-it-or-leave-it. This is a paradigmatic contract of adhesion and, as explained in detail below, the Arbitration Clause is both oppressive and the product of surprise.

***1) The Arbitration Clause is oppressive.***

"Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376 (2001). "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" *OTO, L.L.C.*, 8 Cal. 5th at 126-27 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal.App.4th 1332, 1348 (2015), fn. omitted).

Defendant's Arbitration Clause is oppressive for at least the following reasons: (1) Defendant, a sophisticated corporation, is in a position of unequal bargaining power over lay individual consumers, like Plaintiff G.V.; (2) Defendant drafted the Terms, including the Arbitration Clause; (3) Plaintiff G.V. was not permitted to negotiate or modify the Terms; and (4) the Terms are long and feature a complex Arbitration Clause buried at its end. Additionally, courts have frequently found oppression in instances where the defendant fails to provide a copy of the arbitration rules to which the plaintiff would be bound.[6] Here, "[t]he customer is forced to go to another source to find out

---

[6] *See Samaniego v. Empire Today, LLC*, 205 Cal.App.4th 1138, 1146 (2012) ("Moreover, [defendant] failed to provide plaintiffs with a copy of the relevant arbitration rules. This is significant."); *Trivedi v. Curexo Technology Corp.* 189 Cal.App.4th 387, 393–394 (2010) (refusing to enforce arbitration provision that was drafted by the defendant, that was mandatory, and that did not attach a copy of the AAA rules referenced in the agreement); *Carlson v. Home Team Pest Defense, Inc.* 239 Cal. App. 4th 619, 633 (2015) ("Without question [the agreement] was oppressive, and the failure to disclose the terms of arbitration and the applicable rules also constitute surprise."); *Carmona v. Lincoln Millennium Car Wash, Inc.* 226 Cal. App. 4th 74, 84 (2014) ("Failure to provide the applicable arbitration rules is another factor that supports procedural unconscionability."); *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 485–486 (2011)

the full import of what he or she is about to sign—and must go to that effort *prior* to signing." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003) (emphasis in original). However, "the oppression is even more onerous than that: As written, the clause pegs both the scope and procedure of the arbitration to rules which might change." *Id*. Indeed, the Arbitration Clause indicates that arbitration will be "in accordance with the streamlined arbitration rules and procedures of JAMS, Inc."[7] but does not bother to tell users *where* those rules can be found or indicate that those rules are subject to change. Thus, RedGIFs' Terms are oppressive.

***2) The Arbitration Clause is the product of surprise.***

The second element of procedural unconscionability is surprise, which "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Ingle*, 328 F.3d at 1171.

"A layperson trying to navigate [] block text, printed in tiny font, would not have an easy journey." *OTO, L.L.C.*, 8 Cal. 5th at 128. In the Terms, the Arbitration Clause is section **12 of 15** sections.[8] Additionally, the Arbitration Clause is not, and was never, mentioned anywhere on the Sign-Up Page Website. Assuming a user is able to locate the Arbitration Clause, they then must navigate "[t]he substance of the agreement [which] is similarly opaque." *OTO, LLC*, 8 Cal. 5th at 128. The Arbitration Clause presents as a dense block of single-spaced text despite containing several discrete subparts, and use "sentences [that] are complex, filled with . . . legal jargon." *Id.* Thus, the design of the Arbitration Clause is not readable to a layperson. Indeed, one might

---

(holding "it was oppressive to require the party to make an independent inquiry to find the applicable rules in order to fully understand what she was about to sign," and that the defendant's failure to provide the applicable rules rendered the provision procedurally unconscionable).

[7] Dft. Ex. A, p. 14.

[8] *See* Dft. Ex. A, p. 13-14.

"suspect[] that the length, complexity and obtuseness of most form contracts may be due at least in part to the seller's preference that the buyer will be dissuaded from reading that to which he is supposedly agreeing." *A & M Produce Co.*, 135 Cal. App. 3d at 490; *see also Rios v. HRB Digit. LLC*, No. 25-cv-03530-EMC, 2025 U.S. Dist. LEXIS 213961, at *18 (N.D. Cal. Oct. 27, 2025) (finding procedural unconscionability where, among other things, the agreement was "a lengthy, 21-page, single-spaced contract, and the arbitration provision is embedded deep within the dense text, beginning on page 15."); *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001 (9th Cir. 2021) ("With respect to unfair surprise, [defendant] presented the delegation clause in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font. Nothing in the text of the agreement called [plaintiff]'s attention to the delegation clause, and [plaintiff] was not required to sign or initial that specific provision. This further supports some degree of procedural unconscionability."); *Frasco*, 349 F.R.D. at 578 ("In effect, the waiver was buried in a manner that made it likely a user's attention was not drawn to it. That is a hallmark of procedural unconscionability").

