Sonjay Singh (*Pro Hac Vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (772) 783-8436
Email: ssingh@sirillp.com

Daniel Srourian (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverley Hills, CA 90210
Tel: (213) 474-3800
E: daniel@slfla.com

*Attorneys for Plaintiffs and the Putative Class*

FILED
CLERK, U.S. DISTRICT COURT
March 11, 2026
CENTRAL DISTRICT OF CALIFORNIA
BY: iv DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

L.O. AND G.V., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

VERGIL SERVICES, INC. d/b/a REDGIFS,

Defendant.

Case No.: 2:25-cv-05102-PD

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Assigned to the Hon. John A. Kronstadt

Date: March 20, 2026
Time: 1:30 p.m.
Courtroom: Courtroom 580, 5th Floor
Hon. Patricia Donahue

FAC Filed: Dec. 19, 2025

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 1

II. RELEVANT FACTUAL BACKGROUND .......... 2

A. GOOGLE'S TRACKING TOOLS .......... 2

B. DEFENDANT'S USE OF TRACKING TOOLS .......... 3

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. PLAINTIFFS HAVE ESTABLISHED INJURY-IN-FACT SUFFICIENT TO ESTABLISH ARTICLE III STANDING .......... 4

i. Defendant's Use of the Tracking Tools Inflicted a Cognizable Privacy Injury on Plaintiffs .......... 4

ii. Agency Law Does Not Help Defendant .......... 5

iii. Business-to-business disclosures are actionable .......... 6

iv. The Google Chrome web browser does track users. .......... 7

v. Plaintiffs Had a Reasonable Expectation of Privacy .......... 7

B. PLAINTIFFS STATE A CLAIM UNDER THE ECPA .......... 8

i. Financially Motivated Torts are Actionable Under the ECPA. .......... 9

ii. Plaintiffs' allege the disclosure of "contents" under the ECPA .......... 10

C. PLAINTIFFS' VPPA CLAIM IS WELL-PLED. .......... 11

i. Defendants disclosed Plaintiffs' PII. .......... 11

ii. Plaintiffs are consumers under the VPPA. .......... 13

iii. Defendant is a Video Tape Service Provider under the VPPA .......... 14

D. PLAINTIFFS' COMMON LAW CLAIMS ARE WELL-PLED .......... 15

i. Invasion of Privacy .......... 15

ii. Negligence .......... 16

iii. Breach of Implied Contract .......... 16

iv. Unjust Enrichment ........ 17
E. PLAINTIFFS' N.Y. GENERAL BUSINESS LAW § 349 CLAIM IS WELL-PLED ........ 18
V. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

## CASES


*Ade v. Viki, Inc.*, 2024 U.S. Dist. LEXIS 79467 (N.D. Cal. Mar. 28, 2024) ---------- 13
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ---------- 3
*Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997) ---------- 5
*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) ---------- 3
*Calhoun v. Google LLC*, 349 F.R.D. 588 (N.D. Cal. 2025) ---------- 7
*Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sept. 24, 2016) ---------- 17
*Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868 (N.D. Cal. 2025) ---------- 5, 6
*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ---------- 11
*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015) ---------- 14
*Fan v. NBA Props. Inc.*, 2024 U.S. Dist. LEXIS 57205 (N.D. Cal. Mar. 26, 2024) --- 13
*Garcia v. Bandai Namco Ent. Am. Inc.,* 2025 U.S. Dist. LEXIS 152616 (C.D. Cal. Aug. 7, 2025) ---------- 13
*Gerber v. Twitter, Inc.*, 2024 U.S. Dist. LEXIS 229023 (N.D. Cal. Dec. 18, 2024) -- 17
*In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"), 956 F.3d 589 (9th Cir. 2020) ---------- 4
*In re Zynga Privacy Litigation*, 750 F. 3d 1098 (9th Cir. 2014) ---------- 10
*Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760 (N.D. Cal. 2023) ---------- 14
*Jimenez v. OE Fed. Credit Union*, 2025 U.S. Dist. LEXIS 161144 (N.D. Cal. Aug. 15, 2024) ---------- 17
*Knappenberger v. City of Phoenix*, 566 F.3d 936 (9th Cir. 2009) ---------- 3
*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012) ---------- 18
*Lawrence v. Texas*, 539 U.S. 558 (2003) ---------- 1
*Lee v. Plex, Inc.*, 773 F. Supp. 3d 755 (N.D. Cal. 2025 ---------- 11
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ---------- 4

*Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018)------------------------------------ 18

*Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) ------------------------------------ 11

*Nagy v. Retail Capital LLC*, 2025 U.S. Dist. LEXIS 67126 (S.D. Cal. Apr. 8, 2025) 17

*Orlander v. Staples*, Inc., 802 F3d 289 (2d Cir. 2015) ------------------------------------ 18

*Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1 (NY 2020)------------------------------------------ 19

*Plotsker v. Envato Pty Ltd.,* 2025 U.S. Dist. LEXIS 168070 (C.D. Cal. Aug. 26, 2025) ---------------------------------------------------------------------------------------------- 13

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ------------------------------------ 5

*R.C. v. Walgreen Co*., 733 F. Supp. 3d 876 (C.D. Cal. 2024) ------------------------------- 9

