SUSANNE BONIADI (SBN 341512)
susanne.boniadi@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

ADAM D. BOWSER (*pro hac vice*)
adam.bowser@afslaw.com
**ARENTFOX SCHIFF LLP**
717 K Street NW
Washington, DC 20006
Telephone: 202.857.6000
Facsimile: 202.857.6395

Attorneys for Defendant
VERGIL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

L.O., and G.V., individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERGIL SERVICES, INC. D/B/A REDGIFS;

Defendant.

Case No. 2:25-cv-05102-PD

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Date: March 30, 2026
Time: 1:30 p.m.
Courtroom: Courtroom 580, 5th Floor
Judge: Hon. Patricia Donahue

Complaint Served: Aug. 13, 2025
FAC: Dec. 19, 2025

# TABLE OF CONTENTS


I. INTRODUCTION ..... 5

II. ARGUMENT ..... 5

A. PLAINTIFFS' ATTACK ON THE NICHOLS DECLARATION IS UNSUPPORTED BY ANY EVIDENCE. ..... 5

1. Plaintiffs offer no evidence that the sign-up page appeared differently on any device. ..... 5

2. Plaintiffs' objection to the cropped screenshot is likewise speculative. ..... 7

3. Plaintiffs' Wayback Machine objection is meritless. ..... 7

B. PLAINTIFF G.V. HAD REASONABLY CONSPICUOUS NOTICE OF THE TERMS AND ARBITRATION CLAUSE. ..... 8

1. The visual design of the sign-up page satisfies the conspicuousness requirement. ..... 8

2. Plaintiffs' "mobile keyboard" argument is pure speculation. ..... 9

3. The context of the transaction supports notice. ..... 9

4. The "multi-step" argument is inapposite. ..... 10

C. THE ARBITRATION CLAUSE IS NOT UNCONSCIONABLE ..... 10

1. Unconscionability is Specifically Delegated to the Arbitrator. ..... 10

2. The Arbitration Clause is Not Procedurally Unconscionable. ..... 12

3. The Arbitration Clause Is Not Substantively Unconscionable. ..... 13

4. The intellectual property carve-out does not create actionable lack of mutuality. ..... 15

5. The PAGA waiver issue does not invalidate the arbitration clause. ..... 16

III. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
24 Cal. 4th 83, 124 (2000) ........ 17

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........ 12

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 14

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) (J. Baker, concurring) ........ 8

*Castillo v. CleanNet USA, Inc.*,
358 F. Supp. 3d 912 (N.D. Cal. 2018) ........ 6

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ........ 10

*Darnaa, LLC v. Google Inc.*,
236 F. Supp. 3d 1116 (N.D. Cal. 2017), *aff'd sub nom. Darnaa, LLC v. Google LLLC,*756 F. App'x 674 (9th Cir. 2018) ........ 14

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........ 12

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
209 Cal.App.4th 1118, 147 Cal.Rptr.3d 634 (2012) ........ 14, 18

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ........ 9

*Lim v. TForce Logistics, LLC*,
8 F.4th 992 (9th Cir. 2021) ........ 11

*Markborough Cal. Inc. v. Super. Ct.*,
227 Cal.App.3d 705, 277 Cal.Rptr. 919 (1991) ........ 14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........ 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .......... 15

*Munoz v. Earthgrains Distribution*,
2024 U.S. App. LEXIS 23099 (9th Cir. 2024) .......... 16

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......... 10

*Ramirez v. Charter Communications, Inc.*,
16 Cal. 5th 478 (2024) .......... 16

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 .......... 11

*Yancey v. CCFI Co., LLC*,
2025 U.S. Dist. LEXIS 189546 (E.D. Cal. Sep. 23, 2025) .......... 16

*Young v. Solana Labs, Inc.*,
No. 22-cv-03912-RFL, 2024 U.S. Dist. LEXIS 160371 (N.D. Cal. Sept. 3, 2024) .......... 6

**Statutes**

Cal. Civ. Code § 1670.5 .......... 17

# I. INTRODUCTION

Plaintiffs' Response in Opposition to Defendant's Motion to Compel Arbitration (the "Opposition") is notable for what it lacks: any evidence. Plaintiffs did not submit a single declaration—not from Plaintiff G.V., not from counsel, not from any witness. They offer no screenshots and no contrary evidence of what the sign-up page looked like when G.V. created her account. Instead, Plaintiffs construct their Opposition entirely from speculation, hypotheticals, and inapposite case law, none of which creates a genuine dispute of material fact sufficient to defeat Defendant's motion.

