SUSANNE BONIADI (SBN 341512)
susanne.boniadi@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401

ADAM D. BOWSER (*pro hac vice*)
adam.bowser@afslaw.com
**ARENTFOX SCHIFF LLP**
717 K Street NW
Washington, DC 20006
Telephone: 202.857.6000
Facsimile: 202.857.6395

Attorneys for Defendant
VERGIL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

L.O., and G.V., individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERGIL SERVICES, INC. D/B/A REDGIFS;

Defendant.

Case No. 2:25-cv-05102-PD

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT VERGIL SERVICES, INC.'S MOTION TO DISMISS**

Date: March 30, 2026
Time: 1:30 p.m.
Courtroom: Courtroom 580, 5th Floor
Judge: Hon. Patricia Donahue

Complaint Served: Aug. 13, 2025
FAC: Dec. 19, 2025

## TABLE OF CONTENTS

I. INTRODUCTION .......... 6
II. PLAINTIFFS LACK ARTICLE III STANDING .......... 7
A. Plaintiffs Have Not Alleged Any Concrete Injury Whatsoever .......... 7
B. The Ninth Circuit's Decision in *Popa v. Microsoft* Is Controlling and Dispositive .......... 9
C. Plaintiffs' "Lost Value" Theory Fails Because These Statutes Were Not Enacted to Compensate Visitors to Free Public Websites .......... 11
D. There Is No Expectation of Privacy in Metadata Associated with Visiting a Public Website .......... 12
III. PLAINTIFFS' ECPA CLAIM FAILS AS A MATTER OF LAW .......... 13
IV. PLAINTIFFS' VPPA CLAIM FAILS ON THE MERITS .......... 14
V. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED .......... 16
VI. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. CoStar Realty Information Inc.*,
2025 WL 2959228, at *4 (E.D. Mo. Oct. 20, 2025) .......... 16

*Bassett v. ABM Parking Services, Inc.*,
883 F.3d 776 (9th Cir. 2018) .......... 8

*Bock v. Washington*,
33 F.4th 1139, 1145 (9th Cir. 2022) .......... 7

*Caine v. Sturdy Memorial Hospital, Inc.*
2026 WL 673483, at *1 (D. Mass. Mar. 10, 2026) .......... 13, 16

*Calhoun v. Google LLC*,
349 F.R.D. 588, 599 (N.D. Cal. 2025) .......... 10, 15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 9, 14

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......... 9, 10

*Fernandez v. Leidos, Inc.*,
127 F. Supp. 3d 1078 (E.D. Cal. 2015) .......... 8, 12

*Heerde v. Learfield Commc'ns*, *LLC*,
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) .......... 15

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413, 425 (4th Cir. 2025) .......... 9

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034, 1054 (N.D. Cal. 2022) .......... 6

*In re Illuminate Educ. Data Sec. Incident Litig.*,
No. SACV 22-1164 JVS (ADSx), 2023 WL 3158954, at *3 (C.D. Cal. Apr. 19, 2023) .......... 8

*Kisil v. Illuminate Educ., Inc.*,
2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025) .......... 7

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954, 964 (C.D. Cal. 2023) .......... 7

*Nichols v. PeaceHealth Networks on Demand LLC*,
No. 2:25-CV-01831-JHC, 2026 WL 607763, at *2 (W.D. Wash. Mar. 4, 2026) .......... 14

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 14

*Popa v. Microsoft Corp.*,
153 F.4th 784, 792 (9th Cir. 2025) .......... 6, 9, 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 9, 10

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) .......... 10

*Smith v. Trinity Broad. of Texas, Inc. et al*,
No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) .......... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413, 434 (2021) .......... 6, 8, 10

*United States v. Bynum*,
604 F.3d 161 (4th Cir. 2010) .......... 12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 12

*United States v. Rosenow*,
50 F.4th 715, 728 (9th Cir. 2022) .......... 13

*Van Patten v. Vertical Fitness Group, LLC*,
847 F.3d 1037 (9th Cir. 2017) .......... 11

