LYNN R. FIORENTINO (SBN 226691)
lynn.fiorentino@afslaw.com
**ARENTFOX SCHIFF LLP**
44 Montgomery Street, 38th Floor
San Francisco, CA 94104
Telephone: 415.757.5500
Facsimile: 415.757.5501

ADAM D. BOWSER (*pro hac vice*)
adam.bowser@afslaw.com
**ARENTFOX SCHIFF LLP**
717 K Street NW
Washington, DC 20006
Telephone: 202.857.6000
Facsimile: 202.857.6395

Attorneys for Defendant
VERGIL SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

L.O., *et al*, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VERGIL SERVICES, INC. D/B/A REDGIFS;

Defendant.

Case No. 2:25-cv-05102-PD

**DEFENDANT VERGIL SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SAC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: November 6, 2026
Time: 10:00 a.m.
Courtroom: Courtroom 580, 5th Floor
Judge: Hon. Patricia Donahue

Complaint Served: Aug. 13, 2025
SAC: Sept. 1, 2026

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on November 13, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Patricia Donahue, located at the Edward R. Roybal Federal Building and United States Courthouse, 350 W. 1st Street, Los Angeles Courtroom 580, 5th Floor, 255 East Temple Street Los Angeles, CA 90012-3332, Defendant Vergil Services, Inc. d/b/a RedGIFs ("RedGIFs") will and hereby does move the Court entry of an order dismissing Defendant with prejudice from this action (the "Motion").

This Motion is made pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, on the following grounds: (1) Plaintiffs did not, and cannot, allege any injury required for standing by merely visiting a public website, and having routine metadata collected by a technology vendor (Google) – one that Plaintiffs are independently utilizing to access the website, and (2) Plaintiffs wholly conclusory allegations fail to otherwise support their numerous claims, where Plaintiffs do not expressly plead themselves out of court by alleging that RedGIFs utilizes Google Analytics in the ordinary course of business.

Defendant's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the oral arguments of counsel, and any such other matters as the Court may consider.[1]

Pursuant to Civil Local Rule 7-3, counsel for the Defendant met and conferred with Plaintiffs' counsel via videoconference and telephone, multiple times, including, but not limited to, September 24, 2025, November 25, 2025, January 13, 2026, and

[1] To be clear, the Court should only address these arguments as to the Plaintiffs other than L.O. if it finds – which it should not – that Plaintiffs are not subject to an agreement to arbitrate with RedGIFs. That is, Defendant is addressing Plaintiffs' failure to state a claim expressly without waiving its primary argument that an arbitrator, and not the Court, should be resolving the merits, or lack thereof, of Plaintiffs' claims. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 921 (N.D. Cal. 2024) (party does not waive right to arbitrate because it is "required to present all arguments – jurisdictional and merit-based – under Rule 12(g) or risk waiving Rule 12 defenses.").

March 6, 2026 in order to potentially resolve this dispute without Court intervention. The Parties were unable to reach a resolution.

Dated: September 15, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: */s/Lynn R. Fiorentino*
LYNN R. FIORENTINO
ADAM BOWSER
Attorneys for Defendant
VERGIL SERVICES, INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 10
II. PLAINTIFFS' BOILERPLATE ALLEGATIONS ..... 11
III. PLAINTIFFS HAVE NOT ALLEGED ANY INJURY-IN-FACT AND LACK STANDING ..... 12
A. Legal Standard ..... 12
B. Plaintiffs Have Not Suffered an Injury-In-Fact Close to a Common Law Analogue ..... 12
1. Business-to-Business Disclosures Do Not Cause Any Concrete "Privacy" Harms Required for Standing ..... 13
2. Plaintiffs Do Not Have a Reasonable Expectation of Privacy in Their Activity on a Public Website ..... 17
IV. PLAINTIFFS FAIL TO STATE A CLAIM ..... 20
A. Standard of Review ..... 20
B. Plaintiffs' ECPA And Wisconsin Wiretapping Act Claims Fail as a Matter of Law ..... 21
C. The VPPA Claim Fails Because No Ordinary Person Can Decipher the Metadata at Issue ..... 23
D. Plaintiffs' Remaining Claims All Lack Merit ..... 26
1. Intrusion Upon Seclusion ..... 26
2. Negligence ..... 27
3. Breach of Implied Contract ..... 28
4. Unjust Enrichment ..... 28
5. N.Y. Gen. Bus. Law § 349 ..... 28
6. CIPA Section 631 ..... 28
7. Washington Consumer Protection Act ..... 29
V. CONCLUSION ..... 30

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Anderson v. Friendly Auto Ventures, Inc.*, No. 5:22-CV-545 (MAD/ML), 2023 WL 2048256 (N.D.N.Y. Feb. 15, 2023) ........ 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 11, 21

*Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 169 (2024) ........ 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 11, 21

*Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 22

*Brown v. USA Taekwondo*, 11 Cal. 5th 204 (2021) ........ 28

*Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997) ........ 14

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) ........ 11

*Caine v. Sturdy Memorial Hospital, Inc.*, 2026 WL 673483 (D. Mass. Mar. 10, 2026) ........ 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 7805628 (N.D. Cal. Aug. 4, 2016), *rev'd and remanded on other grounds*, 720 F. App'x 835 (9th Cir. 2017) ........ 14

*Christopherson v. Cinema Entertainment Corp.*, 161 F.4th 525 (8th Cir. 2025) ........ 25

*Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987 (2020) ........ 28

*Cook v. GameStop Inc.*, 148 F.4th 153 (3rd Cir. 2025) ........ 27

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019) .... 12

*CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) .... 19

*D.B. v. Bellesa Enterprises US, Inc.*, 2026 WL 2058427 (C.D. Cal. July 14, 2026) .... 24, 25

*Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .... 19

*Dawidzik v. Tesla Inc.*, Civ. No. 25-1982-KK-SPx, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .... 13, 27

*Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) .... 26

*Eichenberger v. ESPN, Inc.*, 876 F. 979 (9th Cir. 2017) .... 16, 23, 24

*Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078 (E.D. Cal. 2015) .... 16

*Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045 (C.D. Cal. 2025) .... 20

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 .... 27

*Goldstein v. Union Nat. Bank*, 213 S.W. 584 (Tex. 1919) .... 14

*In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) (Koh, J.) .... 22

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778 (1986) .... 30

*Hill v. NCAA* (1994), 7 Cal.4th 1 .... 27

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) .......... 15

*Hooker v. Wanigas Credit Union*,
835 F. App'x 110 (6th Cir. 2021) .......... 14

*Hughes v. NFL*,
2025 WL 1720295 (2d Cir. June 20, 2025) .......... 25

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
48 F.4th 1236 (11th Cir. 2022) (*en banc*) .......... 15

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024) .......... 19

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 19

*Lawrence v. Texas*,
539 U.S. 558 (2003) .......... 18

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023) .......... 11

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 25

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 23

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023) .......... 15

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) .......... 28

*Nichols v. PeaceHealth Networks on Demand LLC*,
No. 2:25-CV-01831-JHC, 2026 WL 607763 (W.D. Wash. Mar. 4, 2026) .......... 22

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 24

*People v. Nakai*
(2010) 183 Cal.App.4th 499 .......... 18

*People v. Stipo*
(2011) 195 Cal.App.4th 664 .......... 17

*Perez v. Romantix Online, Inc.*,
No. 25-CV-02465-NW, 2026 WL 1802589 (N.D. Cal. June 23, 2026) .......... 19, 20

*Phillips v. U.S. Customs and Border Protection*,
74 F.4th 986 (9th Cir. 2023) .......... 16

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 14, 15, 16, 17

*Powell v. Union Pac. R. Co.*,
864 F. Supp. 2d 949 (E.D. Cal. 2012) .......... 29

*Randall v. Univ. of the Pac.*,
No. 5:20-cv-03196, 2022 WL 1720085 (N.D. Cal. May 28, 2022) .......... 28

*Ribas v. Clark*
(1985) 38 Cal.3d 355 .......... 29

*Rodriguez v. Brushfire Recs.*,
No. 2:25-CV-09797, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 19

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 22

*Rogers v. Ulrich*
(1975) 52 Cal. App. 3d 894 .......... 29

S. Rep. No. 100-599, at 14 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-12 .......... 26

*Sanzone v. Mercy Health*,
954 F.3d 1031 (8th Cir. 2020) .......... 26

*Shields v. Pro. Bureau of Collections of Md., Inc.*,
55 F.4th 823 (10th Cir. 2022) .......... 15

*Smith v. Maryland*,
442 U.S. 735 (1979) ............................................................ 17

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ............................................................ 24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................ 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ............................................................ 21

*Szot v. Allstate Ins. Co.*,
161 F. Supp. 2d 596 (D. Md. 2001) ............................................................ 14

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) ............................................................ 20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................ 12, 13, 16

*United States v. Bynum*,
604 F.3d 161 (4th Cir. 2010) ............................................................ 18

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ............................................................ 17

*United States v. Perrine*,
518 F.3d 1196, 1204 (10th Cir. 2008) ............................................................ 18

*United States v. VanDyck*,
776 F. App'x 495 (9th Cir. 2019) ............................................................ 17

*United States v. Weast*,
811 F.3d 743 (5th Cir. 2016) ............................................................ 18

*Vizcarra v. Michaels Stores, Inc.*,
710 F. Supp. 3d 718 (N.D. Cal. 2024) ............................................................ 28

*Warden v. Kahn*
(1979) 99 Cal. App. 3d 805 ............................................................ 29

**Statutes**


18 U.S.C. § 2510 ........ 21

18 U.S.C. § 2510(5)(a) ........ 22

18 U.S.C. § 2510(12)(C) ........ 22

18 U.S.C. § 2710 ........ 23, 25

18 U.S.C. § 3117 ........ 23

18 U.S.C. § 3117(b) ........ 23

47 U.S.C. § 551 ........ 26

California Penal Code Section 637.2(a) ........ 29

ECPA ........ 21, 22, 23

Fed. R. of Civ. Proc. 12(b)(6) ........ 21

N.Y. Gen. Bus. Law § 349 ........ 28, 30

Privacy Act ........ 18, 19

Washington Consumer Protection Act ........ 29, 30

Wisconsin Stat. Ann. § 968.31(2)(c) ........ 21

Wisconsin Wiretapping Act ........ 21


**Other Authorities**


Fourth Amendment ........ 19

Cable Act ........ 26

Electronic Communications Privacy Act ........ 20, 21, 23

Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977) ........ 14

Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006 ........ 14

U.S. Const. amend. IV ........ 18

U.S. Constitution Article III ........................................................................ 12

Wiretap Act........................................................................................................ 22

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs devote more than sixty pages to the fact pattern depicted in Paragraph 100 of the SAC: while logged into their Google accounts, they used Google Chrome to visit RedGIFs' website, which utilized Google Analytics to collect various metadata about how visitors are using RedGIFs' website. One does not need to be a computer science expert to understand that Plaintiffs are effectively complaining about a three-person game of whisper-down-the-alley. That is, Person A (Plaintiff) tells Person B (Google) to tell Person C (RedGIFs) to send information back in the opposite direction. But would anyone playing this game in the starting position claim that their "privacy" was violated when Person C sends the same information back to Person B? Of course not. Person B already knows – because *Person A* told them! No reasonable person could conclude that this constitutes a violation of any cognizable privacy interest.