As the Arbitration Clause is both oppressive and the product of surprise, it is procedurally unconscionable.

**ii. The Arbitration Clause is substantively unconscionable because it produces overly harsh and one-sided results.**

"[T]he more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required," and vice versa. *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 864-65 (N.D. Cal. 2024). Substantive unconscionability depends on the terms of the agreement. A contract provision is substantively unconscionable if it is "overly harsh," "unduly oppressive," or "unreasonably favorable." *Sanchez v. Valencia Holding Co*., LLC, 61 Cal.4th 899, 911 (2015). "The substantive element looks to the actual terms of the parties' agreement to

ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The College. Network, Inc.*, 1 Cal. App. 5th 277, 287-88 (Ct. App. 2016) (internal quotation marks and alterations omitted). The primary concern is "whether the contract will create unfair or one-sided results that 'reallocate risks in an objectively unreasonable or unexpected manner.'" *Rios*, 2025 U.S. Dist. LEXIS 213961, *16 (quoting *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 493 (2024)).

***First,*** the Arbitration Clause explicitly incorporates all limitations on remedies found in the Terms, stating that: "Any provision of applicable law notwithstanding, the arbitrator will not have authority to award damages, remedies or awards that conflict with these Terms." Nichols Decl., Ex. 1 at 14. One such provision of the Terms is a "Limitation of Liability" clause, which states:

> IN NO EVENT SHALL WE, NOR OUR DIRECTORS, EMPLOYEES, AGENTS, PARTNERS, SUPPLIERS OR CONTENT PROVIDERS, BE LIABLE UNDER CONTRACT, TORT, STRICT LIABILITY, NEGLIGENCE OR ANY OTHER LEGAL OR EQUITABLE THEORY WITH RESPECT TO THE SERVICES (I) FOR ANY LOST PROFITS, DATA LOSS, COST OF PROCUREMENT OF SUBSTITUTE GOODS OR SERVICES, OR SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, COMPENSATORY OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER, SUBSTITUTE GOODS OR SERVICES (HOWEVER ARISING),…OR (III) FOR ANY DIRECT DAMAGES IN EXCESS OF $100.00.

*Id.* at 13.

This provision is grossly one-sided. RedGIFs retains the ability to pursue arbitration against Plaintiff G.V. and other Website accountholders for any manner of claim, with no limitation on the amount or type of damages it may recover while

simultaneously capping Plaintiff G.V.'s recovery at a mere $100 subject to an absolute bar against recovering the punitive, compensatory, and consequential damages Plaintiff G.V. is entitled to under several of her causes of action.

Such a limitation is unenforceable. "Both the Supreme Court and the California Supreme Court have found that arbitration provisions are unenforceable to the extent that they force litigants to forgo statutory remedies and prevent them from vindicating their statutory rights." *Missaghi v. Coca-Cola Co.*, 2013 U.S. Dist. LEXIS 202919, at *21 (C.D. Cal. Jan. 2, 2013); *see also Marshall v. Ameriprise Fin. Servs.*, 735 F. Supp. 3d 1229, 1246 (E.D. Cal. 2024) (holding that where an arbitration clause "limit[s] the recovery that Plaintiff may seek, and provide[s] no reciprocal limitation on Defendant, the provisions are unfairly one-sided and therefore unconscionable"). For example, in *Missaghi*, a court in this District considered an arbitration clause that limited the plaintiff's recoverable damages to "'actual out-of-pocket costs incurred'" in connection with a TCPA action. *Id.* at *21. Therein, the Court reasoned that while the plaintiff's "out-of-pocket damages [were] approximately five cents per unsolicited text message" the "TCPA permits a plaintiff to recover $500 per unsolicited text message and allows a court to award treble damages if the defendant willfully or knowingly violated the TCPA." *Id.* Thus, the arbitration clause "relegate[d] Plaintiff to recover a ten-thousandth of what Plaintiff might otherwise recover under the TCPA" and was thus unenforceable. *Id*.

The same is true here. Plaintiff G.V. alleges statutory claims under the ECPA and the VPPA. Under the ECPA, Plaintiff G.V. is entitled to statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000, compensatory and punitive damages, and attorneys' fees and costs. 18 U.S.C. § 2520(b)-(c). Under the VPPA, Plaintiff G.V. is entitled to statutory damages of $2,500 per violation, and attorney's fees, filing fees, and costs. 18 U.S.C. § 2710(c)(2). Thus, at a minimum, the $100 limitation attached to RedGIFS' arbitration clause would provide Plaintiff G.V.

with less than one-percent of the recovery she would be entitled to under her federal statutory claims alone.