*Riganian v. LiveRamp Holdings, Inc.*, T, 2025 U.S. Dist. LEXIS 138122 (N.D. Cal. July 18, 2025)------------------------------------------------------------------------------------ 9

*Sellers v. Bleacher Report, Inc.*, 2023 U.S. Dist. LEXIS 131579 (N.D. Cal. July 28, 2023 ------------------------------------------------------------------------------------------ 13

*Thornton v. Mindvalley, Inc.*, 2025 U.S. Dist. LEXIS 53202 (N.D. Cal. Feb. 14, 2025) ---------------------------------------------------------------------------------------------- 13

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ------------------------------------------ 4

*TransUnion. D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) ------ 4

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) ---------------------------------- 8

*United States v. VanDyck*, 776 F. App'x 495 (9th Cir. 2019) ------------------------------ 8

*Univ. of the Pac.*, 2022 U.S. Dist. LEXIS 96065 (N.D. Cal. May 28, 2022)----------- 17

**STATUTES**

18 U.S.C. § 2710(a)(1) ---------------------------------------------------------------- 15
18 U.S.C. § 2710(a)(3) ----------------------------------------------------------7, 8, 13
18 U.S.C. § 2710(b)(1) ------------------------------------------------------------------ 5
NY CLS Gen Bus § 349 ------------------------------------------------------------ 16

## I. PRELIMINARY STATEMENT

The United States Supreme Court has made it clear that an individual's sexual behavior within their own home represents the "most private human conduct…in the most private of places." *Lawrence v. Texas*, 539 U.S. 558, 567 (2003). For many Americans, their sexual lives in some way involve viewing pornography. But, despite its prevalence, pornography usage is still a topic that most individuals prefer to keep private. As a result, the unwanted disclosure of such information can be enormously harmful, impacting an individual's reputation, livelihood, personal relationships, and mental wellbeing.

Plaintiffs utilized Defendant RedGIFs' Website[1] to view pornography. Unfortunately, unbeknownst to Plaintiffs, Defendant was secretly tracking and disclosing to third parties detailed information about Plaintiffs' interactions with the Website, including specific information about the videos they viewed coupled with their personally identifiable information (collectively, the "Sensitive Information"). Even more troubling is the fact that Defendant then compiled and disclosed Plaintiffs' Sensitive Information to third parties, including one of the largest advertisers in the world, Google. Indeed, Defendant installed advertising surveillance software offered by Google ("the Tracking Tools"), allowing Google to harvest the Sensitive Information of users for the purpose of targeted advertising.

In its Motion to Dismiss, Defendant does not challenge the factual allegation that it collected and disclosed the Sensitive Information. Instead, Defendant argues that Plaintiffs did not provide personally identifiable to RedGIFs or Google, that no data was misused, and that Plaintiffs do not allege a concrete harm. But Plaintiffs allege that the Tracking Tools associate their identities with their Sensitive Information and then disclose that combination to the Tracking Tool Providers, like Google.

[1] Capitalized terms herein have the same meaning as given in ECF No. 26m Plaintiffs' First Amended Complaint ("FAC"), unless otherwise stated.

Defendant also seeks to block enforcement of the Video Privacy Protection Act of 1988 ("VPPA"), stating that the audio visual materials provided on their website are not "similar" to video cassette tapes, believing that non-paying consumers are not "consumers" under the statute, and arguing that its disclosures do not implicate any PII: a curious perspective regarding the provision of Google's unique identifiers *to Google*. As explained below, Defendants are wrong. Further, as explained herein, Plaintiffs' statutory and common law claims are well-pled.

For each of these reasons and those discussed further herein, Defendant's Motion to Dismiss should be denied.

## II. RELEVANT FACTUAL BACKGROUND

### A. Google's Tracking Tools

Google offers website operators access to its proprietary suites of marketing, advertising and customer analytics software. FAC ¶ 8. Armed with these programs, website operators can leverage Google's enormous database to deploy targeted advertisements, perform minute analyses of their customer bases, identify new market segments that may be exploited, and learn detailed and valuable information about the way people interact with its website. *Id*. ¶¶ 8, 40. But, in exchange, website operators like Defendants must install Google's Tracking Tools on their websites—third party surveillance software that captures sensitive, personally identifiable information provided to the website operator by its users. *Id*. ¶ 9. In some cases, website operators configure their websites to collect private information above and beyond the information Google collects by default. *Id.* ¶ 67. Google then aggregates this user information into "advertising profiles," allowing Google and others can sell hyper-precise advertising services, allowing their clients to target internet users based on combinations of their location, age, race, interests, hobbies, life events (*e.g.*, recent marriages, graduation, or income, type of employment, use of specific apps or websites, and more). *Id*. ¶ 45. Where an internet user has a Google account, this information can be correlated to their identity, through tracking cookies installed on the user's web browser. *Id*. ¶¶ 59-63.