As demonstrated in the Declaration of Ade Nichols (the "Nichols Declaration"), the undisputed facts establish that: (1) Plaintiff G.V. voluntarily signed up for a free RedGIFs account on April 17, 2025; (2) the sign-up page conspicuously disclosed that by continuing, she agreed to RedGIFs' Terms of Use; (3) the Terms of Use clearly and prominently notified users of the binding arbitration provision; and (4) G.V. never opted out of arbitration. Plaintiffs' Opposition fails to rebut any of these facts with admissible evidence, and the Court should grant Defendant's Motion.

# II. ARGUMENT

## A. PLAINTIFFS' ATTACK ON THE NICHOLS DECLARATION IS UNSUPPORTED BY ANY EVIDENCE.

Plaintiffs devote an entire section of their Opposition to attacking the sufficiency of the Nichols Declaration, arguing it "does not adequately establish the existence of the Arbitration Clause." Yet Plaintiffs' critiques are speculative, unsupported by admissible counterevidence, and fail as a matter of law.

### 1. Plaintiffs offer no evidence that the sign-up page appeared differently on any device.

Plaintiffs argue that the Nichols Declaration's screenshot fails to establish that the sign-up page "appears the same to users who utilize their desktop computers or

laptops, or users who use their mobile devices to access the Website," Opp. at 5 ( citing *Young v. Solana Labs, Inc.*, No. 22-cv-03912-RFL, 2024 U.S. Dist. LEXIS 160371 (N.D. Cal. Sept. 3, 2024)). This argument is a red herring.

First, Plaintiffs filed no declaration from G.V. or anyone else establishing what device G.V. used to access the Website, what the sign-up page looked like on that device, or that the page appeared materially different, or different at all, from the screenshot in the Nichols Declaration. Plaintiffs cannot defeat the evidence with mere speculation. *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912, 928 (N.D. Cal. 2018) ("a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense").

Second, the Nichols Declaration states, based on Mr. Nichols's personal knowledge as Chief Operating Officer, that "when [G.V.] registered for an account, and as it also exists today, the process and presentation on the website was and is as follows," before providing the screenshot showing the sign-up page with the "By continuing, you agree to our policies Terms of use · Privacy Policy" disclosure. Plaintiffs cite no inconsistency, no contrary evidence, and no basis to discredit this testimony. The Declaration was made under penalty of perjury by a corporate officer with personal knowledge.

Third, *Young* is factually distinguishable. In that case, the defendant failed to establish whether the plaintiff accessed the platform through a mobile or desktop download, a relevant distinction for an application that could be installed through entirely different storefronts with potentially different terms. Here, by contrast, RedGIFs operates a single website accessible via a web browser, whether mobile or desktop, and the Nichols Declaration attests to the presentation of the sign-up process as it existed when G.V. registered.

**2. Plaintiffs' objection to the cropped screenshot is likewise speculative.**

Plaintiffs state that "RedGIFs fails to even attach the entirety of the Sign-Up Page, instead opting to provide a narrowly cropped image showing only the form fields." They speculate that "[t]he presence of distracting visual elements on the same page as a sign-in wrap agreement may defeat a finding of notice." But again, speculation is not evidence. Plaintiffs do not, and cannot, identify any "distracting visual elements" that were present on the sign-up page, because they submitted no screenshots, no declarations, and no evidence of any kind. To the contrary, the Nichols Declaration establishes that the sign-up screen featured a minimalistic design with the notice placed near the "Sign Up" button. Defendant described the surrounding design as "minimalistic" with a "black background" that "clearly contrasted with the hyperlink's bright yellow color." Plaintiffs' bare conjecture that additional "distracting visual elements" *might* have existed does not create a triable issue of fact.