**Statutes**

18 U.S.C. § 2510(12) .......... 13

18 U.S.C. § 2710 ........ 15, 16

18 U.S.C. § 3117 ........ 13

28 U.S.C. § 1367(c) ........ 16

594 U.S. at 424 ........ 10

NY Gen. Bus. L. § 349 ........ 16, 17

**Other Authorities**

ECPA ........ 11, 13, 14

S. Rep. No. 100-599 (1988) ........ 16

## I. **INTRODUCTION**

Plaintiffs' Opposition confirms what RedGIFs' Motion to Dismiss established: this case rests on nothing more than conclusory and formulaic allegations, advancing "privacy" claims entirely in the abstract, under legal theories that have been rejected by every court to seriously examine them. Rather than address the dispositive legal deficiencies identified in RedGIFs' Motion, Plaintiffs resort to misdirection, citing inapposite *pre-TransUnion* cases and hoping this Court will not notice that they have failed to allege a **single** well-pled fact demonstrating that they suffered any **particularized** harm of any kind.

Indeed, Plaintiffs miss the central point succinctly stated by the Court of Appeals in *Popa*: Plaintiffs' "broad theory that the common law protected privacy rights—**pitched at a high level of generality**—does not align with the analysis adopted in *TransUnion*." *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (emphasis added). Of course, that's all we get here: generalized grievances about the Internet coupled with entirely speculative allegations of "harm." Put differently, what we never get is any hint as to how "**plaintiffs' specific information**" was actually misused, let alone in a way that caused a harm remotely close to a common law analogue. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1054 (N.D. Cal. 2022) (Judge Gonzalez Rogers dismissing data breach case for lack of standing because "harm did not materialize," even where plaintiffs detailed their specific personal information taken and specific consequences *they personally experienced*) (emphasis added).

Against this factual vacuum, Plaintiffs ask this Court to hold that visiting a free public website on the public Internet—one with a posted privacy policy (which Plaintiff G.V. agreed to when she registered to set up her claim)—gives rise to federal claims under wiretapping and video rental statutes from the 1980s, plus a grab bag of common law torts. But as detailed below, Plaintiffs' Opposition conspicuously

fails to address the controlling authority requiring dismissal and, in several critical respects, concedes the very points that are fatal to their case.

## II. <u>PLAINTIFFS LACK ARTICLE III STANDING</u>

### A. <u>Plaintiffs Have Not Alleged Any Concrete Injury Whatsoever</u>

As a threshold matter, Plaintiffs utterly fail to meet their burden to establish that they *personally* have standing. Neither the FAC nor the Opposition identifies a single concrete consequence that either Plaintiff has actually experienced. That deficiency alone is fatal under controlling law. *See Bock v. Washington*, 33 F.4th 1139, 1145 (9th Cir. 2022) (reiterating that plaintiffs lack standing to seek damages when future harm remains unrealized); *see also Kisil v. Illuminate Educ., Inc.*, 2025 WL 2589000, at *1 (9th Cir. Sept. 8, 2025) ("a plaintiff cannot simply assert statutory or common law actions that are supposedly 'injuries in themselves' to obtain standing; they must still demonstrate how the intangible harm from the statutory violation or tortious conduct is sufficiently closely related to a traditionally recognized harm"). *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 964 (C.D. Cal. 2023) (dismissing boilerplate privacy complaint because "[i]nitiating legitimate litigation generally requires a considerable expenditure of time: in order to establish jurisdiction and state a claim for relief, a plaintiff must plead specific facts arising out of a specific encounter with a specific defendant.").

The FAC's laundry list of generic injuries— "invasion of privacy," "lack of trust in communicating with online service providers," "emotional distress," "loss of benefit of the bargain," "diminution of value of the Sensitive Information"—are nothing more than "threadbare recitals" unsupported by any factual content. Not a single paragraph of the FAC plausibly alleges that **anyone** has ever done **anything** with any data allegedly associated with Plaintiffs. Indeed, Plaintiffs are not even complaining about *their* personal information being collected, but "'cid' cookie identifiers," Opp. at 5, an entirely random number generated by Google Analytics

when someone visits a specific website. *See* FAC, ¶ 69 ("CID:1144160502.1744773093").