All of Plaintiffs' claims here are predicated on this fundamental absurdity. If Plaintiffs even came onto the RedGIFs website, Google would know exactly what they did – because they were admittedly logged into their Google accounts "[o]n every occasion." *See*, *e.g.*, SAC ¶¶ 20, 25. Thus, even ignoring that Plaintiffs necessarily agreed to Google's Policies governing its use of their data before they put a virtual foot on RedGIFs' website, *id.* ¶ 71, Plaintiffs could not have a reasonable expectation of privacy as a matter of law – which defeats all of their claims, among many other incurable deficiencies detailed below.

Before getting to the merits, however, the Court must confront that it lacks subject matter jurisdiction over Plaintiffs' claims. The Ninth Circuit has clearly ruled that there is no reasonable expectation of privacy, or possible injury, when an individual visits a website and routine metadata is collected and shared – even with *undisclosed* third parties (unlike here).

## II. PLAINTIFFS' BOILERPLATE ALLEGATIONS

To quote Judge Bernal from a comparable digital slip-and-fall case, "whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. This case reached that point, and then blew past it." *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 964 (C.D. Cal. 2023). That perfectly sums up this case. Despite having now had three opportunities to plead a viable complaint—and despite adding six new plaintiffs in the process—Plaintiffs have done nothing to cure the fundamental deficiencies that pervaded the FAC. The SAC adds plaintiffs from Iowa, Washington, Colorado, Illinois, Wisconsin, and Texas, bringing the total to eight. But each new plaintiff's allegations are cookie-cutter copies: conclusory, generic, and devoid of the specific factual allegations required to survive a motion to dismiss. *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (dismissing website "privacy" case because plaintiff did not allege "a single specific fact" and thus "the allegation is a mere conclusion disregarded under *Twombly* and *Iqbal*."). Here, adding bodies does not add substance.

Indeed, the SAC's most glaring deficiencies remain the same ones identified in Defendant's original motion: Not a single Plaintiff has alleged a specific fact even suggesting that RedGIFs used the metadata at issue for advertising purposes, which would be easy to do if it ever happened. Plaintiffs never allege any information suggesting that *they* supplied *any personally identifiable* information to RedGIFs. They do not allege that they paid any money to RedGIFs, so it is unclear how RedGIFs could "retain the money belonging to Plaintiffs" they never paid. *Id.* ¶ 177. Nor is there any remotely well-pled allegation that *any entity* – even Google – has used, let alone misused, Plaintiffs' data. In short, there is not a single well-pled allegation that Plaintiffs have suffered *any consequences* from allegedly visiting a free website on the public Internet.

## III. PLAINTIFFS HAVE NOT ALLEGED ANY INJURY-IN-FACT AND LACK STANDING

### A. Legal Standard

To have standing under Article III of the U.S. Constitution, Plaintiffs must allege they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet the first requirement,[2] they must allege they have suffered a "concrete—that is, real, and not abstract" injury that has a "close historical or common-law analogue" "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021) (internal quotation marks omitted). Moreover, an injury—if there is one—is concrete only if the "risk of harm is sufficiently imminent and substantial." *Id.* at 435.

"For standing purposes . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed by* a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 426-27.

### B. Plaintiffs Have Not Suffered an Injury-In-Fact Close to a Common Law Analogue

Here, a business-to-business disclosure of metadata–at best, a *private*

[2] This case would also fail to satisfy the traceability requirement because Google would independently know what Plaintiffs are doing on the RedGIFs website because of their use of Google services to access and view the website. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019).

disclosure of metadata collected over the public Internet–is simply different in kind than any claim actionable at common law. Indeed, business-to-business disclosures have never been actionable at common law for multiple reasons. Separately, Plaintiffs do not, because they cannot, allege that they had a reasonable expectation of privacy in metadata associated with their visit to a commercial website on the public Internet being disclosed to a service provider, the *same service provider* (Google), Plaintiffs used to access the website.

Nor do Plaintiffs plead any non-conclusory allegations of particularized and non-speculative injury. Rather, Plaintiffs conclusorily assert generic violations of 1980s privacy statutes applicable to telephone wiretapping and prerecorded video cassette tapes – as they are visiting a commercial website on the public Internet while logged into their Google accounts. This case does not remotely involve a concrete injury that should be clogging the Court's docket, and should be dismissed solely for lack of standing.

### 1. Business-to-Business Disclosures Do Not Cause Any Concrete "Privacy" Harms Required for Standing

On standing, the Supreme Court's precedent makes clear that intangible harms don't count as concrete if they lack an element "essential to liability" at common law. *TransUnion*, 594 U.S. at 434. At common law, the only *distant* tort Plaintiffs *should*[3] be able to point to here is *public* disclosure of private facts. But critically, American tort law didn't allow plaintiffs to sue for disclosures of their personal information unless the disclosures were *both* outrageous *and* made to the public at large, rather

[3] Plaintiffs claim for intrusion upon seclusion is objectively meritless because Plaintiffs were allegedly watching pornography on the *public* Internet *on RedGIFs' website.* RedGIFs cannot have "intentionally interfered" with the operation of its own website, nor can Plaintiffs have an objectively reasonable expectation of privacy. *See Dawidzik v. Tesla Inc.*, Civ. No. 25-1982-KK-SPx, 2025 WL 3786963, *4 (C.D. Cal. Dec. 29, 2025) (analyzing elements of intrusion upon seclusion claim and holding plaintiff lacked standing for comparable website privacy claim because he had no reasonable expectation of privacy that personally identifiable metadata associated with his website visit *wouldn't* be collected and shared).

than to a few individuals. *See* Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977).