***Second***, the Arbitration Clause is further one-sided because it requires Plaintiff G.V. to arbitrate *all* of her claims, while leaving a significant carve-out for Defendant to seek "injunctive or other appropriate relief in any state or federal court in the state of Arizona" for alleged violations of its intellectual property rights. Dft. Ex. A, p. 14. "The agreement cannot require 'one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.'" *Charter Commc'ns, Inc.*, 16 Cal. 5th at 495 (quoting *Armendariz*, 24 Cal. 4th at 120). Courts consistently reject arbitration clauses that bind only the weaker party while exempting the drafter's claims as substantively unconscionable. *See Munoz v. Earthgrains Distribution, Ltd. Liab. Co.*, Nos. 23-55818, 23-55819, 2024 U.S. App. LEXIS 23099, at *5 (9th Cir. Sep. 11, 2024) (finding substantive unconscionability where defendants included a carve-out provision allowing them to pursue claims related to intellectual property in federal court); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) (finding substantive unconscionability because "the agreement would compel the customer, the weaker party, to arbitration while exempting [Defendant], the stronger party, from arbitration."); *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 725 (2004) (same). Defendant's provision suffers from the same defect: it channels all consumer claims—regardless of merit or monetary value—into arbitration, while allowing Defendant the strategic freedom to utilize judicial remedies.

Because the Arbitration Clause exhibits procedural and substantive unconscionability, the Court should decline to enforce the Arbitration Clauses.

**iii. Severing the unconscionable provisions cannot cure the defects.**

While California Cal. Civ. Code § 1670.5 gives courts discretion to determine whether to sever or restrict an unconscionable provision, "[s]everance is not permitted if the court would be required to augment the contract with additional terms . . ." *Lim*,

8 F.4th at 1005. "The same is true for California's arbitration statute, Cal. Civ. Proc. Code § 1281.2, which 'authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 125). Thus, severance is inappropriate if "the agreement is 'permeated' by unconscionability." *Lhotka*, 181 Cal. App. 4th at 826 (citations omitted). "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision…Such multiple defects indicate a systematic effort to impose arbitration…not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th at 124). Further, "in the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Armendariz,* 24 Cal. 4th at 124-25.

Here, the Arbitration Clause is permeated by unconscionability. Under its terms, Plaintiff G.V. would be barred from pursuing her claims in Court and forced instead to arbitrate her claims for a maximum possible reward of $100, while virtually every claim RedGIFs might want to bring is exempt from arbitration and free of any limitation of remedies. Moreover, the Arbitration Clause broadly prohibits Website users from "participat[ing] in claims brought in a private attorney general or representative capacity." Nichols Decl., Ex. 1 at 14. This provision is also unenforceable and unconscionable. *See, e.g.,* Yancey v. CCFI Co., LLC, 2025 U.S. Dist. LEXIS 189546, at *23 (E.D. Cal. Sep. 23, 2025) (holding that waiver of right to bring private attorney general claim is unenforceable). Severance is thus improper. As a result of the multiple unenforceable provisions in RedGIFs' arbitration clause, there

is no "single provision" the "court can strike or restrict in order to remove the unconscionable taint from the agreement." *Armendariz,* 24 Cal. 4th at 124-25.[9]

## IV. **CONCLUSION**

For these reasons, this Honorable Court should deny Defendant's Motion to Compel Arbitration.

Dated: March 10, 2026

Respectfully submitted,

*/s/ Sonjay Singh*
Sonjay Singh (*Pro Hac Vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (772) 783-8436
Email: ssingh@sirillp.com

Daniel Srourian (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverley Hills, CA 90210
Tel: (213) 474-3800

---

[9] Further, "an unconscionable arbitration term should also not be severed if drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach." Lim v. TForce Logistics, LLC, 8 F.4th 992, 1006 (9th Cir. 2021). A waiver of the right to bring a private attorney general claim has been unenforceable in California for over a decade. *See* Iskanian v. CLS Transp. L.A., LLC, 59 Cal. 4th 348 (2014). Likewise, the Supreme Court has held that arbitration is void where it would prevent a plaintiff from vindicating a statutory right for over thirty years. *See* Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 637 (1985). RedGIFs should not be rewarded for crafting an agreement that violates decades of well-settled law. *See Reyes v. Hearst Communs., Inc.*, 2022 U.S. App. LEXIS 17253, at *5 (9th Cir. June 22, 2022) (finding that the "court was well within its discretion to conclude that severance was not appropriate given [the] inclusion of a fee-splitting provision that has been impermissible…for more than two decades").

E: daniel@sfla.com

*Attorneys for Plaintiffs and the Putative Class*

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Plaintiffs certifies that this brief contains 5,891 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Sonjay Singh*
Sonjay Singh (*Pro Hac Vice*)