### B. Defendant's Use of Tracking Tools

Defendant installed Google's Tracking Tools on the Website. FAC ¶ 66. Then, Defendant deliberately configured the Tracking Tools to convey additional private information about how people, including Plaintiffs, used the Website. *Id*. ¶ 67. These Tracking Tools captured and disclosed a wealth of information about Plaintiffs to Google, including URLs and titles of videos they were viewing, and the "tags" Defendant had attached to each video, categorizing them. *Id*. ¶ 68. This information was then associated with Google's "cid" and "sid" identifiers, using Google's preferred method of linking activity to specific individuals. *Id*. ¶ 69.

Plaintiffs never consented to Defendant's use of the Tracking Tools, and they do not recall receiving any warning that Defendant would share their private viewing histories, linked to their identities, with third parties. FAC ¶¶ 69-74. Yet Defendant shares its users' Sensitive Information, trading it for enhanced marketing and advertising services, thereby allowing third-parties like Google to harvest this data and use it to sell hyper-targeted personalized ads. FAC ¶ 77.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well-pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts should freely grant leave to amend unless the defects identified are not curable. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## IV. ARGUMENT

## A. PLAINTIFFS HAVE ESTABLISHED INJURY-IN-FACT SUFFICIENT TO ESTABLISH ARTICLE III STANDING

Article III standing "requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). The alleged violation need not be "the very last step in the chain of causation. While...it does not suffice if the injury complained of is 'the result of the independent action of some third party not before the court,' that does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 159 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)) (emphasis in original and alterations omitted). Causation in the standing context does not mean "[p]roximate causation." *Lexmark*, 572 U.S. at 134 n.6. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. This is because, when evaluating a motion to dismiss, "[courts] "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id*. at 889.

### i. Defendant's Use of the Tracking Tools Inflicted a Cognizable Privacy Injury on Plaintiffs

Intangible harms constitute concrete injury where they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, **disclosure of private information, and intrusion upon seclusion**." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (emphasis added). As the Ninth Circuit made explicit in *In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"), data tracking and collection practices which "cause harm or a material risk of harm to [an individual's] interest in controlling their personal information" constitute a "concrete injury sufficient to confer standing." 956 F.3d 589, 598-99 (9th Cir. 2020). *Facebook Tracking* remains good law following *TransUnion*. *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1193 (S.D. Cal. 2024);

*Deivaprakash v. Condé Nast Digit.*, 2025 U.S. Dist. LEXIS 172906, at *10 n.4 (N.D. Cal. Sep. 4, 2025) (same).

Here, Plaintiffs allege that the Tracking Tools disclosed the specific pornographic content that they accessed and searched for to the largest advertising company in the world along with their "cid" cookie identifiers, which allow Google to identify Plaintiffs through their Google account. FAC ¶¶ 61-70. This is precisely the type of sensitive disclosure that Ninth Circuit courts have found sufficient to state a concrete injury in analogous litigation. *See Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 877 (N.D. Cal. 2025) (disclosure of movies watched by plaintiffs through Tracking Tools sufficient to satisfy Article III); *see also Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) (holding that tracking can establish Article III injury where it invades "sensitive spheres"). Indeed, this Court has already found that the Sensitive Information alleged by Plaintiffs implicates a privacy interest when it granted Plaintiffs' Motion to Proceed Pseudonymous. *See* ECF No. 20 (allowing Plaintiffs to proceed pseudonymously due to "privacy implications surrounding a person's sexuality and sexual behavior").

**ii. Agency Law Does Not Help Defendant**

Defendant's argument that Google is its agent is misguided. The cases Defendant cites help illustrate the principle. For example, in *Burch v. Coca-Cola Co.*, 119 F.3d 305, 323 (5th Cir. 1997), the plaintiff alleged that Coca-Cola, his former employer, had shared information with a vendor Coca-Cola hired to conduct employment counseling for Coca-Cola employees. In *Burch*, information was shared to enable the vendor to perform its counseling role. *Id*. The plaintiff did not allege that the vendor used the information for a different purpose, or that Coca-Cola provided the information to the counseling vendor, to use for its own purposes, in exchange for the counseling services. In contrast, Plaintiffs allege that Google uses their Sensitive Information for its own purposes, and that Defendant allows Google to collect Plaintiffs' Sensitive Information. FAC, ¶ 77.

In all, Defendant cites five cases that apply hornbook agency law – that the agent stands in the principal's shoes when acting *for the benefit of the principal*. *See* Mot. at 15-16. And Defendant accurately concludes that it can "provide information to vendors like Google *to assist RedGIFs' business*," *i.e.* for the benefit of RedGIFs. Mot. at 16 (emphasis added). But Plaintiffs allege that RedGIFs shared Plaintiffs' and Class Members' private information with Google to use *for Google's benefit*,[2] and that Defendant traded their Sensitive Information for access to Tracking Tools, including Google Analytics. Principles of agency law do not relieve RedGIFs of liability.

Plaintiffs have also alleged a concrete and tangible harm – the financial harm of the loss of value of their private information. Plaintiffs allege that third parties, such as Google itself, pay consumers for access to private information like the information Defendant shared with Google, and that Defendant's disclosure of this information diminished the value of that information. FAC ¶¶ 81-82. This alone is sufficient to allege a concrete harm. *See Edwards*, 773 F. Supp. 3d at 876.