**3. Plaintiffs' Wayback Machine objection is meritless.**

Plaintiffs object that the Terms of Use were sourced from the Wayback Machine and that "the dates of which are obscured by the Wayback Machine's headers." Opp. at 5. This objection also goes nowhere. The Nichols Declaration specifically attests that the attached Terms "were the Terms that were in effect on the website since December 11, 2020" and were "accessible to Plaintiff via the hyperlink when she created an account on April 17, 2025." The Terms themselves confirm their effective date as "December 11, 2020." Plaintiffs have offered no competing version of the Terms, no declaration suggesting the Terms were different at the time of G.V.'s registration, and no basis to question the authenticity of the exhibit. The Nichols Declaration's reliance on the Wayback Machine is merely supplemental to Mr. Nichols's firsthand attestation that these were the operative Terms, a point Plaintiffs simply ignore.

### B. PLAINTIFF G.V. HAD REASONABLY CONSPICUOUS NOTICE OF THE TERMS AND ARBITRATION CLAUSE.

Plaintiffs contend that the sign-up page did not provide "conspicuous notice" of the Arbitration Clause. This argument fails on the undisputed facts and the controlling law.

#### 1. The visual design of the sign-up page satisfies the conspicuousness requirement.

Plaintiffs acknowledge that this case involves a "sign-in wrap" agreement. While such agreements occupy what some courts have called a "gray zone," they are enforceable when the website provides "conspicuous textual notice that completing a transaction or registration signifies consent to the site's terms and conditions." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 868 (9th Cir. 2022) (J. Baker, concurring).

The undisputed evidence shows that RedGIFs' sign-up page provided exactly this type of conspicuous notice. The sign-up page presented an uncluttered screen with a text notice reading "By continuing, you agree to our policies Terms of use · Privacy Policy" displayed "closely below the 'Sign Up' button." The words "Terms of use" and "Privacy Policy" were hyperlinks in contrasting colors (bright pink on navy) that exceeded website accessibility standards (WCAG AA) for contrast ratio for all users, including those with eyesight disabilities. Plaintiffs do not dispute any of these facts; they instead offer more speculation about what the page might have looked like on unspecified mobile devices.

Plaintiffs argue that the notice was "placed at the very bottom of the visible page, not directly above or beneath the Sign Up' page [sic]." But the Nichols Declaration establishes the opposite—the notice was displayed "closely below the 'Sign Up' button" and clearly visible on the same, uncluttered screen. Plaintiffs offer no evidence to the contrary, and the undisputed screenshot confirms the notice's proximity to the button.

**2. Plaintiffs' "mobile keyboard" argument is pure speculation.**

Plaintiffs argue that "users who begin typing in the 'Username' and 'Email' fields on mobile devices no longer see the notice as it becomes obscured by their keyboards." This argument lacks merit.

First, there is no evidence that G.V. accessed the Website on a mobile device. She filed no declaration. Second, even if she had, the relevant question is whether the notice was visible when the user could manifest assent by clicking "Sign Up," not whether the notice was visible at every moment during data entry. A user must dismiss the keyboard to click the Sign Up button, at which point the notice would again be visible. Third, courts have consistently held that conspicuousness is assessed based on what a "reasonably prudent Internet user" would have seen, not what a user who deliberately avoids looking at the screen might miss. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024).

**3. The context of the transaction supports notice.**

Plaintiffs argue that because "RedGIFs is a free platform," the transactional context did not put G.V. on notice to look for additional terms. Account registration, regardless of whether payment is involved, "clearly contemplate[s] some sort of continuing relationship." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017); *see also Keebaugh*, 100 F.4th at 1019–20 (finding context of downloading a free app sufficient because it "carries the connotation that the user will also have ongoing access").