In fact, there is no allegation that supports the inference that even *Google could* associate this random number with Plaintiff G.V.'s equally random "luckystar####" email address. They also never claim that anyone was embarrassed or harassed, that anyone's data was misused, let alone ***publicized***, or that Plaintiffs suffered any tangible consequence at all. As the Supreme Court held in *TransUnion*, information that no one reads "does not harm anyone." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021); *see also In re Illuminate Educ. Data Sec. Incident Litig.*, No. SACV 22-1164 JVS (ADSx), 2023 WL 3158954, at *3 (C.D. Cal. Apr. 19, 2023) (rejecting injury theories based on speculative future harm where plaintiffs offer conclusory, unsupported allegations that fail to link leaked data to actual harm or show that such harm is real, imminent, and concrete).

The absence of any concrete consequence is particularly striking when compared to cases involving actual personal information that could be easily misused. In *Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776 (9th Cir. 2018), for example, a business printed a consumer's credit card information in violation of FACTA's plain language and specifically involving the plaintiff's own sensitive financial information. Yet the Ninth Circuit held that the plaintiff failed to allege a concrete injury because his theory of "exposure" to identity theft was "too speculative for Article III purposes." *Id.* at 783. Bassett "did not allege that another copy of the receipt existed, that his receipt was lost or stolen, that he was the victim of identity theft, or even that another person apart from his lawyers viewed the receipt." *Id.*; *see also Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078 (E.D. Cal. 2015) (allegations of data injury were entirely speculative). Indeed, if *criminal* theft of sensitive financial information routinely does not give rise to concrete injuries because there is no evidence that such information was *actually misused*, then Plaintiffs' claim that

visiting a free public website with an industry-standard analytics tool caused them cognizable harm is objectively meritless.

An actual concrete injury, properly pled, is not optional, it is a constitutional prerequisite. And Plaintiffs bear the burden of demonstrating it, which they have entirely failed to do.

### B. The Ninth Circuit's Decision in *Popa v. Microsoft* Is Controlling and Dispositive

Plaintiffs' Opposition cites *Popa* for the proposition that "tracking can establish Article III injury where it invades 'sensitive spheres.'" Opp. at 5. But Plaintiffs conspicuously omit what the Ninth Circuit actually held in full: that the plaintiff in *Popa* "ha[d] not met her burden to demonstrate that she has standing" because she did "not explain how the tracking of her interactions with the PSP website caused her to experience any **kind of harm** that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Popa*, 153 F.4th at 791 (emphasis added). And as the court went on to hold, the kind of harm actionable at common law "**requires** that a defendant '**gives publicity**'" to such a private matter. *Id.* (emphasis added). In other words, as multiple Courts of Appeal have held, it's **the publication** – and the ***public ridicule*** associated with such disclosure – that is the ***kind*** of harm that this common law claim actually addresses. *See also Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 425 (4th Cir. 2025) ("public disclosure and private disclosure strike us as **differing in kind**") (emphasis added).

Instead of actually addressing this controlling standard and its application to the facts, or lack thereof, of this case, Plaintiffs rely heavily on *pre-TransUnion* decisions such in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), and the *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), for the proposition that an alleged statutory privacy violation automatically confers standing. But the Ninth Circuit in *Popa* expressly ruled that "even though [the] analysis in *Eichenberger* and *In re Facebook* might have arguably offered at the time

some support for the position that Popa now advances, **that analysis finds no support in *TransUnion*.**" *Popa*, 153 F.3d at 794 (emphasis added). Further, *In re Facebook* is doubly distinguishable here because those claims were expressly predicated on Facebook tracking its users *off Facebook* through various technologies, and only after users were told by Facebook that such "logged-out user data would not be collected." *Id.* at 602. That's hardly the case here where the plaintiffs admittedly agreed to Google's privacy policy that explains the use of its business tools and were admittedly *using Google while logged into their accounts* to reach RedGIFs' website.

Ultimately, under *TransUnion*, a plaintiff must identify a "close historical or common-law analogue for their asserted injury." 594 U.S. at 424. The *Popa* court emphasized that this requires examining "discrete privacy torts (not a general right to privacy)" and evaluating "plaintiffs' claims based on their similarity to the harm protected by" those torts. The Ninth Circuit specifically rejected the "generalized 'invasion-of-privacy' theory" that Plaintiffs advance here, explaining that there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms. *See also Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (holding plaintiff lacked standing because allegations of "turning the anonymous website visitor into the specifically identifiable recipient" was not "remotely similar" to any common law claim).