Indeed, it is hornbook law that companies can disclose information, even tortious information, to an employee, agent, or independent contractor if done as part of the company's normal business operations. *See Szot v. Allstate Ins. Co.*, 161 F. Supp. 2d 596, 606 (D. Md. 2001) (dismissing defamation claim because there is qualified privilege for business to communicate defamatory content without liability); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 323 (5th Cir. 1997) (recognizing that company has qualified privilege to communicate even misinformation to contractor). And this qualified privilege between a company and independent contractors simply extends even older common law agency principles. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 7805628, at *14 (N.D. Cal. Aug. 4, 2016) (the agent "stands in the shoes of the principal on matters within the scope of the agency"), *rev'd and remanded on other grounds*, 720 F. App'x 835 (9th Cir. 2017); *Goldstein v. Union Nat. Bank*, 213 S.W. 584, 589 (Tex. 1919) ("There is a full and complete merger of identity … of principal and agent."); *Hooker v. Wanigas Credit Union*, 835 F. App'x 110, 112 (6th Cir. 2021) ("Agents stand in the place of their principals.") (citing Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006)). In short, providing information to vendors like Google to assist RedGIFs' business, which is exactly what Plaintiffs are alleging, would not be an actionable "harm" at all under the common law for this reason alone.

Applying these principles, and in the lead-up to the Ninth Circuit's holding in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025), the Third, Seventh, Tenth, and Eleventh Circuits all held that consumers cannot bring claims in federal court challenging private, business-to-business disclosures. *See Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 145 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 169 (2024) ("the harm" recognized by the public disclosure "tort is 'the humiliation that accompanies the disclosure of sensitive or scandalizing private information to **public**

**scrutiny**.'"); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 733 (7th Cir. 2023); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (plaintiff's "alleged harm"—"that one private entity (and, presumably, some of its employees)" learned her private information—was not sufficiently similar to any harm recognized at common law); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (public disclosure tort does not reach "communications that are private rather than public.") (*en banc*). Although these courts used different methodologies, they all reached the same conclusion: that business-to-business disclosures are fundamentally unlike the public disclosures actionable at common law, and thus do not cause *the type of harm* that Article III requires. The Fourth Circuit also issued a case directly on point last October. *See Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 425 (4th Cir. 2025) ("public disclosure and private disclosure strike us as **differing in kind**") (emphasis added).

Against this backdrop, the Court of Appeals weighed in last August in *Popa*, a comparable "website (non-)invasion of privacy" case. The court began by analyzing its sister courts' holdings above, and while it did not specifically adopt one approach or the other, it found that Popa could not satisfy either test. *Id.* at 791 ("these approaches all share an important feature: they look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort.") (emphasis in original). The court rejected that website tracking would be similar to "an intentional interference with his interest in solitude or seclusion," as "the monitoring of Popa's interactions with PSP's website seems most similar to a store clerk's observing shoppers." *Id.* And of course, a business monitoring *its own store* would not be remotely actionable at common law. The court then went on to also reject that website tracking could be similar to "a claim for public disclosure of private facts" because that tort "requires that a defendant '**gives publicity**' to a matter." *Id.* In other words, a *private* disclosure would not be actionable at common law because it is *different in kind*.

In fact, notable here, the court specifically called into question the validity of its pre-*TransUnion* VPPA decision, *Eichenberger v. ESPN, Inc.*, 876 F. 979 (9th Cir. 2017). *See Popa,* 153 F.4th at 794 ("But even though our analysis in *Eichenberger* … might have arguably offered at the time some support for the position that Popa now advances, that analysis finds no support in *TransUnion*" and "we might analyze [the VPPA] differently today, especially after the Supreme Court's decision in *TransUnion*."). Ultimately, the court held that a plaintiff claiming her privacy was violated by a website operator sharing metadata with a vendor did not experience a harm "remotely similar to those protected by" any common law analogue. *Id.* at 792.

That is even more true here in this game of three-person whisper-down-the-alley alleging entirely speculative *theories* of harm, rather than any specific factual allegations. Indeed, comparing these template digital slip-and-fall suits to data breach cases is instructive. Even where criminal hackers steal personal information ripe for abuse, like social security numbers and credit card data, such cases are still routinely dismissed because possible injury is too speculative. *See*, *e.g.*, *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1087–88 (E.D. Cal. 2015). And as the Court of Appeals held more recently in *Phillips v. U.S. Customs and Border Protection*, 74 F.4th 986, 995 (9th Cir. 2023), the retention of records, even allegedly illegally obtained ones, "does not constitute a concrete injury" unless the plaintiff demonstrates that retention gives rise to "a tangible harm or material risk of future tangible harm." The court emphasized that plaintiffs must show something "beyond retention alone" and cannot rely on speculative future misuse. *Id.* Here, the SAC adds plaintiffs who allegedly registered with RedGIFs over five years ago, **and they still cannot identify a single, specific consequence of note**.

There can be no question here that Plaintiffs' complete inability to allege anything other than formulaic recitations of entirely speculative harms is a feature, not a bug. Ultimately, there is no allegation that any member of the public learned anything about any Plaintiff in connection with their alleged visits to the website, and

that alone is fatal to Plaintiffs under *Popa*.

**2. Plaintiffs Do Not Have a Reasonable Expectation of Privacy in Their Activity on a Public Website**

Grounded in the Third-Party Doctrine,[4] there is a distinct strain of standing authority holding that there can be no reasonable expectation that metadata collected when visiting a commercial website is *not* being shared with third parties. That's because when one accesses a website, personally identifiable metadata like IP addresses, browser activity and webpages viewed are inherently transmitted not only to the website operator, but numerous third parties along the way – such as Google if one is using the Google Chrome browser (like this case), your ISP, and the numerous other service providers like Amazon Web Services that make up the public Internet.