**iii. Business-to-business disclosures are actionable**

Defendant wrongly argues that "business-to-business disclosures" cannot underpin a claim. Mot. at 16-17 (citing *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 733 (7th Cir. 2023); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022)). But in each of these cases, the challenged disclosure was the disclosure of a name and address to a third party for the purpose of sending mail on behalf of a debt collection company. None involved allegations that the mail vendor received the right use the information for its own purposes.[3]

---

[2] Some analytics platforms maintain user privacy. Plaintiffs would not have brought this case if Defendant used a vendor which maintained the confidentiality of their Sensitive Information.

[3] RedGIFs argument here is somewhat perplexing, as it seems to imply that there is no instance in which use of Tracking Tools can result in an actionable claim. This is

### iv. The Google Chrome web browser does track users.

RedGIFs argues that because Plaintiffs "were using Google Chrome to visit the RedGIFs' website" they cannot reasonably "be shocked when Google obtains metadata about their activity." Mot. 21:12-15. To support this argument, RedGIFs cites to Google's privacy policy, and represents that: "Google expressly informs its users that they collect 'Chrome browsing history you've synced with your Google Account[.]'" Mot. at 21, note 9. This representation is, at best, highly misleading. As the Google Privacy Policy explains, the Google Chrome browser stores a user's Chrome browsing history, bookmarks and passwords for the limited purpose of allowing the user to access their browsing history and bookmarks on multiple devices.[4] Chrome browsing histories are **not** used for targeted advertising purposes, and moreover, do not include the HTTPS requests and event data at-issue in this matter. *See Calhoun v. Google LLC*, 349 F.R.D. 588, 599 (N.D. Cal. 2025) (discussing sworn declaration from Google's Privacy and Data Protection Office wherein Google explains that browsing histories and data transmitted by Google Tracking Tools are completely distinct). RedGIFs' attempt at deflection thus cannot succeed. Plaintiffs' Sensitive Information was disclosed to Google for one reason alone: RedGIFs' decision to configure the Tracking Tools to do so.

### v. Plaintiffs Had a Reasonable Expectation of Privacy

Plaintiffs allege that consumers believe that internet companies should obtain consent before sharing their data, and that individuals are particularly sensitive about the disclosure of information related to their use of pornography. FAC ¶¶ 83-87.[5] Moreover,

---

obviously false. Dozens of such cases have been litigated in this Circuit. *See, e.g.,* notes 6-7, *infra*.

[4] *See Google Chrome Help*, GOOGLE, www.support.google.com/chrome/answer/185277?ref_topic=7439637&hl=en&visit_id=1773193936339489000-1502872278&p=privpol_chrsync&rd=1 .

[5] Defendant identifies some typographical errors in Plaintiffs' first amended complaint. These have been resolved in Plaintiffs' Proposed Second Amended Complaint, ECF 29-1. E.g., SAC at ¶¶ 115-119 (alleging plaintiffs had a reasonable expectation that Defendant would not share their Sensitive Information for commercial purposes unrelated to providing access to content hosted on the Website).

Plaintiffs allege that they expected RedGIFs to "do its utmost to keep their use of its service private." *Id.* ¶ 5.

Defendant's response is a sweeping generalization, claiming that "information concerning a person's website activity is simply not subject to a legitimate privacy expectation." Mot. 20:5-6. But their arguments and citations support only the much narrower argument that Plaintiffs cannot have a reasonable expectation of privacy in the IP addresses they visited. In *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008), the court held that people cannot have a reasonable expectation of privacy in numbers they dial and, in *United States v. VanDyck*, 776 F. App'x 495, 496 (9th Cir. 2019), the Court held that people have no expectation of privacy in the "IP addresses of the websites they visit." In both of these cases, reasonable consumers would understand that the IP addresses and phone numbers are routing information which must be disclosed to complete a call or contact a web server.

Plaintiffs' allegations are not limited to Defendant sharing the IP addresses Plaintiffs contacted. Plaintiffs allege that Defendant disclosed to Google **user-generated** information, i.e. the specific videos they watched, the titles of those videos, tags associated with those videos, their usernames (if applicable), and associated all that information with their Google account so as to render it personally identifiable. FAC ¶¶ 66-71. Moreover, Plaintiffs allege that Defendant did this without Plaintiffs' knowledge or consent. *Id.* ¶¶ 72-75. As the Ninth Circuit has recognized, these allegations do not describe "record" information, such as the IP addresses and phone numbers at-issue in the cases cited by RedGifs but rather constitute the "contents" of Plaintiffs' communications with RedGifs. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (user submitted information including searches entered into a website search bar constitute the contents of the user's communication with the website).

**B. PLAINTIFFS STATE A CLAIM UNDER THE ECPA**

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d).

Where, like here, the defendant is a party to the communication, liability may still be established through the "crime-tort exception" if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiffs have pled the crime-tort exception applies by alleging that RedGIFs' Tracking Tools disclosure of their Sensitive Information to unauthorized third parties constitutes numerous violations of both statutory and common law, as explained *infra* and *supra*.