RedGIFs' sign-up process in fact provides more conspicuous notice than the process upheld by the Ninth Circuit in *Keebaugh*. There, the Ninth Circuit found enforceable a sign-up screen with comparatively much smaller text and lack of underlined hyperlinked Terms. RedGIFs' design, by contrast, featured hyperlinked Terms in bright, contrasting colors exceeding accessibility standards, with a clear textual notice near the Sign Up button.

**4. The "multi-step" argument is inapposite.**

Plaintiffs argue that "even if a user visited the hyperlinked Terms and scrolled through the entirety of its Terms, Plaintiff G.V. would still have had to embark on a multistep process to actually find the Arbitration Clause." This fundamentally mischaracterizes the legal standard. As the Supreme Court recently held, "arbitration agreements are simply contracts." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). There is absolutely no contract rule that requires a specific term to be put in a special place. Indeed, it's hornbook contract law that a party has an obligation to read *the entire agreement*. Thus, the question is not whether the user had to scroll through the Terms to find the arbitration clause; rather, it is whether the user had conspicuous notice that she was agreeing to the Terms in the first place. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024).

Moreover, the Terms themselves immediately notified users about the arbitration provision in their very first paragraph: "As described in Section 12, you agree that unless you opt out, all disputes between you and RedGIFs will be resolved by individual arbitration." This is not a case where the arbitration clause was hidden or buried without any reference in the body of the agreement. The Terms flagged it prominently at the outset, which Plaintiffs ignore entirely.

The cases Plaintiffs cite regarding "multi-step" processes, Opp. at 6, involved situations where the arbitration clause was contained in an entirely separate agreement through a chain of hyperlinks, not within the same Terms of Use that the user was notified of on the sign-up page. Here, the arbitration provision is contained directly within the Terms of Use to which G.V. was notified she was agreeing.

**C. <u>THE ARBITRATION CLAUSE IS NOT UNCONSCIONABLE</u>**

**1. Unconscionability is Specifically Delegated to the Arbitrator.**

Even if G.V. assented to the Arbitration Clause (which she did), Plaintiffs nevertheless contend it is somehow unconscionable. The Court, however, need not reach Plaintiffs' unconscionability arguments because the incorporation of the JAMS

rules constitutes a delegation clause that commits threshold enforceability questions, including unconscionability, to the arbitrator.

Plaintiffs' unconscionability arguments are directed at the Arbitration Clause as a whole, and do not target the delegation of arbitrability questions to the arbitrator through the incorporation of the JAMS rules. A court may consider only a challenge that is "directed specifically to the [delegation] agreement" and must treat "the delegation provision as valid" unless it is separately challenged. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Because Plaintiffs have not specifically challenged the delegation clause, this Court should enforce it and refer Plaintiffs' (meritless) unconscionability arguments to the arbitrator.

Notably, Plaintiffs themselves cited *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021), which involved a challenge to a delegation clause, yet Plaintiffs never actually challenged the delegation clause in this case. *Lim* is also factually distinguishable: there, the delegation clause was found procedurally unconscionable because it was buried "in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font" in an employment agreement where the plaintiff **had no prior notice**. *Id.* at 1001. Here, by contrast, the incorporation of the JAMS rules is prominently featured in the very first substantive paragraph of Section 12, within a section preceded by an all-caps header reading "ARBITRATION AGREEMENT AND CLASS ACTION WAIVER — IMPORTANT — PLEASE REVIEW CAREFULLY AS THIS AFFECTS YOUR LEGAL RIGHTS." The delegation is neither hidden nor surprising.

Accordingly, the Court should enforce the delegation clause and compel arbitration, leaving Plaintiffs' unconscionability arguments for the arbitrator to resolve. In the alternative, even if the Court reaches the merits of Plaintiffs' unconscionability challenge, it fails for the reasons set forth below.