Plaintiffs do not attempt to explain how visiting a website on the public Internet could possibly result in any harm remotely similar to the "highly offensive" **publications** actionable at common law. There is simply no common law claim that would allow a person to divulge information to a complete stranger and then claim their "privacy" was violated. And that's particularly the case here when Google independently knows what webpages they are visiting. Indeed, *all* of Plaintiffs' alleged activity on the RedGIFs website occurred through their Google Chrome browser, such that there is nothing Google *wouldn't* know already. In fact, that is exactly what the *Calhoun* case makes clear. *See Calhoun v. Google LLC*, 349 F.R.D.

588, 599 (N.D. Cal. 2025) ("Chrome browsing history consists of a list of **all the webpages (URLs) visited**" and this "includes visits to websites that **do not use Google Services**") (emphasis added). In other words, Google would know what webpages a Chrome user is visiting whether a website used Google Analytics *or not*.

Simply put, "how dare you try to understand how people are using your website" is a remarkably meritless complaint, and one that would not be remotely actionable at common law. Ultimately, the only distant common law analogue, public disclosure of private facts, requires that a matter be made public, by communicating it to the public at large. As the Ninth, Third, Fourth, Seventh, Tenth, and Eleventh Circuits have all held, public disclosure and private disclosure are fundamentally **different in kind**. Plaintiffs do not address, let alone distinguish, this incurable deficiency in their theory, and their claims should be dismissed with prejudice because private disclosures to a vendor would never be actionable at common law.

### C. Plaintiffs' "Lost Value" Theory Fails Because These Statutes Were Not Enacted to Compensate Visitors to Free Public Websites

Plaintiffs claim they lost money in the purported value of their personal data. But this theory cannot form the basis for standing here. As the Ninth Circuit held in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017), standing exists only where the alleged violation "present[s] the precise harm and infringe[s] the same privacy interests Congress sought to protect" in enacting the statute. Put differently, for "traceability" to be satisfied, there must be a direct "connection" between the precise harm Congress sought to address and the basis for standing. *Id.* None of the privacy statutes at issue—the ECPA and the VPPA—were enacted to address spurious claims of lost value in personal data by individuals who voluntarily visit a free website on the public Internet.[1]

[1] This is a fundamentally absurd theory that would not be humored in any other context. It's like claiming a mall should *pay you* for shopping there, or traffic engineers using driving data should pay someone driving on a "free" road. Such a

Even if one were to humor this theory, as the court held in *Fernandez*, a plaintiff claiming "deprivation of the value of his personal information" must at minimum allege that he "intended to sell his [information], that he plans to sell it in the future, that he is foreclosed from doing so because of" the defendant's conduct, "or that the [conduct] reduces the value of the [information] he possesses." 127 F. Supp. 3d at 1089. Plaintiffs have alleged none of these things.

### D. There Is No Expectation of Privacy in Metadata Associated with Visiting a Public Website

Plaintiffs further fail to meaningful distinguish the extensive body of authority establishing that there is no reasonable expectation of privacy in metadata associated with visiting a commercial website. As the Fourth Circuit held in *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010), data showing that a defendant's IP address accessed a specific webpage hosting specific video content is not subject to an "objectively reasonable" expectation of privacy, and "'[e]very federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.'" The Ninth Circuit itself has held that even if someone had a subjective expectation of privacy in the data associated with the websites they visit, "it would not be one that society is prepared to recognize as reasonable." *United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008).

Plaintiffs' Opposition acknowledges these cases but attempts to cabin them to "IP addresses" alone. But that misses the point entirely. The information at issue in cases like *VanDyck*, *Forrester*, and *Bynum* allowed the government, without a warrant, to identify a specific person and the specific video content they were viewing on a website. That's because IP addresses as applied to individuals *are personally identifiable information*, just as IP addresses on the other side identify specific

---

claim would not have any foundation under any common law principle. Substituting in a visit to a free website should not change that analysis.

websites. Indeed, the fundamental point of the Third-Party doctrine as applied here is that there can be no reasonable expectation of privacy in information "voluntarily provided" to an online provider. *United States v. Rosenow*, 50 F.4th 715, 728 (9th Cir. 2022) (holding plaintiff had no expectation of privacy in information provided to Facebook and Yahoo, which had "legitimate, independent motivations" to monitor their services, **expressly including content** of material viewed by user). By Plaintiffs' own admission, "[t]he Google Chrome web browser does track users," Opp. at 7, so they cannot legitimately be heard to complain that RedGIFs uses the *same third party* to collect anonymized information to "understand[] how people use the Website." FAC, ¶ 177.