Based on this, both federal and state courts routinely and consistently hold that information concerning a person's website activity is simply not subject to a legitimate privacy expectation – including specifically in the context of the *pornographic* videos one watches over the Internet. *See United States v. VanDyck*, 776 F. App'x 495, 496 (9th Cir. 2019) (refusing to suppress evidence of child pornography viewed over the Internet because "users have **no expectation of privacy in the IP addresses of the websites they visit**") (emphasis added); *see also United States v. Forrester*, 512 F.3d 500, 509 (9th Cir. 2008) (holding that even if someone had a *subjective* expectation of privacy in the data associated with their website activity, "it would not be one that society is prepared to recognize as reasonable"); *People v. Stipo* (2011) 195 Cal.App.4th 664, 668–69 (holding that "e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit"); *People v. Nakai* (2010) 183 Cal.App.4th 499, 515 (case involving person-to-person sexual chat

[4] *See, e.g.*, *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (holding no legitimate expectation of privacy in data turned over to third party telephone company).

conversations under the California Invasion of Privacy Act, and affirming that "no person with knowledge or awareness of the technology . . . could have any possible expectation of privacy" in internet communications).[5]

Similarly, in *United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010), the Fourth Circuit held that data showing that the defendant's IP address used to access a specific website where "uploaded images and video" were hosted would not be subject to an "objectively reasonable" expectation of privacy. *Id.* at 164. "Indeed, '**[e]very federal court to address this issue** has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.'" *Id.* (emphasis added) (citing *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008) (collecting cases)); *see also United States v. Weast*, 811 F.3d 743, 747 (5th Cir. 2016) (same).

Here, it bears emphasizing that the information at issue in these cases allowed the government – without a warrant, and as a complete stranger – to identify a specific person *and* the specific (illegal) *pornographic video* content they were viewing on a website. And it should be an obvious point that our Constitutional framework is built around protecting citizens ***first and foremost from government*** invasions of privacy. *See* U.S. Const. amend. IV. If it's uniformly held that there is no reasonable expectation of privacy that could prevent the federal government from finding out exactly what videos someone is watching on the Internet (and then locking them up for life), then it is that much more unreasonable to claim that there's a legitimate invasion of privacy here.

Indeed, Plaintiffs here were allegedly logged into their Google accounts after they necessarily accepted Google Terms and Privacy Policy,[6] which Plaintiffs

---

[5] Plaintiffs' SAC still leads with the entirely inapt analogy to *Lawrence v. Texas*, 539 U.S. 558 (2003) – which involved police officers kicking in the door of a private residence of two consenting adults engaged in sexual conduct. It is absurd to imply that a website on the public Internet, even a pornographic one, is "the most private of places." SAC ¶ 1.

[6] *See*, e.g., https://policies.google.com/privacy?hl=en-US (Google expressly informs its users that they collect "Chrome browsing history you've synced with your

expressly incorporate into their Complaint. SAC ¶ 71. Plaintiffs further were using Google Chrome to visit the RedGIFs' website on the public Internet with its own privacy policy, and they still claim to be shocked when Google obtains metadata about their activity. Again, ***while they are using Google services to visit RedGIFs***. If "every federal court" has held it is objectively unreasonable to have an expectation of privacy that the government cannot find out what videos someone is watching on the Internet, using your personally identifiable metadata to do so, then it should be objectively absurd for Plaintiffs in this case with Google as the **disclosed go-between**.

Courts "consistently extend[] this [Fourth Amendment] reasoning to alleged injuries to privacy in the civil context in analyzing whether there is an injury under Article III." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179-80 (N.D. Cal. 2025) (collecting cases);[7] *see also Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (dismissing California Invasion of Privacy Act claim and holding "Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data"); *see also Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025). And directly on point here, in *Perez v. Romantix Online, Inc.*, No. 25-CV-02465-NW, 2026 WL 1802589, at *2 (N.D. Cal. June 23, 2026), the court dismissed claims against an online adult retailer, holding that the plaintiff "points to no controlling authority that the mere act of shopping online, **even for intimate products**, creates a reasonable expectation of privacy." *Id.* (emphasis added). If browsing an online adult retailer does not give rise to a reasonable expectation of

Google Account" and they further inform users how to "[m]anage information that websites and apps using Google services, **like Google Analytics**, may share with Google when you visit or interact with their services.") (emphasis added).

[7] *See also Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, *1-2 (9th Cir. Dec. 17, 2024); *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024) ("We do so not because we think she experienced only a slight invasion of her privacy, . . . but because her allegations do not plausibly suggest that she suffered **any such invasion at all**.") (emphasis added).

privacy, visiting RedGIFs' free website does not either.

At bottom, the "internet is not a place where users have a reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024), *aff'd*, No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). This case is no different. Plaintiffs cannot have a reasonable expectation of privacy as a matter of law and all of their claims must fail for lack of standing as a result. The Amended Complaint should be dismissed with prejudice.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM

The lack of any well-pled allegation of injury not only requires dismissal of this case on standing grounds, but it is also fatal to Plaintiffs' claims on the "merits" – particularly their common law claims. Indeed, it is hornbook tort and contract law that without damages or injury, there can be no claim on this basis alone.[8]

For the avoidance of doubt, however, RedGIFs first establishes below that Plaintiffs plead themselves out of Court with respect to their two federal law claims under the ECPA and the VPPA. Without these two claims providing the Court federal question jurisdiction, and with no well-pled allegations that Plaintiffs could possibly be entitled to damages to satisfy the amount-in-controversy requirements, the Court can and should dismiss Plaintiffs' otherwise meritless state law claims for lack of jurisdiction.