**i. Financially Motivated Torts are Actionable Under the ECPA.**

Defendant argues that it cannot be liable for intercepting Plaintiffs' communications because RedGIFs used Google Analytics "in the ordinary course of its business." Mot. at 23. But "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999). As many courts have noted, Defendants' argument is "difficult to square with the statutory text" of the ECPA as the "language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *14 (N.D. Ill. Feb. 21, 2025). One court precisely illustrates the flaws in Defendants' reasoning as follows:

> [I]t would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money.

*Id*. at *14-16. Numerous courts within this Circuit concur.[6]

---

[6] *See R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *Riganian v. LiveRamp Holdings, Inc*., No. 25-cv-00824-JST, 2025 U.S. Dist. LEXIS 138122, at *29 (N.D. Cal. July 18, 2025) ("Accordingly, the Court declines to adopt any 'bright-line rule insulating financial motives from the crime-tort exception'" (quoting *Castillo v. Costco Wholesale Corp*., 2024 U.S. Dist. LEXIS 207197, at *6 (W.D. Wash. Nov. 14, 2024)); *Doe v. Tenet Healthcare Corp*., 2025 U.S. Dist. LEXIS 109134, at *69 (E.D. Cal. June 9, 2025)

**ii. Plaintiffs' allege the disclosure of "contents" under the ECPA.**

The ECPA defines "contents" as including "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). RedGIFs incorrectly asserts that the information that Plaintiffs allege was disclosed by the Tracking Tools constitute the record information described by *Zynga*. Mot. at 25:5-19 (citing 750 F. 3d at 1108). In reality, *Zynga* holds that Tracking Tool transmissions that indicate a specific action taken by the user on the website, such as a search term input into a search box, represent the contents of the user's communications with the website operator. *Zynga*, 750 F. 3d at 1107-09; *see also Castillo*, 2024 U.S. Dist. LEXIS 207197, at *15 (similar).

Plaintiffs allege that precisely this type of information in their Amended Complaint. FAC ¶¶ 66-71. For example, Plaintiffs allege that Defendant discloses the specific search results entered by a user into the search box on the Website, the specific videos that a user accesses through the Website, the user's Website username, and the "tags" associated with every video that the user accesses. *Id.* This information is further accompanied by "event" data—specific lines of code that indicate the user has taken a certain action on the Website—such as viewing a specific video. *Id*. Moreover, RedGIFs specifically configured the Tracking Tools to collect this detailed information, in contrast to the limited information collected by the Tracking Tools in their default state. *Id*. ¶ 71. All of this information is transmitted simultaneously with Google's "cid" and "sid" cookies, which identify the user's Google account.

These disclosures constitute more than just record information. When Plaintiffs accessed the Website, Google was informed not just that Plaintiffs had visited a pornographic website, but also of the specific videos they viewed and the specific search terms they entered. These transmissions fully convey the "substance, purport, or

---

("Plaintiffs' allegations that Defendants were financially motivated to disclose their information to Meta do not immunize Defendants from liability under the ECPA").

meaning" of Plaintiffs' communications with RedGIFs: the content that they requested and accessed through the Website. 18 U.S.C. § 2510(8).

### C. PLAINTIFFS' VPPA CLAIM IS WELL-PLED.

The VPPA "prohibits a 'video tape service provider' from knowingly disclosing 'personally identifiable information' about one of its consumers '*to any person*'..." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (citations omitted) (emphasis in original). As the Ninth Circuit noted, "[c]onsistent with Congress's purpose, the [VPPA]'s language is broad." *Id*. Plaintiffs adequately pled a claim under the VPPA because they allege that 1) RedGIFs is a "video tape service provider" as defined in the VPPA because it provides services "similar" to video tapes to consumers over the internet, 2) that RedGIFs knowingly disclosed information regarding consumers' use of its services to Google, and 3) that RedGIFs' disclosures were accompanied by Google's "cid" identifier, which is a unique identifier that, when provided to Google, is personally identifiable information.

Defendant argues that (1) it did not disclose personally identifiable information ("PII"); (2) that Plaintiffs are not "consumers" within the meaning of the VPPA, and (3) that it is not a "video tape service provider" as defined by the VPPA. As explained below, these arguments fail.

#### i. Defendants disclosed Plaintiffs' PII.

Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services...." 18 U.S.C. § 2710(a)(3). PII "includes information that 'standing alone, identifies a person' as well as information that is 'capable of' identifying a person." *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772 (N.D. Cal. 2025) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017)).

The VPPA "focuses on what information a video service provider 'knowingly discloses.'" *Eichenberger*, 876 F.3d at 979 (quoting 18 U.S.C. § 2710(b)(1)). Here, Plaintiffs allege that RedGIFs knowingly transmits a wealth of information about how

users interact with the Website to third-party advertisers such as Google. FAC ¶ 6. Specifically, Plaintiffs allege that RedGIFs knowingly discloses the URL and specific data about the videos that they view (*id.* ¶¶ 68-71), while simultaneously disclosing PII about its users, including the Google "cid" and "sid" identifiers, which identify specific Google users. *Id.* ¶ 69. Moreover, Plaintiffs allege that RedGIFS transmits this information *to Google*. *Id*.