**2. The Arbitration Clause is Not Procedurally Unconscionable.**

Plaintiffs argue that because the Terms were offered on a take-it-or-leave-it basis, they constitute a "paradigmatic contract of adhesion." While it is true that adhesion is a "starting point" for the procedural unconscionability analysis, it is well established that the adhesive nature of a consumer contract, standing alone, does not render it procedurally unconscionable. Virtually all consumer-facing website's terms of use are presented on a take-it-or-leave-it basis; were that sufficient, no online arbitration agreement would ever be enforceable—a result that would contravene the FAA's strong policy favoring arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

**a. Plaintiffs' "oppression" arguments are unsupported.**

Plaintiffs identify several supposed indicia of oppression: that RedGIFs is "a sophisticated corporation" with "unequal bargaining power";[1] that RedGIFs "drafted the Terms"; that G.V. "was not permitted to negotiate"; and that "the Terms are long and feature a complex Arbitration Clause buried at its end." These factors describe every consumer terms-of-use agreement on the internet. If these facts alone established oppression, the unconscionability defense would swallow the FAA entirely. Courts applying the FAA have consistently rejected this approach. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Moreover, Plaintiffs' argument that the failure to attach a copy of the JAMS rules renders the Arbitration Clause procedurally unconscionable misapprehends the relevant context. The cases Plaintiffs rely on (*Samaniego*, *Trivedi*, *Carmona*, and *Zullo*) involved employment or in-person consumer transactions where courts required employers or businesses to provide physical copies of arbitration rules at the time of contracting. Here, the Terms specify that arbitration shall proceed "in

[1] Of course, it is undisputed that G.V. registered for an account at the same time as her attorney, so it cannot be said that she was even an "unrepresented consumer" when they set up this claim. Plaintiff and her counsel could have cleared that up by presenting evidence when she engaged her counsel, but they did not.

accordance with the streamlined arbitration rules and procedures of JAMS, Inc." The JAMS rules are freely available online. In the context of an internet-based transaction between a user sophisticated enough to navigate the Website and create an account, the failure to embed JAMS's publicly available rules within the Terms themselves does not constitute oppression.

#### b. Plaintiffs' "surprise" argument is contradicted by the Terms.

Plaintiffs argue that the Arbitration Clause was the "product of surprise" because it was "section 12 of 15 sections" and presented as "a dense block of single-spaced text." But as noted above, the very first paragraph of the Terms explicitly warns users: "As described in Section 12, you agree that unless you opt out, all disputes between you and RedGIFs will be resolved by individual arbitration, and you waive your right to trial by jury, or to participate in a class action lawsuit or class-wide arbitration." A user who reads even the first sentences of the Terms is unambiguously put on notice of the arbitration clause. This is the opposite of "surprise." Again, Section 12 of the Terms is preceded by an all-caps header reading "ARBITRATION AGREEMENT AND CLASS ACTION WAIVER — IMPORTANT — PLEASE REVIEW CAREFULLY AS THIS AFFECTS YOUR LEGAL RIGHTS." Plaintiffs do not acknowledge or distinguish either of these facts.

### 3. The Arbitration Clause Is Not Substantively Unconscionable.

Plaintiffs raise two substantive unconscionability arguments: (1) the limitation of liability provision caps damages at $100, and (2) the intellectual property carve-out creates a lack of mutuality. Both arguments are meritless.

#### a. The limitation of liability clause is distinct from the arbitration clause and is independently enforceable.

Plaintiffs' primary substantive unconscionability argument, which should be decided by the arbitrator, rests on the Terms' "Limitation of Liability" clause, which

caps direct damages at $100.00 and excludes various categories of consequential and punitive damages. But this limitation of liability is a freestanding provision (Section 10 of the Terms) that applies regardless of whether a dispute proceeds in arbitration or in court. It is not a feature of the Arbitration Clause itself. Plaintiffs' attempt to conflate the two provisions is misleading.