## III. PLAINTIFFS' ECPA CLAIM FAILS AS A MATTER OF LAW

Plaintiffs' ECPA theory has been dealt two additional fatal blows since RedGIFs filed its Motion.[2] In *Caine v. Sturdy Memorial Hospital, Inc.*, the District of Massachusetts dismissed an ECPA claim premised on significantly more serious allegations—that a healthcare provider installed Google Analytics on its website and thereby disclosed users' Protected Health Information regulated by HIPPA to Google, in alleged violation of even Google's own policies. 2026 WL 673483, at *1 (D. Mass. Mar. 10, 2026). Even under those allegations, however, the court held that "the Amended Complaint does not plausibly allege that Sturdy Memorial intercepted communications 'for the purpose of committing [a] criminal or tortious act.'" And because the hospital did not install Google Analytics on its website *for the purpose* "intrud[ing[ on its patients' seclusion or privacy," the ECPA claim therefore failed.

---

[2] Plaintiffs do not even address RedGIFs' argument that these 1980s wiretapping and video cassette tape statutes cannot apply to entirely separate technologies developed decades later. Mot. at 2. Indeed, the ECPA's definition of "electronic communication" expressly excludes "any communication from a tracking device (as defined in section 3117 of this title)." 18 U.S.C. § 2510(12). Section 3117, in turn, defines a "tracking device" as "an electronic or mechanical device **which permits the tracking of the movement of a person** or object." 18 U.S.C. § 3117 (emphasis added). Of course, every modern smartphone and personal computer in existence "permits the tracking of the movement of a person or object."

Similarly, in *Nichols v. PeaceHealth Networks on Demand LLC*, No. 2:25-CV-01831-JHC, 2026 WL 607763, at *2 (W.D. Wash. Mar. 4, 2026), the Western District of Washington dismissed an ECPA claim involving Google Analytics tracking on a healthcare website. The court held that because the defendant was a party to the communication, and the crime-tort exception did not apply, the complaint "fails to plead an 'interception' under ECPA." 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026). As the court explained, "an 'interception' of PHI for the purpose of financial gain is often not enough to trigger the crime-tort exception," because "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Id.*

These decisions are directly on point and confirm what RedGIFs has argued from the outset: using Google Analytics in the ordinary course of business does not give rise to ECPA liability. Indeed, if these healthcare providers, which have an independent obligation under federal law to maintain patient privacy, a duty entirely absent here, this case is a much easier call.

## IV. PLAINTIFFS' VPPA CLAIM FAILS ON THE MERITS

As RedGIFs established, the VPPA's reach is limited to "the kind of information that would readily permit an **ordinary person** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added); *Eichenberger*, 876 F.3d at 985 (same). In determining whether information constitutes PII, courts "look[] to what information a video service provider discloses, not to what the recipient of that information decides to do with it." *Id.*

Plaintiffs' Opposition conspicuously fails to address this standard or demonstrate how any ordinary person could identify which specific video a specific individual watched based on the metadata alleged in the FAC. Indeed, the metadata is right there and the question is simple: who watched what video? Plaintiffs cannot show their work. There is simply no allegation—and there cannot be—that any

ordinary person could look at such a username and a string of cookie identifiers and identify Plaintiffs or any other specific individual. And what video was supposedly watched is still anyone's guess.

For their part, Plaintiffs' reliance on Meta Pixel cases is highly misleading. Opp. at 13. Those cases are all predicated on *any ordinary person* being able to take someone's unique Facebook ID exclusively tied to their profile and enter it into Facebook's publicly available website and find the specific profile. As an initial matter, no ordinary person can use an anonymized Google Analytics CID and do anything with it. Plaintiffs do not allege otherwise. Further, even a Facebook ID cannot be used to identify a specific person unless their Facebook profile both contains *personally identifiable* information *and* is a public profile. *See, e.g.*, *Heerde v. Learfield Commc'ns*, *LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024); *Smith v. Trinity Broad. of Texas, Inc. et al*, No. 8:24-CV-01046-JVS-ADS, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024) (dismissing VPPA complaint because plaintiff "does not indicate that her profile is public and contains any identifying information or photos. Rather than allege what is on her personal Facebook profile, Smith merely states that the FID is PII…"). Simply put, Plaintiffs never allege any facts even suggesting *Google* could identify them.