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

[8] *See, e.g., Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1082 (C.D. Cal. 2025) ("The elements of a negligence tort cause of action are duty, breach, causation and damages.");

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept well-pleaded factual allegations as true, it "need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The *Twombly*/*Iqbal* standard demands more than the SAC provides. As the court recently held in *CuriosityStream,* 815 F. Supp. 3d at 850: "To sufficiently allege an injury in fact and survive a motion to dismiss, a plaintiff must identify **the specific personal information *she disclosed*** that implicates a protectable private interest." (emphasis added).

### B. Plaintiffs' ECPA And Wisconsin Wiretapping Act[9] Claims Fail as a Matter of Law

The ECPA is a one-party consent statute that imposes liability only where a defendant "intercepts" an electronic communication through the use of a device **outside the ordinary course of its business**. 18 U.S.C. § 2510(5)(a). A business's use of the most widely used analytics tool for routine operational purposes is categorically excluded from the definition of an "intercepting" device. Here, far from plausibly alleging that RedGIFs used Google's tools for an improper purpose, the SAC alleges that RedGIFs uses Google Analytics "to improve their content and keep it free" and for "customer analytics." SAC ¶¶ 70–71. A company's use of the most common analytics platform on the Internet to monitor and improve its own website is the paradigmatic ordinary-course-of-business purpose. 18 U.S.C. § 2510(5)(a).

Indeed, in order to possibly attempt to plead the (inapplicable) crime-tort exception, Plaintiffs must allege sufficient actual facts – not legal conclusions as here

[9] Wisconsin state laws mirrors the relevant provisions of the ECPA. *See* Wisconsin Stat. Ann. § 968.31(2)(c) (one-party consent requirement) and § 968.27(12)(d) (tracking device exclusion).

– that plausibly establish that either the "**primary motivation** or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (quotation omitted). In fact, several decisions from California federal courts have reasoned "that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *Id.*; *see also Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (finding the exception inapplicable where Google's alleged interceptions occurred with the consent of application developers and were financially motivated); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 (N.D. Cal. Mar. 18, 2014) (Koh, J.) (same); *Caine v. Sturdy Memorial Hospital, Inc.*, 2026 WL 673483, at *1 (D. Mass. Mar. 10, 2026) dismissing an ECPA claim premised on healthcare provider using Google Analytics on its website in alleged violation of HIPPA to Google and even Google's own policies, because collection was still in ordinary course of hospital's business); *Nichols v. PeaceHealth Networks on Demand LLC*, No. 2:25-CV-01831-JHC, 2026 WL 607763, at *2 (W.D. Wash. Mar. 4, 2026). On this basis alone, Plaintiffs have pled themselves out of court.

The ECPA also expressly excludes from the definition of "electronic communication" "[a]ny communication from a tracking device." 18 U.S.C. § 2510(12)(C). A "tracking device" is defined as "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b). Plaintiffs have independently pled themselves out of court under this exclusion as well: the SAC expressly alleges that the purported tracking tools collect information about "the physical location of the device" of the visitor and their "relocation." SAC ¶¶ 74, 89. By their own allegations, Plaintiffs describe a "tracking device" under 18 U.S.C. § 3117—and *any* communication from such a device categorically falls outside the scope of the ECPA. Of course, there is not a computer,

smartphone, or website that does *not* "permit[] the tracking of the movement of a person or object," and the Supreme Court consistently reminds lower courts not to rewrite statutes to keep up with newer technologies. That is Congress's job. The plain language of the statute thus excludes "any" communication from a tracking device from the scope of the law, and that's exactly what Plaintiffs are alleging here.

Accordingly, Plaintiffs' ECPA claim is meritless for multiple reasons. The only allegations they do include, conclusory as they are, can only support the inference that RedGIFs utilizes Google Analytics for its ordinary business operations, and no covered communications could possibly be "intercepted" because of the tracking device exception. This claim should be dismissed with prejudice.

### C. <u>The VPPA Claim Fails Because No Ordinary Person Can Decipher the Metadata at Issue</u>

If Plaintiffs' ECPA claim is meritless, their VPPA borders on the objectively frivolous under controlling Ninth Circuit precedent. To state such a claim, Plaintiffs must adequately allege that RedGIFs (1) is a video tape service provider; (2) that knowingly disclosed to any person; (3) personally identifiable information ("PII"); (4) concerning any consumer. *See* 18 U.S.C. § 2710(b)(1); *see also Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

Plaintiffs' claim here fails for multiple reasons. The most straightforward is that the Court of Appeals ruled in *Eichenberger* that to qualify as PII protected under the statute, it must be "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger*, 876 F.3d at 985. Put differently, information is not PII merely because a sophisticated third party like Google can combine the data, such as unique identifiers, to possibly identify a consumer. *Id.* at 985-86 (courts "look[] to what information a video service provider discloses, **not to what the recipient** of that information decides to do with it."); *see also Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 53 (2d Cir. 2025) (noting that Congress refused to update the "definition of personally identifiable information,

even in the face of testimony asking for an expansion of the definition to include IP addresses"); *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 288 (3d Cir. 2016).

Here, the Court can easily apply this controlling standard against Plaintiffs' screenshot manufactured for the purposes of this litigation. SAC ¶ 100-102. That is, no "ordinary person" can review this metadata and ascertain what specific person is watching what specific video. Indeed, if one thinks they can even narrow it down to one of the thousands of "Sam Smiths," they'd be wrong – because this activity belongs to Mr. Singh. And what specific video he was watching is anyone's guess. Of course, Plaintiffs never allege that *they* provided any PII *to even Google* – let alone to RedGIFs. This alone is dispositive.