Finding that RedGIFs violated the VPPA is consistent with *Eichenberger*. The Ninth Circuit believed it would be unacceptable to make "[t]he lawfulness of [a] disclosure … depend on circumstances outside of [a video service provider's] control." *Eichenberger*, 876 F.3d at 985 (quoting *Mollett*, 795 F.3d at 1067) (alterations in original). Google's "cid" and "sid" identifiers may not be PII when sent to all third parties, but these identifiers are the most efficient way to identify a person *for Google*.

Defendant reads *Eichenberger* too narrowly. In *Eichenberger*, every time the plaintiff watched a video on the ESPN app, ESPN disclosed to Adobe Analytics: "(1) [the plaintiff]'s Roku device serial number and (2) the identity of the video that he watched." *Id*. Adobe could only use this information to identify an individual using "a complex 'Visitor Stitching technique.'" *Id*. *Eichenberger* found that ESPN would not have "understood that if [it] disclosed" Roku serial numbers to Adobe, that Adobe could use "that information could identify the customer." *Id*. at 985.

In contrast, RedGIFs understands that when it sends Google's "cid" and "sid" identifiers to Google, Google can use that information to identify the customer. These identifiers, when provided to Google, are more effective identifiers than the "[n]ames and addresses" that *Eichenberger* found "still qualify" as PII, and are more effective than "other examples" the court considered including "an individual's name and telephone number or an individual's name and birthday" or "the GPS coordinates of a particular device." *Id*. at 986. Whereas a name and address could identify multiple people, such as a father and his identically-named son, Google's identifier is generally unique to an individual.

*Sellers v. Bleacher Report, Inc.*, is instructive. 2023 U.S. Dist. LEXIS 131579 (N.D. Cal. July 28, 2023). In *Sellers*, the defendant argued that Facebook's user identifiers were not sufficient to identify an individual. But the Court found that Facebook's "unique identifier … is enough, on its own, to identify a person." *Id*. at 13. As the Court noted, a "Facebook User ID is more than a unique, anonymous identifier. It personally identifies a Facebook user," and the allegations created "a material issue of fact that the information transmitted to Facebook was sufficient to identify individual consumers." *Id*. (quoting *In re Hulu Priv. Litig.*, 2014 U.S. Dist. LEXIS 59479, at *46 (N.D. Cal. Apr. 28, 2014)).[7]

To hold that transmitting Google's unique identifiers to Google does not involve PII would open a massive loophole in the VPPA. It cannot be the case that sending Google video histories associated with the "a string of numbers and letters" which most accurately identifies people for Google, rather than a potentially ambiguous name and address, is sufficient to avoid VPPA liability.[8]

**ii. Plaintiffs are consumers under the VPPA.**

The VPPA defines a consumer as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." § 2710(a)(1). To be considered a "consumer" under the VPPA, an individual does not have to make purchases, which "squares with the statutory text and the decisions of the two circuits to have considered the issue." *Jefferson v. Healthline Media, Inc.*, 674 F. Supp. 3d 760, 764 (N.D. Cal.

[7] Many other cases have found the same. *See Archer v. NBCUniversal Media, LLC*, 794 F. Supp. 3d 716, 723 (C.D. Cal. 2025) (Facebook ID sent to Meta is PII); *Edwards*, 773 F. Supp. 3d at 885 (same as to X, Twitter, and Meta identifiers); *Thornton v. Mindvalley, Inc.*, 2025 U.S. Dist. LEXIS 53202, at *11-12 (N.D. Cal. Feb. 14, 2025) (same); *Plotsker v. Envato Pty Ltd.*, 2025 U.S. Dist. LEXIS 168070, at *20 (C.D. Cal. Aug. 26, 2025) (same); *Garcia v. Bandai Namco Ent. Am. Inc.*, 2025 U.S. Dist. LEXIS 152616, at *23 (C.D. Cal. Aug. 7, 2025) (same); *Lee*, 773 F. Supp. 3d at 772-73 (same); *Ade v. Viki, Inc.*, No. 23-cv-02161-RFL, 2024 U.S. Dist. LEXIS 79467, 2024 WL 1880153, at *2 (N.D. Cal. Mar. 28, 2024) (same); *Fan v. NBA Props. Inc.*, 2024 U.S. Dist. LEXIS 57205, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (same).

[8] At a minimum, Plaintiffs raise a question of fact that cannot be resolved here. *See Garcia*, 2025 U.S. Dist. LEXIS 152616, at *22-23 (refusing to dismiss VPPA case where viewing history was associated with Facebook IDs); *see also Nguyen v. Elsevier Inc.*, 2025 U.S. Dist. LEXIS 109280, at *11 (N.D. Cal. June 9, 2025) (same).

2023) (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015); *Yershov* 820 F.3d at 487-88 (1st Cir. 2016)). "[T]he VPPA broadly protects paid and unpaid subscribers," *Jefferson*, 674 F. Supp. 3d at 764, so it protects both G.V, a RedGIFs subscriber, and L.O., a free user of RedGIFs.