As a threshold matter, limitation-of-liability clauses "have long been recognized as valid." *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118, 1126, 147 Cal.Rptr.3d 634 (2012). Such provisions "are particularly important where," as here, "the beneficiary of the clause is involved in a 'high-risk, low-compensation service.'" *Markborough Cal. Inc. v. Super. Ct.*, 227 Cal.App.3d 705, 714, 277 Cal.Rptr. 919 (1991). That is exactly this case: Plaintiff G.V. **paid nothing** to access the RedGIFs Website, she simply visited a free, platform and now seeks substantial damages for that visit. Ninth Circuit courts routinely uphold limitation-of-liability clauses in the context of websites and online services, including against corporate giants like Google and Facebook. *See Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1123 (N.D. Cal. 2017), *aff'd sub nom. Darnaa, LLC v. Google LLLC,*756 F. App'x 674 (9th Cir. 2018); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1037 (N.D. Cal. 2019) (rejecting argument that Facebook's limitation of liability clause was unconscionable). A plaintiff who has parted with no money in exchange for a free service cannot credibly claim that the service provider's clearly disclosed limitation of liability renders the Terms substantively unconscionable.

Indeed, the ubiquity of such provisions is perhaps best illustrated by the fact that this Court's own electronic filing system, PACER, contains a materially identical limitation of liability on its website. The PACER disclaimer states "Provider disclaims all responsibility for any loss, injury, claim, liability, or damage of any kind in any way related to (A) any errors in or omissions from this web site and the content, including but not limited to technical inaccuracies and typographical errors, (B) the

unavailability of this web site, the content, or any portion thereof, (C) your use of this web site or the content, or (D) your use of any equipment or software in connection with this web site or the content."[2] If such a sweeping limitation of liability is appropriate for the federal judiciary's own website, deploying Google Analytics on every webpage, it can hardly be deemed unconscionable when employed by a private website offering a similarly free service. Plaintiffs' position, taken to its logical conclusion, would render the Court's own website terms unconscionable—an absurd result that underscores the weakness of their argument.

To be sure, the Arbitration Clause states that "the arbitrator will not have authority to award damages, remedies or awards that conflict with these Terms." But this merely ensures that the arbitrator applies the same contractual limitations that a court would apply. If the limitation of liability is unenforceable as applied to Plaintiff G.V.'s statutory claims, the arbitrator, like a court, would simply decline to enforce it. The appropriate remedy is not to invalidate the arbitration clause; it is to severe or decline to enforce the limitation of liability, leaving the arbitration agreement intact.

Indeed, the Supreme Court has made clear that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). To the extent the limitation of liability would prevent G.V. from vindicating her statutory rights, the limitation itself is unenforceable—but the agreement to arbitrate remains valid.

**4. The intellectual property carve-out does not create actionable lack of mutuality.**

Plaintiffs argue that the Arbitration Clause is "one-sided" because it permits RedGIFs to seek injunctive relief in court for intellectual property violations while

---

[2] *See* https://pacer.uscourts.gov/file-case/developer-resources/cmecf-developer-disclaimer.

requiring users to arbitrate all claims. But courts have consistently recognized that carve-outs for injunctive relief related to intellectual property rights do not render an arbitration agreement unconscionable. Such carve-outs are standard in the industry and serve a legitimate business purpose: the need for immediate equitable relief to prevent irreparable harm from ongoing intellectual property infringement.

Moreover, Plaintiffs overstate the asymmetry. The Arbitration Clause also preserves users' right to bring claims in small claims court. And the Terms provide a 30-day opt-out period during which G.V. could have rejected the arbitration provision entirely, simply by sending a written notice. G.V. never opted out.

Plaintiffs' reliance on *Ramirez v. Charter Communications, Inc.*, 16 Cal. 5th 478 (2024), and *Munoz v. Earthgrains Distribution*, 2024 U.S. App. LEXIS 23099 (9th Cir. 2024), is misplaced. In *Munoz*, the court found substantive unconscionability where the carve-out effectively exempted all the employer's likely claims from arbitration while channeling all of the employee's claims into arbitration. Here, by contrast, the IP carve-out is narrow and does not exempt most RedGIFs' potential claims against users from arbitration.