While this alone is fatal, Plaintiffs independently fail to rebut that RedGIFs does not meet the definition of a "video tape service provider." 18 U.S.C. § 2710(a)(4) (a covered provider needs to be "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials"). As an initial matter, RedGIFs does not rent or sell anything on its entirely free website, and Plaintiffs leave it entirely unexplained how RedGIFs could be affecting interstate or foreign *commerce* as a result. Nor does RedGIFs *deliver* anything, that would be Plaintiffs' ISP here under the plain and ordinary meaning of that term. Just as fatally, RedGIFs would have to be in the business of offering for purchase or (paid) subscription prerecorded cassette

tapes or *similar* audio-visual *materials*, which would necessarily have to be something *tangible*. *Banks v. CoStar Realty Information Inc.*, 2025 WL 2959228, at *4 (E.D. Mo. Oct. 20, 2025) (the VPPA and its "statutory context demonstrate that 'audio visual materials' must be stored in a physical format to be 'similar' to 'prerecorded video cassette tapes.'").

Plaintiffs also fail to address the VPPA's express exemption for disclosures "incident to the ordinary course of business." 18 U.S.C. § 2710(b)(2)(E). Congress defined "ordinary course of business" to include "request processing, and the transfer of ownership," and the legislative history makes clear that Congress intended this exemption to "allow[] disclosure to permit video tape service providers to use … **computer services**, **and similar companies for marketing to their customers**." S. Rep. No. 100-599, at 14 (1988). RedGIFs' use of the free version of Google Analytics to monitor general website traffic, detect potential threats, and improve site functionality is the very definition of ordinary business use. Accordingly, Plaintiffs' VPPA claim should be dismissed with prejudice.

## V. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiffs do not contest that this Court's jurisdiction over their state law claims (invasion of privacy, negligence, breach of implied contract, unjust enrichment, and New York General Business Law § 349) is based entirely on supplemental jurisdiction. Once the federal claims are dismissed, as they must be, this Court lacks a jurisdictional basis to retain this suit for the state law claims and should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). As the court held just days ago in *Caine*, "if the federal claims are dismissed before trial … the state claims should be dismissed as well."

But even on the "merits," Plaintiffs' state law claims independently fail. Plaintiffs have not alleged **any actual damages** required for each of these claims. They have not suffered any monetary loss, they (possibly) accessed a free website to manufacture a claim. Their invasion of privacy claim requires conduct

that would be "highly offensive to a reasonable person," yet there is nothing offensive about a website using the most widely deployed analytics tool in the world, Google Analytics, for its own internal business purposes. Their breach of implied contract claim is contradicted by the express terms of RedGIFs' Privacy Policy, which G.V. agreed to. And their New York General Business Law § 349 claim requires that Plaintiffs "suffered injury as a result of the allegedly deceptive act or practice," which they have not alleged with *any* factual specificity, let alone the particularity required for a claim sounding in fraud.

In sum, Plaintiffs have not suffered any actual damage or injury of any kind. They cannot transform the act of visiting a free, public website while logged into their own Google accounts, using Google's own Chrome browser, into a cognizable legal claim under any theory when Google gets the same information they already disclosed.

## VI. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' First Amended Complaint with prejudice. Their Opposition does not address the controlling authority, does not establish any concrete injury, and does not demonstrate how any recognized legal theory applies to the routine use of Google Analytics on a public website. The Court should not assume the role of Congress and expand the reach of 1980s wiretapping and video rental statutes to encompass modern website analytics—only Congress can do that.

Respectfully submitted,

Dated: March 17, 2026

**ARENTFOX SCHIFF**

By: /s/ Susanne Boniadi
SUSANNE BONIADI
ADAM D. BOWSER (*pro hac vice*)
Attorneys for Defendant
VERGIL SERVICES, INC.

**LOCAL RULE L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Vergil Services, Inc. certifies that this brief contains 3,967 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 17, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: *<u>/s/ Susanne Boniadi</u>*
SUSANNE BONIADI
Attorneys for Defendant
VERGIL SERVICES, INC.