Indeed, Judge Kronstadt just dismissed Plaintiffs' counsel's template pornography-site VPPA claim with prejudice for exactly this reason in *D.B. v. Bellesa Enterprises US, Inc.*, 2026 WL 2058427 (C.D. Cal. July 14, 2026). As the court held: "As an initial matter, the FAC is without any details about how an ordinary person might access this back-end network traffic. . . . [T]he FAC does not plausibly allege how such an ordinary person would use these strings of code to identify Plaintiffs and their video-watching activities." *Id.* at *10. The court further observed: "To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person." *Id.* Plaintiffs' VPPA claim suffers from the identical deficiency – because it's the identical complaint. The SAC's exemplar screenshots similarly consist exclusively of strings of code like cookie identifiers and session IDs that no ordinary person could use to identify any specific Plaintiff's viewing habits. As the Second Circuit recently held, the ordinary person standard "shut[s] the door for Pixel-based VPPA claims." *Hughes v. NFL*, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025).

The VPPA claim also fails because Plaintiffs are not "consumers" under the statute. As Judge Kronstadt recognized in *Bellesa*, where video content is freely

accessible to unregistered internet users, registering for a website does not make a plaintiff a "subscriber of goods or services." 2026 WL 2058427, at *7. Here, by her own admission, L.O. never registered for an account, and she can admittedly access the same free website content that a registered user can. SAC, ¶ 17-18.

Finally, RedGIFs is not a "video tape service provider" because it does not "rent, sell or deliver" anything on its website, let alone "prerecorded video cassette tapes or **similar** audio visual **materials**." *Id.* at §2710(a)(4) (emphasis added). Indeed, as the Eighth Circuit just squarely addressed, the VPPA can only be fairly interpreted to embrace *physical* media under its plain and ordinary meaning. *See Christopherson v. Cinema Entertainment Corp.*, 161 F.4th 525, 528 (8th Cir. 2025). That is, the court "must interpret '[similar] audio visual materials' by reference to the item that precedes it, 'prerecorded video cassette tapes.'" The court then reasoned that "[i]mmediately after 'audio visual' is the word 'materials.' 'Materials' like prerecorded video cassette tapes **have a physical existence**." *Id.* (emphasis added). The Ninth Circuit similarly held that movies shown in theaters did not fall within the VPPA. *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1113 (9th Cir. 2025). From a statutory interpretation perspective then, if **the same movie** is not subject to the VPPA when shown in a theater, the "material" in "similar audio-visual material" logically **cannot** mean "content" – because there is nothing *more similar* than the *same* movie. That is, the "similar material" must necessarily be referring back to the *physical* medium on which a video is stored.

While pages could be spent on the "origin story" of how the VPPA has been misapplied to *immaterial* streaming content, the crux of the matter is that Supreme Court consistently reminds us that "the whole point of having written statutes" is that "every statute's meaning is fixed at the time of enactment." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). And when Congress enacted the VPPA, it clearly explained what *physical material* it viewed as "similar audio visual materials, **such as laser discs, open-reel movies, or CDI technology**." *See* S. Rep. No. 100-

599, at 12 (emphasis added). And just as importantly, Congress *already* enacted privacy laws for *immaterial video content* under the Cable Act. *See* 47 U.S.C. § 551 (1984 statute added to address "Protection of subscriber privacy" applicable to cable TV services – the "streamed" content of its day). And not once did Congress, four years later, even hint that the VPPA would also apply to cable TV. To be sure, no VPPA decision hints at that possibility either. Again, the Court's "job is to interpret the words consistent with their 'ordinary meaning ... **at the time Congress enacted the statute**.'" *Sanzone v. Mercy Health*, 954 F.3d 1031, 1040 (8th Cir. 2020) (emphasis added). Applying the VPPA to online content cannot be squared with the plain language of the statute, its legislative history, *or* its historical context.

For all these reasons, Plaintiffs' VPPA claims should be dismissed with prejudice.

**D. <u>Plaintiffs' Remaining Claims All Lack Merit</u>**

While Plaintiffs never subscribed to anything offered by RedGIFs, they certainly subscribe to the theory of throwing as many claims as possible against the wall to unnecessarily multiply these proceedings. As detailed above, however, not only is the Amended Complaint devoid of any well-pled allegations of *intangible* injury, they do not remotely plead any *actual damages* necessary to possibly sustain any of their remaining claims.[10] While that is sufficient to set these claims aside, RedGIFs briefly chases Plaintiffs' remaining rabbits down their holes.

**1. Intrusion Upon Seclusion**

As already established above, Judge Kato recently dismissed a website privacy claim against Tesla, flatly rejecting that it was *even analogous* to an intrusion upon seclusion claim. *Tesla,* 2025 WL 3786963, at *4. That's because the "first element requires an 'objectively reasonable' expectation of privacy, while the second focuses

---

10 For the avoidance of doubt, courts in this circuit routinely dismiss cases where any potential injury is based on "the loss of the inherent value of their personal data." *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1089 (N.D. Cal. Sept. 7, 2023).

on 'the degree and setting of the intrusion, and the intruder's motives and objectives.'" *Id.* As thoroughly detailed above, Plaintiffs' cannot have an objectively reasonable expectation of privacy as a matter of law, nor can RedGIFs "intrude" on its own website. *See also Cook v. GameStop Inc.*, 148 F.4th 153 (3rd Cir. 2025) (rejecting intrusion upon seclusion theory because "what we do on the Internet is not completely private.").

Ultimately, the standard for a cognizable invasion of privacy is well-established under binding precedent: actionable invasions must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms." *Hill v. NCAA* (1994), 7 Cal.4th 1, 37. Collecting anonymous browser metadata from a public website is not such an invasion – it's how the Internet works. Indeed, as the California Court of Appeal held in a directly analogous case, no invasion of privacy claim can be "based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the *use* of plaintiff's information was highly offensive." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (obtaining someone's home address, even unlawfully, and mailing them advertisements is "not an egregious breach of social norms, **but routine commercial behavior**") (emphasis added). *A fortiori*, collecting anonymous browser metadata from a public, commercial website cannot constitute a cognizable invasion of privacy, even *if* Defendant had used that data for later advertising purposes (which no well-pled facts actually support).