**iii. Defendant is a Video Tape Service Provider under the VPPA**

In evaluating the definition of "video tape service provider" under the VPPA, "[c]ourts have generally construed similar audio visual materials broadly, finding that streaming video delivered electronically falls within that definition." *Jackson v. Fandom, Inc.*, 2023 U.S. Dist. LEXIS 125531, at *6 (N.D. Cal. July 20, 2023) (quoting *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. Oct. 13, 2022)). A "plain reading of a statute that covers videotapes and 'similar audio visual materials' is about the video content, not about how that content was delivered." *In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916, at *16.

Defendants argue that the "Eighth Circuit just squarely addressed" whether web-based materials are covered by the VPPA. Mot. at 27 (citing *Christopherson v. Cinema Entertainment Corp.*, 161 F.4th 525, 528 (8th Cir. 2025)). It did not. The Eighth Circuit addressed two types of videos: movies watched in a movie theater and online movie trailers on the movie theater website. As to movies in theaters, the court held that movie theaters do not rent, sell or deliver the movies they offer, instead they offer "a license to sit in a seat and watch a particular movie[.]" *Id*. at 528 (citing *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1113 (9th Cir. 2025)). As to online movie trailers, the court held that these "present a different problem." *Id*. at 529. The court was willing to "assume that making [the trailers] available on" a website counted as delivery of similar audio visual materials, but found that the movie theater defendant was not "'engaged in the business' of providing them," as the trailers were merely advertisements. *Id*. (quoting 18 U.S.C. § 2710(a)(4)). The Eighth Circuit never "squarely addressed" whether companies in the business of streaming videos, like RedGIFs, are video tape service providers, it assumed that they are. Plenty of courts, however, have found that they do.

*See, e.g.*, *Sellers*, 2023 U.S. Dist. LEXIS 131579, at *17-18 (collecting cases in which courts have held that "websites that provide video content" are video tape service providers under the VPPA).

For these reasons, Plaintiffs' VPPA claim is well-pled and Defendants' Motion should be denied.

### D. PLAINTIFFS' COMMON LAW CLAIMS ARE WELL-PLED

#### i. Invasion of Privacy

In California, claims that a third party transmitted an individual's "browsing data, visit history, website interactions, geolocation information, user input data (including search terms), and other types of data" on a website where a user might reasonably expect privacy is sufficient to plead an "invasion of [that] reasonable privacy expectation." *Gabrielli v. Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *23 (N.D. Cal. Aug. 29, 2025). In *Gabrielli*, the defendant operated websites for healthcare related products, and the plantiff alleged that defendant allowed third parties to collect users' communications on its websites. *Id.* at *1. The Court noted that "whatever information users[] input into Haleon's website is likely more sensitive than what the plaintiffs in *Popa* inputted into those websites." *Id*. at 18-20. The court in *Gabrielli* also contrasted the plaintiff's claims with a case alleging that only IP addresses were tracked, stating, "courts in this Circuit have repeatedly held that plaintiffs like Gabrielli have a reasonable expectation of privacy in data like what Gabrielli says was tracked and collected when they expressly reject or otherwise fail to consent to the tracking, collection, and/or disclosure of that data." *Id*. at 17.

Like *Gabrielli*, Plaintiffs here allege that Defendant tracked sensitive information incomparable to the information at issue in *Popa* without their consent. *Id*. Moreover, though *Gabrielli* only alleged "what [the defendant's] cookies could track, not what they did track," Plaintiffs here allege Defendant tracked specific sensitive information. *Id*. at 23. *Dawidzik v. Tesla, Inc*., 2025 U.S. Dist. LEXIS 267789 (C.D. Cal. Dec. 29, 2025) does not compel a different conclusion. In *Dawidizik*, the plaintiff did not allege that the

defendant tracked "specific, sensitive information," such that its disclosure could be "highly offensive." *Id*. at 11-13. This court should follow *Gabrielli*.

**ii. Negligence**

"[A]ll persons have a duty to take reasonable care in their activities to avoid causing injury." *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 209 (Cal. 2021). Plaintiffs plausibly allege a negligence claim. They allege a duty in that they expected Defendant to "do the utmost to keep their use of its service private" because Defendant offers a service that ordinary consumers consider "an extremely private matter." FAC ¶¶ 3, 6. They allege breach in that Defendant enabled third parties, including Google, to easily track Plaintiffs' use if its service, and they allege damages in the disclosure of their sensitive information.

Defendant, however, cites *Brown* as "holding that if no 'special relationship' existed, negligence theory cannot survive." Mot. at 29. Defendant is confused. That portion of *Brown* did not analyze whether the defendant, USA Taekwondo, had a duty to protect others from USA Taekwondo's actions, it analyzed whether USA Taekwondo had a duty to protect taekwondo students from dangerous coaches. This is inapplicable here, where Plaintiffs do not seek to hold RedGIFs liable for Google's actions. Rather, Plaintiffs seek to hold RedGIFs is liable for its own actions and omissions: negligently failing to protect Plaintiffs' data and negligently failing to inform Plaintiffs that it would share their data.