**5. The PAGA waiver issue does not invalidate the arbitration clause.**

Plaintiffs argue that the provision prohibiting participation "in claims brought in a private attorney general or representative capacity" is unenforceable, citing *Yancey v. CCFI Co*. Opp. at 19. But that case clearly involved California state employment law that has absolutely no application here to a free website account expressly subject to Arizona law. *Yancey*, 2025 WL 2719361, at *8 (E.D. Cal. Sept. 24, 2025) (noting that "the California Supreme Court held that where "an employment agreement compels the waiver of representative claims under the PAGA," it "frustrates the PAGA's objectives").

Even assuming that such a waiver is unenforceable, the Terms themselves contain a severability clause that expressly addresses this situation: "If the prohibition against class actions and other claims brought on behalf of third parties contained above is found to be unenforceable, then all of the preceding language in this Section 12 will be null and void." This provision demonstrates that the drafter contemplated the potential unenforceability of specific provisions and provided a mechanism for addressing them—the hallmark of good-faith drafting, not the "systematic effort to impose arbitration as an inferior forum" that Plaintiffs allege.

Moreover, Plaintiffs do not allege a PAGA claim. They bring claims under the ECPA, VPPA, and common law theories, and thus have no standing to raise meritless disputes about claims they are not bringing under a different state's law.

**a. Severance Is Appropriate Even If Unconscionability Were Found.**

Even if the Court were to find any provision of the Arbitration Clause unconscionable, the appropriate remedy is severance, not wholesale invalidation. California Civil Code § 1670.5 grants courts discretion to "limit the application of any unconscionable clause so as to avoid any unconscionable result." The Terms themselves contain a severability clause providing that "[i]f any provision of these Terms is held to be invalid, illegal or unenforceable in any respect, that provision shall be limited or eliminated to the minimum extent necessary so that these Terms shall otherwise remain in full force and effect and enforceable."

Plaintiffs contend that the Arbitration Clause is "permeated" by unconscionability, rendering severance improper, citing *Armendariz v. Foundation Health Psychcare Services, Inc.* , 24 Cal. 4th 83, 124 (2000). But Plaintiffs' "permeation" argument conflates separate contractual provisions. The $100 damages cap is a limitation of liability provision (Section 10) that is independent from the Arbitration Clause (Section 12). If that provision is struck, the arbitration agreement functions perfectly well. The IP carve-out can likewise be severed, leaving a mutual

obligation to arbitrate. The PAGA waiver, as noted, is irrelevant to Plaintiffs' claims. Striking these discrete provisions would not require the Court to "augment the contract with additional terms," but rather would simply involve removing or limiting identifiable clauses—precisely the type of surgical severance that courts routinely perform.

Plaintiffs' argument that RedGIFs "should not be rewarded for crafting an agreement that violates decades of well-settled law" is hyperbolic and unsupported. The limitation of liability provision is a common contractual feature that has been "long recognized as valid in California," *Food Safety Net Servs.*, 209 Cal.App.4th at 1126, and the IP carve-out is standard across the industry. Neither reflects the sort of bad faith overreaching that would preclude severance. To the contrary, the Terms were offered in connection with an entirely free service—Plaintiff G.V. paid nothing and lost nothing by visiting the Website—and her attempt to leverage the very Terms she agreed to in order to impose costs on RedGIFs while simultaneously arguing those Terms are unconscionable is precisely the type of inconsistent position that courts should reject.

## III. <u>CONCLUSION</u>

For these reasons, and for the reasons set forth in Defendant's opening Motion, this Court should grant Defendant's Motion to Compel Arbitration.

Dated: March 17, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: <u>*/s/ Susanne Boniadi*</u>
SUSANNE BONIADI
ADAM D. BOWSER
Attorneys for Defendant
VERGIL SERVICES, INC.

**LOCAL RULE L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Vergil Services, Inc. certifies that this brief contains 4,185 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 17, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: */s/ Susanne Boniadi*
SUSANNE BONIADI
Attorneys for Defendant
VERGIL SERVICES, INC.