**2. Negligence**

Plaintiffs do not allege any facts that could possibly support the conclusion that RedGIFs assumed any independent *duty* to Plaintiffs. There is no special relationship between the Parties or any statutory duty applicable here that would apply to RedGIFs as a website operator. *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021) (holding that if no "special relationship" existed, negligence theory cannot survive).

### 3. Breach of Implied Contract

Not only do Plaintiffs lack any damages, but the parties cannot have an implied contract because "there cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Randall v. Univ. of the Pac.*, No. 5:20-cv-03196, 2022 WL 1720085, at *4 (N.D. Cal. May 28, 2022); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056-57 (N.D. Cal. 2021) (same for unjust enrichment). The only "offer on the table" for any visitor's use of RedGIFs' website is its generally applicable Terms.

### 4. Unjust Enrichment

There is not a stand-alone cause of action for unjust enrichment, even if Plaintiffs had remotely pled any actual benefit that they conferred on RedGIFs by visiting its free website on the public Internet – which they clearly do not.[11]

### 5. N.Y. Gen. Bus. Law § 349

Among other elements, a claim under Section 349 requires a defendant to engage in "***affirmative conduct*** that would tend to deceive consumers." *Collazo v. Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 991 (2020); *Anderson v. Friendly Auto Ventures, Inc.*, No. 5:22-CV-545 (MAD/ML), 2023 WL 2048256, at *3 (N.D.N.Y. Feb. 15, 2023) (same). Here, Plaintiffs do not allege *any* representation or other affirmative conduct by RedGIFs that misled them. Rather, their *entire* case is based solely on *their* objectively unreasonable *subjective* expectations of privacy—that Google somehow wouldn't obtain data on their website activity *while using Google*. That does not implicate any affirmative conduct on RedGIFs part, let alone any actionable misrepresentation.

### 6. CIPA Section 631

Section 637.2(a) of the California Penal Code authorizes suit under CIPA only by a "person who has been ***injured by*** a violation of this chapter." The word "injured" is not surplusage, and as detailed above, none of the Plaintiffs could have suffered an

---

[11] *Vizcarra v. Michaels Stores, Inc.,* 710 F. Supp. 3d 718, 731 (N.D. Cal. 2024).

injury as a matter of law, including Plaintiff T.H. As for the threatened Section 631 claim itself, however, Section 631 consistently "has been held to apply only to eavesdropping **by a third party** and ***not to recording*** by a participant to a conversation." *Warden v. Kahn* (1979) 99 Cal. App. 3d 805, 811.[12] In fact, the California Supreme Court expressly held that "section 631 does not penalize the secret recording of a conversation by one of the *participants*." *Ribas v. Clark* (1985) 38 Cal.3d 355, 360 n.3 (emphasis in original). *See also Rogers v. Ulrich*, (1975) 52 Cal. App. 3d 894, 898; *Powell v. Union Pac. R. Co*., 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that Section 631 applies **only** to "third party actions and therefore, as a party to the call, he cannot be liable as a matter of law").

The key takeaway is this: under decades of binding CIPA precedent, parties to a communication do ***not intercept*** their own messages; they **receive** them. That is why it is impossible under this plain-English definition for any party to "intercept" that same communication at its destination, here RedGIFs' website.

### 7. Washington Consumer Protection Act

Plaintiff K.K.'s claim under the Washington Consumer Protection Act ("WCPA"), RCW 19.86.020, fails because the SAC does not allege an "unfair or deceptive act or practice" as required by the statute. To state a WCPA claim, a plaintiff must allege: (1) an unfair or deceptive act or practice; (2) occurring in **trade or commerce**; (3) that impacts the public interest; (4) injury to the plaintiff in his or her **business or property**; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 784 (1986).

The SAC fails to satisfy multiple elements. The use of Google Analytics is not an "unfair or deceptive" practice. It is a standard, industry-wide practice used by millions of websites. The SAC does not allege that RedGIFs made any affirmative misrepresentation to K.K. about its data practices, or that RedGIFs engaged in any

[12] *See also Powell v. Union Pac. R. Co*., 864 F. Supp. 2d 949, 954 (E.D. Cal. 2012) (ruling that Section 631 applies **only** to "third party actions and therefore, as a party to the call, he cannot be liable as a matter of law").

conduct that would mislead a reasonable consumer. Like the N.Y. GBL § 349 claim, this claim rests on the conclusory assertion that using analytics tools is inherently "deceptive"—a proposition no court has endorsed. Further, RedGIFs is an entirely free website, and thus there is no trade or commerce K.K. is alleged to have engaged in on the website (nor could he). The SAC also fails to allege "injury to plaintiff in his or her business or property" as required by the statute. K.K. does not allege that he suffered any actual monetary loss, any loss of business opportunity, or any other cognizable injury to "business or property." The WCPA requires more than a conclusory assertion of "injury"—it requires an allegation of actual economic harm. The SAC contains no such allegation.

## V. CONCLUSION

For the foregoing reasons, RedGIFs respectfully requests that this Court dismiss Plaintiffs' SAC in full, with prejudice.

Dated: September 15, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: */s/Lynn R. Fiorentino*
LYNN R. FIORENTINO
ADAM BOWSER
Attorneys for Defendant
VERGIL SERVICES, INC.

**LOCAL RULE L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Vergil Services, Inc. certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 15, 2026

Respectfully submitted,

**ARENTFOX SCHIFF**

By: */s/Lynn R. Fiorentino*
LYNN R. FIORENTINO
ADAM BOWSER
Attorneys for Defendant
VERGIL SERVICES, INC.