**iii. Breach of Implied Contract**

Plaintiffs allege that they entered into implied contracts with Defendant under which Defendant agreed to safeguard and not disclose Plaintiffs' Sensitive Information without consent. *See* FAC ¶ 132. Plaintiffs further allege that they would not have entrusted Defendant with their Sensitive Information in the absence of an implied contract between them obligating Defendant not to disclose their Sensitive Information without consent. *Id*. ¶ 134. Defendant breached their implied contracts with Plaintiffs by disclosing Plaintiffs' Sensitive Information to third parties, including Google, without

their consent. *Id.* ¶ 135. Courts have found these allegations sufficient at the pleading stage. *See, e.g., Gerber v. Twitter, Inc.*, 2024 U.S. Dist. LEXIS 229023, at *27 (N.D. Cal. Dec. 18, 2024); *Jimenez v. OE Fed. Credit Union*, 2025 U.S. Dist. LEXIS 161144, at *11-12 (N.D. Cal. Aug. 15, 2024); *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, at *28 (N.D. Cal. Sept. 24, 2016).

Defendant argues that an express contract exists, and therefore this claim is invalid. But Plaintiffs do not allege the existence of an express contract, so *Randall v. Univ. of the Pac.*, 2022 U.S. Dist. LEXIS 96065, at *15 (N.D. Cal. May 28, 2022) is not applicable.[9] Whether an express contract exists is an issue of fact that cannot be decided now. *See Nagy v. Retail Capital LLC*, 2025 U.S. Dist. LEXIS 67126, at *15 (S.D. Cal. Apr. 8, 2025) (refusing to grant summary judgment due to "issues of material fact regarding" the existence of a contract).

**iv. Unjust Enrichment**

Plaintiffs allege that Defendant unjustly used their private data as consideration for their use of Google Analytics, receiving a benefit, and that the value of their private data decreased. Either of these allegations alone is sufficient to support an unjust enrichment claim. *Gabrielli* is instructive here, too. The court refused to dismiss the unjust enrichment claim, because "[c]ourts in this District have regularly held that even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct." *Gabrielli*, 2025 U.S. Dist. LEXIS 169503, at *41. *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 732 (N.D. Cal. 2024) is inapposite – there, the plaintiff received discounts from the defendant, so there was "no basis for restitution."

---

[9] Defendant cites to *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1055 (N.D. Cal. 2021) to argue that unjust enrichment cannot be pled alongside a breach of contract claim. Mot. at 29. But Plaintiffs do not plead a claim for breach of contract.

### E. PLAINTIFFS' N.Y. GENERAL BUSINESS LAW § 349 CLAIM IS WELL-PLED

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To maintain a claim under Section 349, the conduct at issue must be "'materially misleading'" and the plaintiff must have "'suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples*, Inc., 802 F3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 967 (2012)). Plaintiffs have adequately alleged that RedGIFs' conduct was materially misleading and that they suffered an injury because of that misleading conduct.

Plaintiffs allege that RedGIFs' conduct is materially misleading because, "[u]nbeknownst to Plaintiffs and Class Members, Defendant intentionally configured the Google Pixels installed on its Website to capture and transmit an enormous amount of the Sensitive Information about them and their use of the Website." FAC ¶ 66. Plaintiffs further allege that they were not shown any disclaimer or warning that their Sensitive Information would be collected and disclosed to third parties. *Id.* ¶ 73. And Plaintiffs allege that the tracking software was invisible to Plaintiffs and the average internet user, because it could only be detected by analyzing network traffic. *Id.* ¶ 72. Thus, Plaintiffs have "plausibly allege[d] that the deceptive conduct was 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Defendant argues that § 349 claims require "affirmative conduct." Mot. at 29 (citing *Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 991 (2020) and *Anderson v. Friendly Auto Ventures, Inc.*, 2023 U.S. Dist. LEXIS 25936 (N.D.N.Y. Feb. 15, 2023)). That is incorrect. *Collazo* does not support Defendant's reading – the court found that acting unlawfully and failing to "admit the transgression" is insufficient to allege a § 349 claim. 35 N.Y.3d at 991. *Anderson*, 2023 U.S. Dist. LEXIS 25936 fares no better. There, the defendant's business practices were not deceptive – they allowed

loan applications without substantiating the applicant's income, but did not deceive the plaintiff, who was the applicant in *Anderson*. *Id*. at *7-8.

*Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 9 (NY 2020) addressed this issue. In *Plavin*, the court held that "misleading misrepresentations and/or omissions" can give rise to a § 349 claim, because the legislation sought to "strik[e] down all forms of deceptive acts and practices." Neither *Anderson* nor *Collazo* overrules the holding in *Plavin* that omissions can give rise to a § 349 claim.

Plaintiffs' § 349 claim, alleging that Defendant omitted that it would share Plaintiffs' Sensitive Information with third parties, is well-pled.

## V. CONCLUSION

For the aforementioned reasons, this Honorable Court should DENY Defendant's Motion to Dismiss.

Dated: March 10, 2026

Respectfully submitted,

*/s/ Sonjay Singh*
Sonjay Singh (*Pro Hac Vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Email: ssingh@sirillp.com

Daniel Srourian (SBN 285678)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverley Hills, CA 90210
Tel: (213) 474-3800
E: daniel@sfla.com

*Attorneys for Plaintiffs and the Putative Class*

**Local Rule 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,331 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 10, 2026

*/s/ Sonjay Singh*
Sonjay Singh